THE HONORABLE BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT, WESTERN DISTRICT OF WASHINGTON
AT TACOMA

AMRISH RAJAGOPALAN, MARIE
JOHNSON-PEREDO, ROBERT HEWSON,
DONTE CHEEKS, DEBORAH HORTON,
RICHARD PIERCE, ERMA SUE CLYATT,
ROBERT JOYCE, AMY JOYCE, ARTHUR
FULLER, DAWN MEADE, WAHAB
EKUNSUMI, KAREN HEA, ALEX
CASIANO, DECEMBER GUZZO, BEN
PARKER, CHERYL ANDERSON, CARMEN
ALFONSO, BETH JUNGEN, TANYA
GWATHNEY, KEVIN DELOACH, SCOTT
SNOEK, KELLY ENDERS, THOMAS
LUDWICK, DONALD BOGAN, BILL
KRUSE, JOYCE DRUMMOND, TAMARA
COOPER, DEBRA MILLER, GEORGE
LAWRENCE, CYNTHIA OXENDINE,
MARTIN ANDERSON, ANGELA ROSS,
ANDREA TOPPS, DEBRA FINAZZO,
SHARRON BLACK, SYLVIA HADCOCK,
AUDRIE LAWRENCE (POOLE), ADAM
WARD, ISHULA MCCONNELL, ERICA
CHASE, STEPHEN YOUNKINS, DAN
WEDDLE, STILLMAN PARKER, TINA
ROBERTS-ASHBY, BRANDON ASHBY,
VALERIE NEWSOME, and RUSSEL
TANNER, *on behalf of themselves and others
similarly situated*,

Plaintiffs,

v.

FIDELITY AND DEPOSIT COMPANY OF
MARYLAND and PLATTE RIVER
INSURANCE COMPANY, as Sureties for
Meracord LLC,

Defendants.

No. 3:16-cv-05147-BHS

**SETTLEMENT CLASS
REPRESENTATIVES' MOTION FOR
ATTORNEYS' FEES, EXPENSES,
AND INCENTIVE AWARDS**

NOTED ON MOTION CALENDAR:
August 30, 2016, 10:00 a.m.

MOTION FOR ATTORNEYS' FEES,
EXPENSES, AND INCENTIVE AWARDS
Case No. 3:16-cv-05147-BHS



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

1

**TABLE OF CONTENTS**

2

**Page**

3    I.    BACKGROUND ...........................................................................................1

4    II.   THE WORK UNDERTAKEN BY CLASS COUNSEL .......................................3

5         A.    Litigation Against Meracord ..................................................3

6         B.    Litigation Against Sureties ...................................................5

7         C.    Certification of the Meracord Class and Judgment Against Meracord........6

8         D.    Litigation by the Meracord Class and Settlement with Platte River............8

9    III.  ARGUMENT .................................................................................9

10        A.    Settlement Class Representatives Have Requested a Reasonable Amount of
                Attorneys' Fees .............................................................9

11
12              1.    Settlement Class Representatives' Fee Request Is Reasonable Under a
                      "Common Fund" Percentage-of-Recovery Analysis .........................10

13              2.    Settlement Class Representatives' Fee Request Is Reasonable Under
                      the Lodestar Cross-Check Method.......................................13
14

15                    a.    The Number of Hours that Class Counsel Devoted to this
                            Litigation Is Reasonable ........................................13
16
                      b.    Class Counsel's Hourly Rates Are Reasonable ....................16
17
18                    c.    Settlement Class Representatives' Fee Request Is Reasonable
                            Considering the Results Obtained, Time and Labor Required,
19                          Complexity of the Litigation, the Risks Involved, and Counsel's
                            Skill and Experience ...........................................16
20
          B.    Settlement Class Representatives' Expenses Are Reasonable and Were
21              Necessarily Incurred ......................................................20

22        C.    Settlement Class Representatives Request Incentive Awards ..................20

23        D.    Class Counsel Is Willing to Take Partial Fees as Deferred Compensation
                from an Existing Escrow Account ...........................................21
24
      IV.  CONCLUSION ...............................................................22

25

26

27

28

MOTION FOR ATTORNEYS' FEES,
EXPENSES, AND INCENTIVE AWARDS - i
Case No. 3:16-cv-05147-BHS

HB   HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

CASES

4

*In re Apollo Group Inc. Secs. Litig.*,
   2012 U.S. Dist. LEXIS 55622 (D. Ariz. Apr. 20, 2012).........................................9

5

6

*Aronson v. Dog Eat Dog Films, Inc.*,
   2010 WL 4723723 (W.D. Wash. Nov. 16, 2010) ...............................................16

7

*U.S. ex rel. Aurora Painting, Inc. v. Fireman's Fund Ins. Co.*,
   832 F.2d 1150 (9th Cir. 1987) .........................................................................7

8

9

*Barovic v. Ballmer*,
   2016 WL 199674 (W.D. Wash. Jan. 13, 2016)...........................................17, 21

10

11

*Bendixen v. Sprint Commc'ns Co. L.P.*,
   2013 WL 2949569 (W.D. Wash. June 14, 2013)...............................................10

12

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ..........................................................................17

13

14

*Camacho v. Bridgeport Fin., Inc.*,
   523 F.3d 973 (9th Cir. 2008) ..........................................................................16

15

16

*Chaudhry v. City of Los Angeles*,
   751 F.3d 1096 (9th Cir. 2014) ........................................................................16

17

*City of Roseville Emps. Ret. Sys. v. Orloff Family Tr. UAD 12/31/01*,
   2012 U.S. App. LEXIS 11512 (9th Cir. June 7, 2012) ..........................................9

18

19

*Destefano v. Zynga, Inc.*,
   2016 WL 537946 (N.D. Cal. Feb. 11, 2016) .....................................................11

20

*Di Giacomo v. Plains All Am. Pipeline*,
   2001 WL 34633373 (S.D. Tex. Dec. 19, 2001)..................................................17

21

22

*Grays Harbor Adventist Christian Sch. v. Carrier Corp.*,
   2008 WL 1901988 (W.D. Wash. Apr. 24, 2008).................................................21

23

24

*Harris v. Marhoefer*,
   24 F.3d 16 (9th Cir. 1994) ..............................................................................20

25

26

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)...........................................................................9, 10, 13

27

28

MOTION FOR ATTORNEYS' FEES,
EXPENSES, AND INCENTIVE AWARDS - ii
Case No. 3:16-cv-05147-BHS

*Hopkins v. Stryker Sales Corp.*,
  2013 WL 496358 (N.D. Cal. Feb. 6, 2013) ...............................................................17

*Jackson v. Wells Fargo Bank, N.A.*,
  136 F. Supp. 3d 687, 706 (W.D. Pa. 2015)................................................................11

*Kentucky Ins. Guar. Ass'n v. Dooley Constr. Co.*,
  732 S.W.2d 887 (Ky. Ct. App. 1987) .........................................................................7

*Kerr v. Screen Extras Guild, Inc.*,
  526 F.2d 67 (9th Cir. 1975) ......................................................................................17

*Maley v. Del Global Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002)........................................................................17

*Milliron v. T-Mobile USA, Inc.*,
  423 F. App'x 131 (3d Cir. 2011) ...............................................................................17

*Morris v. Lifescan, Inc.*,
  54 Fed. App'x 663 (9th Cir. 2003) ............................................................................10

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ....................................................................................21

*U.S. ex rel. Peake Constr., L.L.C. v. Crown Roofing Servs., Inc.*,
  2010 WL 1416673 (E.D. La. Mar. 31, 2010) ..............................................................7

*Pelletz v. Weyerhaeuser Co.*,
  592 F. Supp. 2d 1322 (W.D. Wash. 2009)............................................................17, 21

*Pokorny v. Quixtar, Inc.*,
  2013 WL 3790896 (N.D. Cal. July 18, 2013).............................................................17

*Rinky Dink, Inc. v. World Bus. Lenders, LLC*,
  2016 WL 3087073 (W.D. Wash. May 31, 2016).........................................................10

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ....................................................................................20

*Rubio-Delgado v. Aerotek, Inc.*,
  2015 WL 3623627 (N.D. Cal. June 10, 2015) ............................................................11

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ....................................................................................20

*Steiner v. Am. Broad. Co. Inc.*,
  248 Fed. App'x 780 (9th Cir. 2007) ..........................................................................10



*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
   2013 WL 1365900 (N.D. Cal. Apr. 3, 2013) ........................................................17

*United Steelworkers of Am. v. Phelps Dodge Corp.,*
   896 F.2d 403 (9th Cir. 1990) ........................................................16

*Van Vraken v. Atl. Richfield Co.,*
   901 F. Supp. 294 (N.D. Cal. 1995) ........................................................21

*Vizcaino v. Microsoft Corp.,*
   142 F. Supp. 2d 1299 (W.D. Wash. 2001) ........................................................9, 10

*Vizcaino v. Microsoft Corp.,*
   290 F.3d 1043 (9th Cir. 2002) ........................................................9, 10, 17

*Von Eng'g Co. v. R.W. Roberts Constr. Co.,*
   457 So. 2d 1080 (Fla. Dist. Ct. App. 1984) ........................................................7

## OTHER AUTHORITIES

Fed. R. Civ. P. 23(h) ........................................................9



# I.   BACKGROUND

For nearly five years, Plaintiffs have litigated to address the unlawful conduct of Meracord LLC (formerly NoteWorld LLC), a licensed money transmitter that, assisted by a network of co-conspirators, charged illegal fees in connection with fraudulent debt relief programs.[1] In this and related actions, Plaintiffs alleged that Platte River Insurance Company ("Platte River"), along with Fidelity and Deposit Company of Maryland ("Fidelity") (together, "the Sureties"), issued surety bonds backing Meracord's activities as a money transmitter ("the Bonds"), and that as a result, Platte River and Fidelity were liable as sureties for Meracord's actions.

The Meracord-related litigation strategy involved two tracks: litigation directly against Meracord and litigation against the Sureties. Plaintiffs' action against Meracord began with the filing of their first class action complaint on July 26, 2011.[2] Plaintiffs' first action against the Sureties was filed on April 23, 2013.[3] On May 14, 2015, this Court issued a Final Judgment against Meracord, certifying a class of consumers ("the Meracord Class") and awarding that Class $1.45 billion in damages.[4] Specifically, this Court certified the following Class:

> All persons in a Surety State who established an account with Meracord LLC (formerly NoteWorld) or any subsidiary thereof from which Meracord processed any payments related to debt settlement, including MARS, within the Bond Period of their state of residence.[5]

---

[1] For simplicity, this motion refers to "Plaintiffs" even when describing events that took place before all the Plaintiffs named in this Complaint had joined the lawsuit. To the extent relevant, the term should be understood to mean whatever Plaintiffs were named at the time and/or in the particular action or actions being discussed.

[2] *Rajagopalan v. NoteWorld, LLC*, Case No. 3:11-cv-05574, Dkt. 1 ("*Rajagopalan Action*"). That case was subsequently consolidated with another action, No. 12-cv-05657, and the consolidated action will be referred to as the "*Meracord Action*").

[3] *Cheeks, et. al. v. Fidelity and Deposit Co. of Maryland, et. al.*, No. 4:13-cv-01854 (N.D. Cal. filed April 23, 2013), Dkt. 1.

[4] *Meracord Action* Dkt. 287.

[5] "Surety State" and "Bond Period" were both defined in reference to a table contained in an appendix to the Final Judgment.

On June 15, 2015, the Meracord Class brought another action against the Sureties, alleging generally that the Sureties were liable to the Meracord Class for the full amount of the Bonds, and for additional sums under statutory and common law bad faith ("*Surety I*").[6]

As a result of years of vigorous litigation and productive negotiations after Platte River obtained new counsel,[7] on September 29, 2015, Plaintiffs from states where Platte River had issued Bonds ("Settlement Class Representatives") and Platte River notified the Court that they had agreed in principle to a settlement.[8] Following additional negotiations, on April 7, 2016, Settlement Class Representatives and Platte River filed a joint motion for preliminary approval of the settlement, stating that they had agreed on a total settlement of $5,293,454.00 ("Settlement Fund") on behalf of Meracord customers residing in states for which Platte River issued Bonds.[9] That amount represented approximately 85% of the face value of the Bonds. The Court granted preliminary approval on May 3, 2016, preliminarily approving a Settlement Class defined as:

> all persons who had an account at Meracord from which Meracord deducted any fees related to debt settlement services (including mortgage assistance relief services) and who, while residing in a Platte River State, made payments to such account within the Bond Period of their state of residence.[10]

This Settlement is the first—and possibly the only—recovery that many Meracord customers in the represented states will receive.

Settlement Class Representatives respectfully move the Court to approve: (1) an award of $1,323,363.50 in attorney's fees, representing 25% of the settlement fund; (2) reimbursement of

---

[6] *Rajagopalan, et al., on behalf of the Class Certified in Rajagopalan, et al. v. Meracord LLC, v. Fidelity and Deposit Company of Maryland and Platte River Insurance Company, as Sureties for Meracord LLC*, No. 2:15-cv-00957-BHS (W.D. Wash.) ("*Surety I*").

[7] Around the same time the *Surety I* complaint was filed, Platte River—which had been previously represented by the same counsel as Fidelity—retained new counsel, who quickly reached out to Plaintiffs and was willing to discuss reasonable settlements.

[8] *Surety I*, Dkt. 41.

[9] *Rajagopalan, et al., on behalf of the Class Certified in Rajagopalan, et al. v. Meracord LLC, v. Fidelity and Deposit Company of Maryland and Platte River Insurance Company, as Sureties for Meracord LLC*, 3:16-cv-05147-BHS ("*Surety II*"), Dkt. 14. The twenty-eight Settlement Class Representatives are listed in the Settlement Agreement. *Surety II*, Dkt. 15-1 ("Settlement Agreement"). Unless otherwise noted, all defined terms in this Motion have the same meaning as in the Settlement Agreement.

[10] *Surety II*, Dkt. 17, ¶ 4.

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

$17,525.16 in expenses; and (3) incentive awards of $500 for each of the twenty-eight Settlement

Class Representatives ($14,000 total). This request is reasonable given Class Counsel's long-

lasting dedication to this case, their zealous advocacy on behalf of the Settlement Class, the risks

of bringing and proceeding with the action, and the vigorous opposition posed by Platte River

and other defendants, represented by well-funded defense counsel with substantial experience

litigating related issues.

## II.   THE WORK UNDERTAKEN BY CLASS COUNSEL

### A.   Litigation Against Meracord

The original complaint in the *Meracord Action* ("*Rajagopalan* Complaint") was filed on

July 26, 2011.[11] The complaint asserted complex claims under the federal Racketeering

Influenced Corrupt Organizations Act ("RICO"), the Washington Debt Adjusting Act ("DAA"),

the Washington Consumer Protection Act ("CPA"), and common law.[12] These claims required

extensive legal and factual research.[13] In response to the complaint, Meracord filed a motion to

compel arbitration.[14] After this Court denied Meracord's motion, Meracord unsuccessfully

appealed the Court's decision to the Ninth Circuit Court of Appeals.[15] Class Counsel dedicated

substantial time to responding to Meracord's motion and appeal.[16] On July 24, 2012, Plaintiffs

filed another complaint against Meracord ("*Canada* complaint"), substantially expanding the

claims from the original complaint. The *Canada* complaint also added three new named

plaintiffs, and new allegations regarding the relationships between Meracord and the debt

settlement industry, as well as the tactics used by the Meracord Enterprise to recruit customers.[17]

In support of the *Canada* complaint, in addition to conducting further research on Meracord and

its debt settlement business, Class Counsel contacted dozens of class members regarding their

---

[11] *Rajagopalan Action,* Dkt. 1.

[12] *Id.*

[13] June 24, 2016 Declaration of Stuart M. Paynter ("Paynter Decl.") ¶ 3.

[14] *Rajagopalan Action*, Dkt. 14.

[15] *Rajagopalan Action*, Dkt. 34.

[16] Paynter Decl. ¶ 4.

[17] *Id.* ¶ 5.

MOTION FOR ATTORNEYS' FEES,
EXPENSES, AND INCENTIVE AWARDS - 3
Case No. 3:16-cv-05147-BHS

HB   HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

experiences with Meracord and various Front DRCs.[18] Class Counsel spoke with and exchanged emails with these class members, learned their stories, and compiled and reviewed hundreds of pages of documents gathered from them in order to learn more about the Meracord Enterprise and the interactions between and among Meracord and the Front DRCs.[19]

Class Counsel also once again spent substantial time opposing motions to dismiss and compel arbitration filed by Meracord in response to the *Canada* complaint.[20] Class Counsel also amended the *Canada* complaint to add additional defendants and claims, as well as allegations regarding the arbitration clauses contained in Plaintiffs' Front DRC contracts, and Meracord's waiver of any right to invoke those clauses.[21] Meracord defended the *Canada* and *Rajagopalan* actions—which were subsequently consolidated into the *Meracord Action*—vigorously. Meracord stonewalled Class Counsel's discovery requests to it, requiring Class Counsel to file several discovery motions, and attempted, unsuccessfully, to block third-party discovery.[22]

In the course of litigating the *Meracord Action*, Class Counsel also prepared and served numerous public records requests in order to gather information about Meracord's money transmitter licenses and the Bonds backing those licenses.[23] These efforts have required complex negotiation and coordination with numerous state regulatory bodies, as well as legal research in support of that coordination. In the case of the California Department of Financial Institutions, accessing the requested documents necessitated the negotiation of a confidentiality agreement.[24] Class Counsel also received and reviewed materials from third-party sources, much of which

---

[18] *Id.* ¶ 6.

[19] *Id.* ¶ 7.

[20] *Meracord Action*, Dkt. 34; Paynter Decl. ¶ 8; June 24, 2016 Declaration of Thomas E. Loeser ("Loeser Decl.") ¶ 4.

[21] *Meracord Action*, Dkt. 41.

[22] Paynter Decl. ¶ 9; *see, e.g.*, *Rajagopalan Action*, Dkt. 41 (NoteWorld Mot. to Quash and for Protective Order); *Meracord Action*, Dkt. 69 (Pls.' Mot. for Limited Discovery), Dkt. 69 (Meracord Mot. to Stay Discovery and Compel Arbitration), Dkt. 71 (Meracord Obj. to Stipulated Protective Order with Cal. Dept. of Financial Institutions, Dkt.152 (Pls' Mot. to Compel Discovery), and Dkt. 196 (Meracord Mot. for Protective Order).

[23] Paynter Decl. ¶ 10.

[24] *Id.* ¶ 11.



involved the interactions and relationships between Meracord and its Front DRCs.[25] Class Counsel also received and reviewed hundreds of pages of statements and financial records from Meracord's numerous bank accounts in order to make some sense of the plethora of financial transactions between and among defendants and other Front DRCs.[26]

**B.   Litigation Against Sureties**

During the course of litigating the *Meracord Action*, Class Counsel discovered that Meracord's licensure as a money transmitter often required Meracord to file surety bonds with state regulators in order to insure against Meracord's bad acts in the conduct of its money transmission business.[27] As part of a concerted effort to recover the maximum amount possible for the victims of the Meracord Enterprises, Plaintiffs filed the *Cheeks Action*, a class action complaint in the Northern District of California naming Meracord's Sureties as defendants.[28] The *Cheeks* complaint required complex multijurisdictional research on the intersection of the common law of suretyship; state surety bond requirements, including those of Washington State and California; and the federal RICO act.[29] Class Counsel subsequently sought disclosures from the Sureties, including copies of all Bonds issued to Meracord.[30]

In the late summer / early fall of 2013, Class Counsel spent substantial time preparing for and engaging in a mediation with Meracord and the Sureties, along with Meracord's liability insurers, that was ultimately unsuccessful.[31]

During the protracted litigation against Meracord, Plaintiffs filed a motion to compel the production of Meracord's customer database.[32] Then, after Meracord represented that it was on the brink of insolvency and possibly incapable of fulfilling discovery requests, Plaintiffs moved

---

[25] Paynter Decl. ¶ 12.

[26] *Id*. ¶ 13.

[27] *Id*. ¶ 14.

[28] *Cheeks Action*, Dkt. 1.

[29] Paynter Decl. ¶ 15.

[30] *Id*. ¶ 16.

[31] *Id*. ¶ 17; Loeser Decl. ¶ 5.

[32] *Meracord Action,* Dkt. 152.

MOTION FOR ATTORNEYS' FEES,
EXPENSES, AND INCENTIVE AWARDS - 5
Case No. 3:16-cv-05147-BHS

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

1  for the appointment of a receiver to manage Meracord's production of documents.[33] The Court

2  ordered the parties to meet and confer,[34] and Meracord eventually produced its customer

3  database ("Database"),[35] at which time Class Counsel retained an expert in database analysis to

4  access the Database and compile specific information regarding the customer transactions

5  underlying Meracord's liability.[36] The database was provided in a backup file of a proprietary

6  database format, which required the database expert to restore the file into a usable format. In

7  addition, the nature of the inquiries required the database expert to reorganize the database by

8  creating a variety of new tables. To ensure the integrity and accuracy of the data contained in the

9  database, the expert also cross-checked the information contained in the database with individual

10  transaction histories and information obtained directly from Plaintiffs and other Class members.

11  In addition to spending thousands of dollars on this initial setup process, Class Counsel devoted

12  substantial time conferring with their database expert about the specific requirements of each

13  query, as well as reviewing and analyzing the results of dozens of queries.[37] The information

14  Class Counsel obtained from the Database was critical to the litigation against the Sureties and to

15  achieving the present Settlement, since it offered the ability to analyze damages on a state-by-

16  state basis.[38] Class Counsel used Meracord's data, including addresses of class members,

17  transaction dates, and unreturned fees to determine Platte River's potential liability under the

18  Bonds.[39]

19  **C.   Certification of the Meracord Class and Judgment Against Meracord**

20  In March 2015, Class Counsel spent substantial time researching and preparing three

21  dispositive motions against Meracord on behalf of Plaintiffs: (1) a motion for partial summary

22  judgment against Meracord; (2) a motion for class certification; and (3) a motion for entry of

---

[33] *Meracord Action,* Dkt. 176.

[34] *Meracord Action,* Dkt. 183.

[35] Paynter Decl. ¶ 18.

[36] *Id.* ¶ 19.

[37] *Id.* ¶ 20.

[38] *Id.* ¶ 21.

[39] *Id.* ¶ 22.

MOTION FOR ATTORNEYS' FEES,
EXPENSES, AND INCENTIVE AWARDS - 6
Case No. 3:16-cv-05147-BHS

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1     default judgment against Meracord for its failure to respond to Plaintiffs' Second Amended

2     Complaint.[40] As a result of Class Counsel's efforts, on May 14, 2015, the Court issued the Final

3     Judgment against Meracord, certifying the Meracord Class and awarding the Class $1.45 billion

4     in damages.[41] At the time of the Judgment, Meracord had been out of business for over a year,

5     and had no meaningful assets (including insurance) that could be used to satisfy the Judgment;

6     therefore, the Bonds—which total approximately $18 million—were the only realistic source of

7     recovery for damages owed to the Class.[42]

8           Obtaining the Final Judgment against Meracord was critical to the litigation strategy

9     aimed at recovering the Bonds on behalf of the Class. Most importantly, in some Platte River

10    states, a default judgment would arguably preclude the Platte River from re-litigating Meracord's

11    underlying liability—as opposed to Bond coverage—or at the very least serve as evidence of that

12    liability.[43] Furthermore, obtaining a final judgment was a necessary part of Class Counsel's

13    strategy to execute on the judgment in order to obtain (1) Meracord's bad-faith claims against the

14    Sureties,[44] and (2) all of Meracord's business books and records, including access to all of the

15

16

17

---

18     [40] Paynter Decl. ¶ 23; Loeser Decl. ¶ 6; *Meracord Action*, Dkts. 253, 266, 257.

19     [41] *Meracord Action*, Dkts. 285-287.

20     [42] *Meracord Action*, Dkt. 179; Paynter Decl. ¶ 24.

    [43] *See, e.g.*, *U.S. ex rel. Aurora Painting, Inc. v. Fireman's Fund Ins. Co.*, 832 F.2d 1150,

21    1153 (9th Cir. 1987) (judgment preclusive as to principals liability where surety had knowledge of prior proceeding and ability to defend); *U.S. ex rel. Peake Constr., L.L.C. v. Crown Roofing

22    Servs., Inc.*, 2010 WL 1416673, at *3 (E.D. La. Mar. 31, 2010) (same); *Kentucky Ins. Guar. Ass'n v. Dooley Constr. Co.*, 732 S.W.2d 887, 888 (Ky. Ct. App. 1987) (same); *Von Eng'g Co. v.*

23    *R.W. Roberts Constr. Co.*, 457 So. 2d 1080, 1082 (Fla. Dist. Ct. App. 1984) (Judgment is "conclusive" where surety had knowledge and opportunity to defend and otherwise "judgment is

24    prima facie evidence that the surety is liable"). Even if the Final Judgment was found to be conclusive as to Meracord's underlying liability, Plaintiffs would still have to establish liability

25    on the Bonds, but the Final Judgment still has strategic utility as evidence of Meracord's underlying conduct.

26     [44] Those claims are the subject of a complaint that the Class, as the lawful owner of Meracord's claims, intends to bring shortly against Fidelity. Plaintiffs agreed not to name Platte

27    River in the new complaint unless and until the pending settlement does not become final. Paynter Decl. ¶ 25.

28

MOTION FOR ATTORNEYS' FEES,
EXPENSES, AND INCENTIVE AWARDS - 7
Case No. 3:16-cv-05147-BHS

HB HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1    company's email records, many of which Meracord had previously fought against producing in

2    discovery.[45]

3    **D.    Litigation by the Meracord Class and Settlement with Platte River**

4            On June 15, 2015, the Meracord Class brought the *Surety I* action, alleging generally that

5    the Sureties were liable to the Meracord Class for the full amount of the Bonds, and for

6    additional sums under statutory and common law bad faith.[46] Class Counsel spent significant

7    time preparing the *Surety I* complaint, in addition to defending against motions to dismiss by

8    both Fidelity and Platte River.[47] On September 11, 2015, Class Counsel met in person with Platte

9    River's new counsel to discuss settlement. Settlement negotiations continued by phone and email

10   for the next month. Negotiations here were particularly complex in light of the number and

11   varying durations of the Bonds, as well as the necessity of ensuring that the settlement complied

12   with over 26 different state regulatory regimes. Nevertheless, the parties overcame those hurdles,

13   and on September 29, 2015, the Settlement Class Representatives and Platte River notified the

14   Court that they had agreed to a settlement in principle.[48] Following months of work on the

15   Settlement, including notification of appropriate regulators and communications with them

16   regarding the Settlement, the parties filed a joint motion for preliminary approval of the

17   Settlement, which the Court granted on May 3, 2016.[49]

18           Following preliminary approval, Class Counsel has been actively involved in the

19   administration of the Settlement.[50] Class Counsel solicited and reviewed bids from potential

20   settlement administrators, and worked closely with the chosen administrator to develop and

21   implement a notice plan, as well as reviewing regular status updates from the administrator about

22   inquiries and disputes from actual and potential Settlement Class Members. Class Counsel has

---

23       [45] Paynter Decl. ¶ 26. *See, e.g.*, *Meracord Action*, Dkt. 196 (Meracord Mot. for Protective
24   Order re: Internal Email Communications).

25       [46] *Surety I*, Dkt. 1.

         [47] Paynter Decl. *¶* 27; *see Surety I*, Dkts. 27 & 31.
26
         [48] *Surety I*, Dkt. 41.
27       [49] *Surety II*, Dkts. 14, 17.

         [50] Paynter Decl. ¶ 28.
28

1   also responding directly to such inquiries, and has provided regular updates regarding the

2   Settlement to Plaintiffs and other Meracord victims.[51]

### III.   ARGUMENT

**A.    Settlement Class Representatives Have Requested a Reasonable Amount of Attorneys' Fees**

Rule 23 of the Federal Rules of Civil Procedure provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."[52] "[A]wards of attorneys' fees serve the dual purpose of encouraging persons to seek redress for damages caused to an entire class of persons and discouraging future misconduct."[53] The U.S. Supreme Court has opined that consensual resolution of attorneys' fees, as was achieved here, is the ideal.[54] In "common fund" cases, such as this, the district court has the discretion to award attorneys' fees as either a percentage of the common fund, or by using the lodestar method.[55] The district court's decision in awarding attorneys' fees and expenses to the plaintiffs is reviewed for abuse of discretion.[56]

In the Ninth Circuit, the "benchmark" award in common fund cases is 25% of the recovery obtained, with 20-30% being "the usual range."[57] The Court may also use the lodestar method to determine reasonable attorneys' fees, multiplying the number of hours reasonably

---

[51] Paynter Decl. ¶ 29. Long before this Settlement, Class Counsel has regularly updated Plaintiffs and class members regarding the status of the litigation and responded to numerous questions and inquiries regarding both the status of the litigation and also individual class members' Meracord account information. *Id*. ¶ 29.

[52] Fed. R. Civ. P. 23(h).

[53] *In re Apollo Group Inc. Secs. Litig.*, 2012 U.S. Dist. LEXIS 55622, at *19 (D. Ariz. Apr. 20, 2012).

[54] *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee.").

[55] *Id*. at 457; *Vizcaino v. Microsoft Corp.*, 142 F. Supp. 2d 1299, 1301 (W.D. Wash. 2001), *aff'd*, 290 F.3d 1043 (9th Cir. 2002).

[56] *See City of Roseville Emps. Ret. Sys. v. Orloff Family Tr. UAD 12/31/01*, 2012 U.S. App. LEXIS 11512, at *4 (9th Cir. June 7, 2012).

[57] *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

expended by a reasonable hourly rate.[58] In common fund cases, the lodestar method may also be used as a cross-check of the percentage-of-fund method.[59]

Here, Class Counsel seek $1,323,363.50 in attorneys' fees, representing 25% percent of the $5,293,454.00 Settlement Fund—exactly the Ninth Circuit's benchmark award in common fund cases. Platte River does not to oppose this request,[60] and the reasonableness of this fee request is confirmed when cross-checked against the lodestar. Accordingly, under either the percentage-of-fund or lodestar approach, Settlement Class Representatives' requested fee award is reasonable.

### 1. Settlement Class Representatives' Fee Request Is Reasonable Under a "Common Fund" Percentage-of-Recovery Analysis

Settlement Class Representatives and Class Counsel seek an award of attorneys' fees representing 25% of the Settlement Fund—a percentage routinely awarded (or exceeded) by courts in this Circuit.[61] In *Vizcaino*, the Ninth Circuit outlined a number of factors that courts may consider in setting an appropriate fee, including whether counsel achieved exceptional results, and the degree of risk assumed by counsel.[62] The Ninth Circuit has clarified that these are not the only factors that district courts may consider in awarding fees and expenses; rather, "in selecting a reasonable percentage fee award in a common fund case the district court must consider all relevant circumstances."[63] Here, Settlement Class Representatives do not request

---

[58] *See Hensley*, 461 U.S. at 433.

[59] *Vizcaino*, 142 F. Supp. 2d at 1305.

[60] Paynter Decl. ¶ 30. Settlement Agreement, Dkt. 15-1, ¶ 12.

[61] *See, e.g.*, *Morris v. Lifescan, Inc.*, 54 Fed. App'x 663, 664 (9th Cir. 2003) (fee award of 33% of settlement fund); *Bendixen v. Sprint Commc'ns Co. L.P.*, 2013 WL 2949569, at *3 (W.D. Wash. June 14, 2013) (fee award of 28.4% of settlement fund); *Vizcaino*, 290 F.3d at 1050 (fee award of 28% of settlement fund); *Rinky Dink, Inc. v. World Bus. Lenders, LLC*, 2016 WL 3087073, at *4 (W.D. Wash. May 31, 2016) (fee award of 25% of settlement fund).

[62] *See Vizcaino*, 290 F.3d at 1048-50.

[63] *Steiner v. Am. Broad. Co. Inc.*, 248 Fed. App'x 780, 782 (9th Cir. 2007). In determining a reasonable award under the common fund method, courts may also consider other factors, including: plaintiffs' counsel's hourly rate, counsel's experience and skill, the complexity of the issues, and a comparison with counsel's lodestar.

that the Court exceed the benchmark, and a fee request of 25% of the Settlement Fund is fully supported by the relevant circumstances of this case.

*First*, Class Counsel achieved an exceptional result on behalf of Settlement Class Representatives and the Class. Class Counsel litigated diligently for over three and a half years against Meracord to establish its underlying liability for the wrongful conduct that formed the basis of the original complaint, and when it became clear that Meracord itself was insolvent and unable to compensate Class members for their damages, Class Counsel doggedly pursued the most realistic remaining avenue of recovery: the Bonds. Plaintiffs faced continual opposition from the Sureties, mostly in the form of stonewalling tactics in which the Sureties obstinately maintained that no "direct claim" had been made on the Bonds—despite, *inter alia*, the filing of two separate lawsuits naming the Sureties in their capacity as sureties for Meracord.[64]

After years of litigation, and despite the tremendous legal hurdles, the Platte River Settlement negotiated by Class Counsel secures 85% of Platte River's maximum exposure on the Bonds it issued, and represents the first, and possibly the only, relief that many victims of Meracord's actions will receive.[65]

*Second*, Class Counsel assumed a high degree of risk in bringing this action, and in pursuing it to a successful conclusion, at least with respect to Platte River's Bonds. This was a novel case alleging that Meracord and a network of Front DRCs conspired to obtain illegal fees in connection with fraudulent debt relief programs. In order to recover from Platte River, Class Counsel had to both litigate the underlying case against Meracord and litigate Bond coverage in all 26 states where Platte River issued Bonds. Meracord vigorously defended against Plaintiffs'

---

[64] *See, e.g., Meracord Action*, Dkt. 264 at 2 (Sureties' Motion to Intervene).

[65] *Cf., e.g., Destefano v. Zynga, Inc.*, 2016 WL 537946, at *11 (N.D. Cal. Feb. 11, 2016) (noting that payout to class members of 9.5% of likely recoverable damages was reasonable); *Rubio-Delgado v. Aerotek, Inc.*, 2015 WL 3623627, at *9 (N.D. Cal. June 10, 2015) (recognizing that "'there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery'") (quoting *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 427 (S.D.N.Y. 1993)); *Jackson v. Wells Fargo Bank, N.A.*, 136 F. Supp. 3d 687, 706 (W.D. Pa. 2015), *appeal dismissed* (Nov. 25, 2015) (recovery of "approximately 19.5% of the class' best possible recovery at trial based on actual damages . . . [was] well within the range of reasonableness").

MOTION FOR ATTORNEYS' FEES,
EXPENSES, AND INCENTIVE AWARDS - 11
Case No. 3:16-cv-05147-BHS

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

various complaints, including filing interlocutory appeals and resisting discovery. Likewise, Platte River vigorously defended the complaints brought against it, filing motions (including a motion to dismiss) in conjunction with Fidelity,[66] and then filing a separate motion to dismiss after retaining new counsel.[67]

Throughout the litigation, most particularly after Meracord became effectively insolvent, Class Counsel risked receiving no fees. Moreover, Class Counsel invested significant funds in the case, including, for example, hiring database experts to reconstruct the Meracord Database from the raw backup file provided by Meracord.[68]

*Third,* the case also presented a myriad of complex legal issues. To begin with, the litigation of Plaintiffs' underlying claims against Meracord involved complicated questions under RICO that required, for example, a sophisticated understanding of the real-world relationships between and among Meracord and the Front DRCs, and the interplay of those relationships with the legal requirements to establish an "enterprise" under the act. Plaintiffs were also required to defend against Meracord's motion to compel arbitration, which involved briefing to the Ninth Circuit on, *inter alia*, issues such as the ability of companies like Meracord to invoke arbitration clauses as third-party beneficiaries of the underlying contracts. Even Plaintiffs' state statutory claims under the Washington Debt Adjusting Act involved, for example, research into complex issues of statutory construction, and questions of retroactivity after Meracord successfully lobbied the Washington State legislature to have itself and other "third party" payment processors exempted from the DAA.

In addition, beyond the complexities underlying Plaintiffs' claims against Meracord, the direct actions against the Sureties involved in-depth research into the common law of suretyship in multiple jurisdictions, the common law and statutory bases for Plaintiffs' bad-faith claims against the Sureties, as well as state-by-state analysis of the licensing statutes under which the

---

[66] *See e.g.*, *Cheeks Action*, Dkt. 7; *Meracord Action*, Dkt. 264

[67] *Surety I*, Dkt. 27.

[68] Paynter Decl. ¶¶ 31 & 32, Ex. B; Loeser Decl. ¶¶ 7 & 8, Ex. B; *see also Meracord Action*, Dkt. 281 (Decl. of L. Tafoya).

MOTION FOR ATTORNEYS' FEES,
EXPENSES, AND INCENTIVE AWARDS - 12
Case No. 3:16-cv-05147-BHS

HB | HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

Bonds were issued, and the procedural requirements underlying those statutes (for example, requirements for notice to and/or assent from the licensing agencies in various states). The latter inquiry involved substantive analysis of state debt settlement regulations to examine ways in which Meracord's actions violated those statutes. To determine damages in each Surety state, all this legal research then had to be combined with the Bond terms and translated into specific queries that Plaintiffs' database expert could run on Meracord's Database.

### 2. Settlement Class Representatives' Fee Request Is Reasonable Under the Lodestar Cross-Check Method

Settlement Class Representatives' fee request of $1,323,363.50 is also reasonable when cross-checked using the lodestar method. Under the lodestar method, a presumptively reasonable fee award can be determined by multiplying the number of hours reasonably expended by plaintiffs' counsel by their reasonable hourly rate.[69]

### a. The Number of Hours that Class Counsel Devoted to this Litigation Is Reasonable

Under the lodestar method, courts first look at the number of hours spent by counsel on the case.[70] Here, in support of the lodestar determination, Settlement Class Representatives submit the declarations of Class Counsel attesting to their total hours, hourly rates, experience, and efforts to prosecute this action.

As set forth in the supporting declarations, Class Counsel have collectively spent more than 2,452.4 hours of attorney and litigation support time attributable to this Settlement, representing a lodestar of $1,309,117.50.[71] Specifically, for purposes of a lodestar cross-check, Class Counsel have included only: (1) the time spent specifically on the Platte River Settlement; (2) one-third of the time spent on litigation of the Surety-related actions up to September 29, 2015 (when Platte River and the Settlement Class Representatives notified the Court of the Platte River Settlement); and (3) one-third of the time spent litigating the underlying case against Meracord. For the time spent litigating against Meracord and against both Sureties, Class

---

[69] *See Hensley*, 461 U.S. at 433.

[70] *Id.*

[71] Paynter Decl. ¶ 32, Ex. A; Loeser Decl. ¶ 8, Ex. A.

Counsel's allocation of one-third to the lodestar here is appropriate because (i) the face value of Platte River's bonds was approximately one-third of the total face value of all the bonds (35.28% to be exact), and (ii) the members of the Platte River Settlement Class represent approximately one-third (32.35%) of the total number of consumers who resided in Surety States and who made payments during the relevant Bond period.

Class Counsel's time and expenses, allocated using the method described above, are shown in the table below:

| | Total Hours | Hours Allocated to Settlement | Total Lodestar | Lodestar Allocated to Settlement | Expenses |
|---|---|---|---|---|---|
| **HAGENS BERMAN** | | | | | |
| Platte River Settlement | 205.80 | 205.80 | $119,167.30 | $119,167.30 | $8,844.00 |
| Surety Matters | 60.15 | 20.05 | $22,406.50 | $7,468.09 | |
| Underlying Meracord Litigation | 1,330.90 | 443.59 | $538,982.25 | $179,642.78 | |
| **TOTALS** | **1,596.85** | **669.44** | **$680,556.05** | **$306,278.17** | **$8,844.00** |
| **PAYNTER LAW FIRM** | | | | | |
| Platte River Settlement | 300.50 | 300.50 | $163,308.50 | $163,308.50 | $8,681.16 |
| Surety Matters | 603.45 | 201.15 | $325,089.25 | $108,363.08 | |
| Underlying Meracord Litigation | 3,843.90 | 1,281.30 | $2,193,503.25 | $731,167.75 | |
| **TOTALS** | **4,747.85** | **1,782.95** | **$2,681,901.00** | **$1,002,839.33** | **$8,681.16** |
| | | | | | |
| **Grand Totals** | **6,344.70** | **2,452.4** | **$3,362,457.05** | **$1,309,117.50** | **$17,525.16** |

The number of hours that Class Counsel have devoted to pursuing this litigation is appropriate and reasonable, given: (1) the extensive pre-filing investigation and legal research required to file numerous complaints described in Section II; (2) the extensive motion and appellate practice required; (3) the informal and formal discovery efforts with Meracord, the

MOTION FOR ATTORNEYS' FEES,
EXPENSES, AND INCENTIVE AWARDS - 14
Case No. 3:16-cv-05147-BHS

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

Sureties, and third parties; (4) the review of hundreds of pages of documents received from Meracord customers; (5) the review of hundreds of pages of statements and financial records from Meracord's numerous bank accounts; (6) the review of each of the Bonds issued to Meracord; (7) the analysis of Meracord's Database; (8) the efforts to certify the Meracord Class and obtain judgment against Meracord; (9) the extensive settlement negotiations with Meracord and the Sureties; (10) the regular contact and communication with Plaintiffs and Class members; and (11) the time spent notifying Class members and assisting in the administration the Settlement.

Moreover, Class Counsel's responsibilities will not end with final approval. Class Counsel will continue to assist Settlement Class Members with inquiries and work with the Settlement Administrator. Class Counsel may also have to expend further time and effort to resolve any objections that are lodged and litigate any appeals that result therefrom.[72] Past experience shows that this ongoing work will add significant time to the work already undertaken. In addition to the hours already billed, counsel anticipates incurring additional hours finalizing materials for the final fairness hearing, appearing at the final fairness hearing, continuing outreach to Settlement Class Members, distributing funds to Settlement Class Members, and resolving any objections and/or appeals.

In sum, the hours that Class Counsel devoted to this action were extensive, but reasonable and necessary, particularly given the complexity of the issues and parties involved in this case, and the necessity of obtaining and analyzing the extensive information regarding Meracord's customers and business practices that allowed Settlement Class Representatives to effectively negotiate with Platte River regarding their potential liability on the Bonds. Class Counsel's relentless pursuit of relief for the Class resulted in this Settlement, which will provide some recovery for many Meracord victims.

---

[72] To date, one objection to this settlement has been filed. *Surety II*, Dkt. 25.

MOTION FOR ATTORNEYS' FEES,
EXPENSES, AND INCENTIVE AWARDS - 15
Case No. 3:16-cv-05147-BHS



1918 Eighth Avenue, Suite 3300 • Seattle, WA  98101
(206) 623-7292 • FAX (206) 623-0594

### b.  Class Counsel's Hourly Rates Are Reasonable

As detailed in the declarations of Stuart Paynter and Thomas Loeser, Class Counsel's rates are also fair and reasonable. Under the lodestar method, counsel's reasonable hourly rates are determined by the prevailing market rates that a lawyer of comparable skill, experience, and reputation could command in the relevant community.[73] "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate."[74]

Counsel's hourly rates in this action range from $345 to $800. Hourly rates for paralegals are $200 or lower.[75] Class Counsel are well-respected members of the bar with extensive experience in prosecuting complex litigation, including consumer class actions.[76] Class Counsel's hourly rates are appropriate for litigation of this complexity and are comparable to those approved in courts in this district and the Ninth Circuit generally.[77] Indeed, the Northern District of California recently approved Class Counsel's rates in complex class action litigation involving the use of NCAA student-athletes likenesses in videogames.[78]

### c.  Settlement Class Representatives' Fee Request Is Reasonable Considering the Results Obtained, Time and Labor Required, Complexity of the Litigation, the Risks Involved, and Counsel's Skill and Experience

Multiplying the hours spent by Class Counsel on the litigation by their respective hourly rates, and allocating as discussed *supra* Section III.A.2.a, yields a lodestar calculation of $1,309,117.50. "Though the lodestar figure is presumptively reasonable, the court may adjust it upward or downward by an appropriate positive or negative multiplier reflecting a host of

---

[73] *See, e.g., Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).

[74] *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990); *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1110 (9th Cir. 2014), *cert. denied sub nom., City of Los Angeles, Cal. v. Chaudhry*, 135 S. Ct. 295 (2014).

[75] Paynter Decl. ¶ 32, Ex. A; Loeser Decl. ¶ 8, Ex. A.

[76] Paynter Decl. ¶¶ 34-46; Loeser Decl. ¶ 9, Ex. C.

[77] *See, e.g., Aronson v. Dog Eat Dog Films, Inc.*, 2010 WL 4723723, at *3 (W.D. Wash. Nov. 16, 2010) (approving hourly rates of $505, $265, and $175).

[78] *In re NCAA Student-Athlete Name & Likeness Licensing Litigation*, No. 4:09-cv-01967 (N.D. Cal., Filed May 9, 2009), Dkt. 1244, ¶ 11 (Final Approval Order, August 18, 2015).

MOTION FOR ATTORNEYS' FEES,
EXPENSES, AND INCENTIVE AWARDS - 16
Case No. 3:16-cv-05147-BHS

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

reasonableness factors, including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment."[79] The fee award of $1,323,363.50 requested here represents a multiplier of 1.011, falling well below the range of multipliers accepted by courts in this district and across the country.[80] As discussed below, these reasonableness factors weigh heavily in favor of granting the total requested fee award.

*First*, Class Counsel obtained a benefit for class members. "Foremost among these considerations . . . is the benefit obtained for the class."[81] Here, Class Counsel maintained this litigation for years, despite the risks, and even after Meracord was effectively insolvent, to obtain relief for the Class. The Bonds were the last remaining avenue of recovery for victims of Meracord's actions. Building on the groundwork laid in the initial actions against Meracord, Class Counsel began discussing settlement with the Sureties in 2013, and ultimately negotiated a Settlement Fund representing 85% of Platte River's maximum exposure on the bonds.

*Second*, Class Counsel have expended a significant amount of time and resources on the litigation. To date, counsel have expended more than 2,452.4 hours, for a lodestar of $1,309,117.50, and have incurred $17,525.16 in expenses in prosecuting this litigation for the benefit of the class.[82] Class Counsel vigorously litigated this action and were challenged every step of the way by Meracord and the Sureties. To effectively prosecute this very large and

---

[79] *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941-42 (9th Cir. 2011) (citations omitted); *see also Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

[80] *See, e.g., Vizcaino*, 290 F.3d at 1051 n.6 (surveying class actions settlements nationwide, and noting 54 percent of lodestar multipliers fell within the 1.5 to 3.0 range, and that 83 percent of multipliers fell within the 1.0 to 4.0 range); *Pelletz v. Weyerhaeuser Co.*, 592 F. Supp. 2d 1322, 1328 (W.D. Wash. 2009) (approving "modest 1.82 multiplier"); *Barovic v. Ballmer*, 2016 WL 199674, at *4 (W.D. Wash. Jan. 13, 2016), *appeal dismissed* (May 6, 2016) (multiplier of 2.5); *Hopkins v. Stryker Sales Corp.*, 2013 WL 496358, at *5 (N.D. Cal. Feb. 6, 2013) (multiplier of 2.86; *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2013 WL 1365900, at *8 (N.D. Cal. Apr. 3, 2013) (multipliers ranging on average between 2.4-2.6); *Pokorny v. Quixtar, Inc.*, 2013 WL 3790896, at *2 (N.D. Cal. July 18, 2013) (multiplier of 2.2); *see also Milliron v. T-Mobile USA, Inc.*, 423 F. App'x 131, 135 (3d Cir. 2011) (approving district court's use of 2.2 multiplier); *Di Giacomo v. Plains All Am. Pipeline*, 2001 WL 34633373, at *10-11 (S.D. Tex. Dec. 19, 2001) (5.3 multiplier); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (4.65 multiplier).

[81] *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d at 942.

[82] Paynter Decl. ¶ 32, Exs. A & B; Loeser Decl. ¶ 8, Exs. A & B.

---

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1  complex class action involving multiple defendants, Class Counsel had to commit a significant

2  amount of time, personnel, and expenses on a contingency basis with absolutely no guarantee of

3  being compensated in the end. *See* Section III.A.2.a, *supra*.

4      *Third*, Plaintiffs faced a number of novel and complex legal and factual issues in this

5  litigation, as described *supra*, Section III.A.1.

6      *Fourth*, given that Class Counsel undertook this case on a contingency basis, they faced a

7  considerable risk of non-payment, in particular because during the litigation, Meracord went out

8  of business and become effectively insolvent.

9      *Fifth*, Class Counsel Hagens Berman is one of the most well-respected class action

10  litigation firms in the country and has litigated some of the largest class actions in history,[83]

11  including the tobacco litigation,[84] *In re Visa MasterCard Litigation*,[85] and the *Toyota Motor*

12  *Corporation Unintended Acceleration Litigation*.[86] Hagens Berman has over 65 lawyers in

13  offices across the country.[87] Since its founding in 1993, the firm has been recognized in courts

14  throughout the United States for its ability and experience in handling major class litigation

15  efficiently and obtaining outstanding results for its clients.[88] Courts in Washington have

16  repeatedly appointed Hagens Berman as lead or co-lead counsel in class litigation proceedings,

17  including most recently in *Slack, et al. v. Swift Transportation Co. of Arizona*, LLC, No. 3:11-cv-

18  05843-BHS (W.D. Wash).[89]

19

20     [83] Loeser Decl. ¶ 9, Ex. C (Firm Resume).

21     [84] In the historic litigation against Big Tobacco, Hagens Berman represented 13 states and
advanced groundbreaking legal claims to secure a global settlement worth $260 billion, the

22  largest recovery in history. Only two firms went to trial, and Hagens Berman served as co-lead
trial counsel.

23     [85] *In re Visa-MasterCard Litigation,* CV-96-5238 (E.D.N.Y.). Hagens Berman was co-lead
counsel in a case alleging antitrust violations by Visa and MasterCard. The case settled for $3

24  billion in cash and changes in practices valued at $20 billion.

25     [86] *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prods. Liab.
Litig.*, 8:10ML2151 JVS (C.D. Cal.). Hagens Berman recovered $1.6 billion for the class.

26     [87] Loeser Decl. ¶ 9.

27     [88] *Id.*

   [89] *Id.*

28

MOTION FOR ATTORNEYS' FEES,
EXPENSES, AND INCENTIVE AWARDS - 18
Case No. 3:16-cv-05147-BHS

HB  HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

The Paynter Law Firm is a boutique litigation firm with a practice devoted exclusively to plaintiff-side contingency litigation, including complex class action lawsuits.[90] Despite its small size, the Paynter Law Firm has already recovered over $100 million for consumers. Most recently, the firm served as Class Counsel in the *In re NCAA Student-Athlete Name & Likeness Licensing Litigation*, No. 4:09-cv-01967 (N.D. Cal., Filed May 9, 2009)—litigation involving unprecedented national classwide claims on behalf of NCAA student-athletes whose likenesses were used without permission in popular videogames made by Electronic Arts. That action resulted in a total settlement fund of $60 million, with many players receiving thousands of dollars in compensation for the use of their likenesses.[91] The Paynter Law Firm is currently counsel in a number of complex cases, including *Thornton v. DaVita Healthcare Partners, Inc.*, No. 13-cv-00576 (D. Colo., filed March 6, 2013); *Scranton v. E*Trade Securities, LLC*, No. 1-13-cv-245579 (Sup. Ct. of Cal., filed April 30, 2013), currently on appeal, No. H042291 (Cal. Ct. App., 6th Dist.); *Rock v. NCAA*, No. 1:12-cv-1019 TWP-DKL (S.D. Ind., filed July 23, 2012); and *Tru-Form Optics, Inc. v. Valeant Pharmaceuticals International, Inc.*, No. 3:15-cv-08824 (D.N.J., filed Dec. 22, 2015).[92]

The reputation, experience, and skill of Class Counsel were essential to the achievement of a successful settlement with Platte River. From the outset, Class Counsel used their expertise and skill to obtain an extraordinary recovery for the Class, given the particular factual and legal complexities of this litigation. At no time has Platte River (or any other Defendant) ever conceded liability, the appropriateness of certification other than for settlement purposes, or the existence of damages. Given the significant risks and uncertainty associated with this complex class action, it is a testament to Class Counsel's skill, creativity, and determination that they were able to negotiate this Settlement providing some economic relief for Settlement Class Members.

*Sixth*, the fee request is reasonable in light of the future work and expenses that will be incurred by Class Counsel under the Settlement, beyond the current lodestar. *See supra*, p. 15.

---

[90] Paynter Decl. ¶ 35, Ex. C (Firm Resume).

[91] Paynter Decl. ¶ 36.

[92] Paynter Decl. ¶ 37.

MOTION FOR ATTORNEYS' FEES,
EXPENSES, AND INCENTIVE AWARDS - 19
Case No. 3:16-cv-05147-BHS

HB HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

**B.    Settlement Class Representatives' Expenses Are Reasonable and Were Necessarily Incurred**

In addition to attorneys' fees, Settlement Class Representatives seek an award of $17,525.16 for expenses necessarily incurred in connection with the prosecution of this action. The Ninth Circuit allows recovery of pre-settlement litigation costs in the context of class action settlements.[93] All expenses that are typically billed by attorneys to paying clients in the marketplace are compensable.[94] With this Motion, Class Counsel provide an accounting of the $17,525.16 in expenses incurred by Class Counsel.[95] Expenses include expert assistance accessing and analyzing the data in Meracord's customer database and travel expenses related to settlement negotiations. All of these costs were necessarily and reasonably incurred to bring this case to a successful conclusion, and they reflect market rates for the various categories of expenses incurred.

**C.    Settlement Class Representatives Request Incentive Awards**

Settlement Class Representatives also request that the Court approve incentive awards of $500 each for the twenty-eight Settlement Class Representatives, or $14,000 total, to be deducted from the Settlement Fund. Incentive awards for class representatives are routinely provided to encourage individuals to undertake the responsibilities of representing the class and recognize the time and effort spent in the case.[96] Incentive awards "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."[97] Courts have discretion to approve incentive awards based on, *inter alia,* the risk

---

[93] *See Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003).

[94] *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).

[95] Paynter Decl. ¶ 32, Ex. B (Expense Report).

[96] *See Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 958 (9th Cir. 2009) ("Incentive awards are fairly typical in class action cases.").

[97] *Id.* at 958-59.

MOTION FOR ATTORNEYS' FEES,
EXPENSES, AND INCENTIVE AWARDS - 20
Case No. 3:16-cv-05147-BHS



(financial or otherwise) of commencing suit, the notoriety and personal difficulties encountered, the amount of time and effort spent, and the duration of the litigation.[98]

The Settlement Class Representatives have been actively involved in the litigation, some for years, assisting Class Counsel in all phases of the case, including gathering evidence to file pleadings, providing Class Counsel with details of their experiences with Meracord, reviewing and approving pleadings, and in the case of original Plaintiff Amrish Rajagopalan, providing responses to discovery.[99] The time and effort expended by these Settlement Class Representatives assisted in the recovery of 85% of the face value of the Platte River bonds for the Settlement Class. The incentive awards of $500 are reasonable and modest compared to incentive awards in other cases.[100]

**D.     Class Counsel Is Willing to Take Partial Fees as Deferred Compensation from an Existing Escrow Account**

In the course of a settlement reached between Plaintiffs and Meracord's principal, Linda Remsberg, and her husband, there is currently $415,000 in an escrow account held for the benefit of the *Meracord* Class ("Remsberg Escrow"). Under the terms of that settlement, funds in the Remsberg Escrow will be available to the Remsbergs to defend themselves against any claims made by the Sureties related to Plaintiffs' litigation against Meracord. Thus, the funds in the Remsberg Escrow will only be available for distribution to the Class upon the earlier of (1) the date at which the Sureties agree unconditionally not to pursue any claims against the Remsbergs related to Plaintiffs' litigation against Meracord and the Sureties; (2) the date at which such claims are fully and finally resolved by adjudication; or (3) February 13, 2019.

Because of the logistical difficulties posed by deferring compensation to the Class for another three years—and the risk to the Class that the Remsberg Escrow funds will never be

---

[98] *See Van Vraken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

[99] Paynter Decl. ¶ 38.

[100] *See, e.g., In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942 (9th Cir. 2015) (incentive awards of $5,000 for nine plaintiffs); *Pelletz v. Weyerhaeuser Co.*, 592 F. Supp. 2d at 1329-30 (incentive awards of $7500 for four plaintiffs); *Barovic v. Ballmer*, 2016 WL 199674, at *5, *appeal dismissed* (May 6, 2016) (incentive awards of $5000); *Grays Harbor Adventist Christian Sch. v. Carrier Corp.*, 2008 WL 1901988, at *6-7 (W.D. Wash. Apr. 24, 2008) (incentive awards of $3500 for eleven plaintiffs).

available to the Class—Class Counsel is willing to receive $138,333.33 of their fee request under this Settlement[101] as deferred compensation from the Remsberg Escrow. In addition to transferring the risk of the Remsbergs using those funds from the Class to Class Counsel, this will also serve to make more funds available for payments now to Settlement Class Members by reducing the fees deducted from the Settlement Fund.

## IV.   CONCLUSION

For the foregoing reasons, Settlement Class Representatives request an award of $1,323,363.50 in attorney's fees, $17,525.16 in expenses, and incentive awards totaling $14,000 ($500.00 each for the Settlement Class Representatives).

DATED this 24th day of June, 2016

**HAGENS BERMAN SOBOL SHAPIRO LLP**

By: _/s/ Steve W. Berman_____
By: _/s/ Thomas E. Loeser_____
    Steve W. Berman
    Thomas E. Loeser
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
toml@hbsslaw.com

**THE PAYNTER LAW FIRM PLLC**
STUART M. PAYNTER
Stuart M. Paynter (*pro hac vice*)
1200 G Street N.W., Suite 800
Washington, DC  20005
Telephone: (202) 626-4486
Facsimile: (866) 734-0622
stuart@paynterlawfirm.com

---

[101]   This represents one-third of the $415,000 currently in the Remsberg Escrow.

MOTION FOR ATTORNEYS' FEES,
EXPENSES, AND INCENTIVE AWARDS - 22
Case No. 3:16-cv-05147-BHS



Celeste H.G. Boyd (*pro hac vice*)
106 Churton St., Suite 200
Hillsborough, NC 27278
Telephone: (919) 307-9991
Facsimile: (866) 734-0622
cboyd@paynterlawfirm.com

*Attorneys for Settlement Class Representatives*



## CERTIFICATE OF SERVICE

On June 24, 2016, I caused to be electronically filed the foregoing with the Clerk of the

Court using the CM/ECF system, which will send notification of such filing to the following

attorneys of record:

- **Steve W. Berman**
  steve@hbsslaw.com, robert@hbsslaw.com, heatherw@hbsslaw.com
- **Celeste H.G. Boyd**
  cboyd@paynterlawfirm.com
- **Thomas E. Loeser**
  TomL@hbsslaw.com, dawn@hbsslaw.com
- **Stuart M. Paynter**
  stuart@paynterlawfirm.com
- **Jennifer Campbell**
  jcampbell@schwabe.com
- **Jonathan A Constine**
  Jonathan.Constine@troutmansanders.com
- **Bert W. Markovich**
  bmarkovich@schwabe.com
- **Claire L. Rootjes**
  crootjes@schwabe.com
- **Scott M Stickney**
  stickney@wscd.com
- **John D. Wilson, Jr.**
  wilson@wscd.com
- **Robert Jesse Berens**
  rberens@l-llp.com
- **Christopher Alan LaVo**
  cal@tblaw.com
- **Adam D Melton**
  amelton@l-llp.com
- **David C Veis**
  dveis@robinskaplan.com

/s/ Thomas E. Loeser
Thomas E. Loeser (WSBA# 38701)

MOTION FOR ATTORNEYS' FEES,
EXPENSES, AND INCENTIVE AWARDS - 24
Case No. 3:16-cv-05147-BHS



1918 Eighth Avenue, Suite 3300 • Seattle, WA  98101
(206) 623-7292 • FAX (206) 623-0594