THE HONORABLE BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT, WESTERN DISTRICT OF WASHINGTON
AT TACOMA

AMRISH RAJAGOPALAN, MARIE
JOHNSON-PEREDO, ROBERT HEWSON,
DONTE CHEEKS, DEBORAH HORTON,
RICHARD PIERCE, ERMA SUE CLYATT,
ROBERT JOYCE, AMY JOYCE, ARTHUR
FULLER, DAWN MEADE, WAHAB
EKUNSUMI, KAREN HEA, ALEX
CASIANO, DECEMBER GUZZO, BEN
PARKER, CHERYL ANDERSON, CARMEN
ALFONSO, BETH JUNGEN, TANYA
GWATHNEY, KEVIN DELOACH, SCOTT
SNOEK, KELLY ENDERS, THOMAS
LUDWICK, DONALD BOGAN, BILL
KRUSE, JOYCE DRUMMOND, TAMARA
COOPER, DEBRA MILLER, GEORGE
LAWRENCE, CYNTHIA OXENDINE,
MARTIN ANDERSON, ANGELA ROSS,
ANDREA TOPPS, DEBRA FINAZZO,
SHARRON BLACK, SYLVIA HADCOCK,
AUDRIE LAWRENCE (POOLE), ADAM
WARD, ISHULA MCCONNELL, ERICA
CHASE, STEPHEN YOUNKINS, DAN
WEDDLE, STILLMAN PARKER, TINA
ROBERTS-ASHBY, BRANDON ASHBY,
VALERIE NEWSOME, and RUSSEL
TANNER, on behalf of themselves and others
similarly situated,

                    Plaintiffs,

   v.

FIDELITY AND DEPOSIT COMPANY OF
MARYLAND, as Surety for Meracord LLC,

                    Defendant.

No. 3:16-cv-05147-BHS

PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT

NOTED ON MOTION CALENDAR:
May 12, 2017

MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT
Case No. 3:16-cv-05147-BHS



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................................ 1

II. FACTUAL BACKGROUND ..................................................................................... 3

    A.  The Meracord Actions ................................................................................... 3

    B.  The Sureties Actions ...................................................................................... 3

    C.  Settlement Negotiations ................................................................................. 5

III. THE TERMS OF THE SETTLEMENT ..................................................................... 5

    A.  The Settlement Fund ...................................................................................... 5

    B.  The Proposed Class ....................................................................................... 6

IV. ARGUMENT .............................................................................................................. 6

    A.  The Court's Role in Approving a Class Action Settlement ........................... 6

        1.  The Settlement is the result of arm's-length negotiations. ............... 8

        2.  The Settlement has no obvious deficiencies when considered in
            relation to the Plaintiffs' case, and the monetary recovery is a
            highly favorable result. ..................................................................... 9

        3.  The settlement does not provide preferential treatment for segments
            of the Settlement Class or the Settlement Class Representatives. .................. 10

            a.  All Settlement Class Members will be entitled to their *pro
                rata* share of their State Settlement Funds. ......................... 10

            b.  The incentive awards for Settlement Class Representatives
                reflect the work they have undertaken on behalf of
                 Settlement Class. ................................................................... 11

        4.  The settlement falls within the range of possible approval ............. 12

        5.  The proposed settlement is fair, reasonable, adequate, and in the
            best interests of the Settlement Class. .............................................. 12

V.  THE SETTLEMENT MEETS THE CRITERIA NECESSARY FOR THIS
    COURT TO CERTIFY THE CLASS FOR SETTLEMENT PURPOSES AND
    GRANT PRELIMINARY APPROVAL. .................................................................. 13

    A.  The Proposed Settlement Class Is Ascertainable .......................................... 13

    B.  The Settlement Class Satisfies Rule 23(a) .................................................... 14

MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT - i
Case No. 3:16-cv-05147-BHS

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1.   The Settlement Class is so numerous that joinder is impracticable.................14

2.   Numerous common issues of law and fact exist. ............................................15

3.   The Settlement Class Representatives' claims are typical of those of other Settlement Class Members...............................................................16

4.   The Settlement Class Representatives and their counsel adequately represent the interests of the Settlement Class. ................................17

C.   The Settlement Class Satisfies The Requirements of Rule 23(b)(3). ...................17

1.   Common questions of law and fact predominate over individual questions. .....................................................................................18

2.   A class action is superior to other available methods. ...................................19

D.   The Court Should Appoint Plaintiffs' Counsel as Class Counsel.........................20

VI.   PROPOSED NOTICE PLAN ............................................................................21

VII.   PROPOSED PLAN OF ALLOCATION .............................................................23

VIII.   THE COURT SHOULD SET SETTLEMENT DEADLINES AND SCHEDULE A FAIRNESS HEARING......................................................................24

IX.   CONCLUSION...................................................................................................25



1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

## CASES

4

5

*Abdullah v. U.S. Sec. Assocs., Inc.*,
   731 F.3d 952 (9th Cir. 2013) ........................................................................15, 18

6

*Agne v. Papa John's Int'l.*,
   286 F.R.D. 559 (W.D. Wash. 2012) .......................................................................13

7

8

*Air Lines Stewards & Stewardesses Ass'n Local 550 v. Am. Airlines, Inc.*,
   455 F.2d 101 (7th Cir. 1972) ..................................................................................21

9

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997).............................................................................14, 19, 21

10

11

*Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*,
   133 S. Ct. 1184 (2013).............................................................................................18

12

13

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ....................................................................................8

14

*Brown v. Consumer Law Assocs., LLC*,
   283 F.R.D. 602 (E.D. Wash. 2012).........................................................................15

15

16

*Carlough v. Amchem Prods., Inc.*,
   158 F.R.D. 314 (E.D. Pa. 1993)...............................................................................21

17

18

*Churchill Vill., L.L.C. v. GE*,
   361 F.3d 566 (9th Cir. 2004) ...................................................................................12

19

*In re Citric Acid Antitrust Litig.*,
   145 F. Supp. 2d 1152 (N.D. Cal. 2001) .............................................................10, 23

20

21

*In re Citric Acid Antitrust Litig.*,
   1996 WL 655791 (N.D. Cal. Oct. 2, 1996)..............................................................18

22

23

*Collins v. Cargill Meat Solutions Corp.*,
   274 F.R.D. 294 (E.D. Cal. 2011) ...............................................................................7

24

*Costelo v. Chertoff*,
   258 F.R.D. 600 (C.D. Cal. 2009).............................................................................16

25

26

*Durrett v. Housing Auth. of Providence*,
   896 F.2d 600 (1st Cir. 1990)....................................................................................21

27

28

MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT - iii
Case No. 3:16-cv-05147-BHS



*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ...................................................................16, 17

*Ellis v. Naval Air Rework Facility*,
    87 F.R.D. 15 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) ......................12

*Evans v. IAC/Interactive Corp.*,
    244 F.R.D. 568 (C.D. Cal. 2007) ...........................................................13

*Farley v. Baird, Patrick & Co., Inc.*,
    1992 WL 321632 (S.D.N.Y. Oct. 28, 1992) ...............................................20

*In re First Am. Corp. ERISA Litig.*,
    258 F.R.D. 610 (C.D. Cal. 2009) ...........................................................14

*Fraley v. Facebook, Inc.*,
    2012 U.S. Dist. LEXIS 116526 (N.D. Cal. Aug. 17, 2012)...............................7, 12

*Galvan v. KDI Distrib.*,
    2011 U.S. Dist. LEXIS 127602 (C.D. Cal. Oct. 25, 2011) ............................ *passim*

*Gaudin v. Saxon Mortg. Servs., Inc.*,
    2015 U.S. Dist. LEXIS 159020 (N.D. Cal. Nov. 23, 2015)...............................10

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ......................................................14, 15, 18

*Harrington v. City of Albuquerque*,
    222 F.R.D. 505 (D.N.M. 2004)...............................................................20

*Hartman v. United Bank Card Inc.*,
    2012 WL 4758052 (W.D. Wash. Oct. 4, 2012) ............................................14

*In re High-Tech Emp. Antitrust Litig.*,
    2015 U.S. Dist. LEXIS 118051 (N.D. Cal. Sept. 2, 2015) ................................10

*In re Inter-Op Hip Prosthesis Liab. Litig.*,
    204 F.R.D. 330 (N.D. Ohio 2001) ............................................................7

*Z.D. ex rel. J.D. v. Grp. Health Co-op.*,
    2012 WL 1977962 (W.D. Wash. June 1, 2012)...............................................14

*Kakani v. Oracle Corp.*,
    2007 U.S. Dist. LEXIS 47515 (N.D. Cal. June 19, 2007) ..................................7

*Keegan v. Am. Honda Motor Co.*,
    284 F.R.D. 504 (C.D. Cal. 2012) ...........................................................19



*Kirkpatrick v. Ironwood Commc'ns, Inc.*,
    2006 U.S. Dist. LEXIS 57713 (W.D. Wash. Aug. 16, 2006) ................................15

*Lerwill v. Inflight Motion Pictures, Inc.*,
    582 F.2d 507 (9th Cir. 1978) ................................19

*In re Lloyds' Am. Trust Fund Litig.*,
    2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ................................24

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
    244 F.3d 1152 (9th Cir. 2001) ................................18

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ................................9

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ................................12

*Noll v. eBay, Inc.*,
    2015 U.S. Dist. LEXIS 123147 (N.D. Cal. Sept. 15, 2015) ................................10

*In re Northrop Grumman Corp. ERISA Litig.*,
    2011 U.S. Dist. LEXIS 94451 (C.D. Cal. Mar. 29, 2011) ................................13

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ................................7, 12

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2007) ................................9

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ................................11

*Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris, Inc.*,
    188 F.R.D. 365 (D. Or. 1998) ................................17

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
    962 F. Supp. 450 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998) ................................22

*Rajagopalan v. NoteWorld*,
    No. 3:11-cv-05574 (W.D. Wash.) ................................3

*Reppert v. Marvin Lumber & Cedar Co.*,
    359 F.3d 53 (1st Cir. 2004) ................................21

*Rivera v. Bio Engineered Supplements & Nutrition, Inc.*,
    2008 U.S. Dist. LEXIS 95083 (C.D. Cal. Nov. 13, 2008) ................................15

MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT - v
Case No. 3:16-cv-05147-BHS



*Rodriguez v. Carlson*,
    166 F.R.D. 465 (E.D. Wash. 1996)................................................................15

*Roshandel v. Chertoff*,
    554 F. Supp. 2d 1194 (W.D. Wash. 2008), *amended in part*, 2008 WL
    2275558 (W.D. Wash. June 3, 2008).............................................................15

*Silber v. Mabon*,
    18 F.3d 1449 (9th Cir. 1994) .......................................................................21

*Smith v. Univ. of Wash. Law Sch.*,
    2 F. Supp. 2d 1324 (W.D. Wash. 1998).....................................................14, 15

*In re Sugar Indus. Antitrust Litig.*,
    1976 WL 1374 (N.D. Cal. May 21, 1976) ....................................................18

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ......................................................7, 12

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016).................................................................................18

*Villegas v. J.P. Morgan Chase & Co.*,
    2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ...............................................9

*In re Vitamins Antitrust Litig.*,
    2000 WL 1737867 (D.D.C. Mar. 31, 2000)..................................................24

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ................................................................................18

*Williams v. Vukovich*,
    720 F.2d 909 (6th Cir. 1983) .........................................................................7

*Yokoyama v. Midland Nat'l Life Ins. Co.*,
    594 F.3d 1087 (9th Cir. 2010) .....................................................................18

*Zepeda v. Paypal, Inc.*,
    2015 U.S. Dist. LEXIS 150577 (N.D. Cal. Nov. 5, 2015)...........................7, 10, 12

*Zinser v. Accufix Research Inst., Inc*.,
    253 F.3d 1180 (9th Cir.), *amended*, 273 F.3d 1266 (9th Cir. 2001)....................14

## OTHER AUTHORITIES

Fed. R. Civ. P. 23 ........................................................................... *passim*

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.632 (2004)...................................7



MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.633 (2004)......................................................7

MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.212 (1995)................................................21, 22

MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT - vii
Case No. 3:16-cv-05147-BHS



# I.   INTRODUCTION

Plaintiffs and proposed class representatives in this putative class action are consumers who allege that they were victims of Meracord LLC (formerly NoteWorld LLC), a licensed money transmitter, and a network of co-conspirators that charged illegal fees in connection with dubious debt relief programs. Plaintiffs allege that Fidelity and Deposit Company of Maryland ("F&D" or "Settling Defendant"), along with Platte River Insurance Company ("Platte River"), (together, "the Sureties"), issued surety bonds backing Meracord's activities as a money transmitter, and that as a result, F&D and Platte River are liable as sureties for Meracord's actions.

Settlement Class Representatives Alex Casiano, Amrish Rajagopalan, Amy Joyce, Andrea Topps, Arthur Fuller, Audrie Lawrence (Poole), Beth Jungen, Carmen Alfonso, Cheryl Anderson, Cynthia Oxendine, Dan Weddle, Dawn Meade, Deborah Horton, Donald Bogan, Donte Cheeks, Erica Chase (Moniz), Erma Sue Clyatt, Karen Hea, Kevin Deloach, Marie Johnson-Peredo, Richard Pierce, Robert Hewson, Robert Joyce, Russel Tanner, Sylvia Hadcock, Tamara Cooper, Traci McCormick, and Wahab Ekunsumi (collectively, the "Settlement Class Representatives"),[1] and their counsel, respectfully submit this memorandum in support of their motion for preliminary approval of the Class Action Settlement Agreement and Release, dated April 20, 2017 ("the Settlement Agreement" or "the Settlement") between Settlement Class Representatives, on behalf of themselves and the Settlement Class, and F&D (collectively, "Settling Parties"), attached as Exhibit A to the Declaration of Thomas E. Loeser In Support of Plaintiffs' Motion For Preliminary Approval of Class Action Settlement ("Loeser Decl.").[2] Plaintiffs and Settlement Class Representatives request that the Court enter an order:

(1)      preliminarily approving the Settlement;

(2)      preliminarily approving the Plan of Allocation;

---

[1] The claims of all other Plaintiffs in this action were previously settled in the Class Action Settlement with Platte River Insurance Company. *See* Section II.C below; Dkt. 41.

[2] Unless otherwise noted, all defined terms in this Motion have the same meaning as in the Settlement Agreement.

MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT - 1
Case No. 3:16-cv-05147-BHS

(3)    approving the form and method for providing notice of the Settlement to the Settlement Class;

(4)    approving the retention of Garden City Group, LLC ("GCG") as the Settlement Administrator[3]; and

(5)    scheduling a Settlement Hearing at which the Court will consider: i) final approval of the Settlement; ii) final approval of the Plan of Allocation; iii) Class Counsel's request for fees and expenses; and iv) entry of the Final Judgment and Order.

The Settlement provides an immediate and substantial benefit of $9,875,000 to the Settlement Class. The Settlement meets the standard for preliminary approval because it was the product of arm's-length negotiation between experienced counsel; has no obvious deficiencies; does not grant preferential treatment to any portion of the Settlement Class; and falls within the range of possible approval.

The Court should also grant preliminary approval of the proposed Plan of Allocation because it seeks to disburse the settlement amount to Settlement Class Members based in large part on their proportionate losses and according to the amounts available under the surety bonds issued in each relevant state, and is thus "rationally based on legitimate considerations."

The Court should also approve the proposed Notice and method of notice to Class members because the Notice complies with the requirements of Rule 23(c)(2)(B) and the proposed method of notice satisfies the requirements of Rule 23 and due process. Additionally, the Court should approve the Settlement Administrator selected by the Class Representatives to administer the method of notice and administration of the Settlement proceeds.

Lastly, the Court should schedule a final hearing for at least 130 days after the preliminary approval order is entered, to allow sufficient time to provide notice to Class Members and the U.S. and state attorneys general as required by the Class Action Fairness Act, to allow Class Members to object or exclude themselves from the Settlement Class, and to allow

---

[3] GCG is a full-service settlement administrator with extensive experience and expertise in every aspect of class action administration, including notice and publication, website design, claimant communications, distribution, and tax reporting. *See* Loeser Decl., Exhibit B (Garden City Group Corporate Resume). Moreover, GCG served as the Administrator for the related settlement with Platte River, and has already done a significant amount of the initial setup work that will be necessary for the administration of this Settlement. Declaration of Celeste H.G. Boyd In Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Boyd Decl.") ¶ 4.

HAGENS BERMAN

1918 Eighth Avenue, Suite 3300 • Seattle, WA  98101
(206) 623-7292 • FAX (206) 623-0594

the Settlement Class Representatives to review any objections and file a motion for Final Approval.

## II.   FACTUAL BACKGROUND

### A.   The Meracord Actions

On July 26, 2011, Amrish Rajagopalan filed a class action lawsuit in the Western District of Washington against NoteWorld, LLC, *Rajagopalan v. NoteWorld*, No. 3:11-cv-05574 (W.D. Wash.), alleging that NoteWorld—which later changed its name to Meracord LLC ("Meracord")—was a payment processor working with a network of "front-end" debt relief companies ("Front DRCs") to defraud customers and charge hundreds of millions of dollars in illegal fees.

The *Rajagopalan v. NoteWorld* action was subsequently consolidated with another similar class action, *Canada v. Meracord*, No. 3:12-cv-05657 (W.D. Wash., Filed July 24, 2012), and the consolidated action captioned *Rajagopalan, et al. v. Meracord LLC*, No. 3:12-cv-05657-BHS ("*Meracord Action*").

On March 2, 2015, the Court issued a Final Judgment in the *Meracord Action*, certifying a class of consumers ("the Meracord Class") and awarding that class $1.45 billion in damages. *Meracord Action* Dkt. 287. Specifically, this Court certified a class consisting of

> all persons in a Surety State who established an account with Meracord LLC (formerly NoteWorld) or any subsidiary thereof from which Meracord processed any payments related to debt settlement, including MARS, within the Bond Period of their state of residence.

### B.   The Sureties Actions

F&D issued surety bonds for Meracord pursuant to money transmitter or escrow statutes of the following states: Arizona, California, Colorado, Connecticut, Georgia, Indiana, Kentucky, Maryland, Michigan, Missouri, New Hampshire, New Jersey, New York, Ohio, Pennsylvania, Tennessee, Texas, Washington, and Wyoming (collectively, "the F&D States"). Platte River issued surety bonds for Meracord pursuant to statutes in the following states: Alabama, Alaska, Arkansas, Delaware, Florida, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maine,

Minnesota, Mississippi, Nebraska, Nevada, North Carolina, North Dakota, Oklahoma, Rhode Island, South Dakota, Vermont, Virginia, Washington D.C., West Virginia, Wisconsin, and Wyoming. Collectively, the states where F&D and/or Platte River issued surety bonds are referred to as "Bond States."

On April 23, 2013, Donte Cheeks brought an action in the Northern District of California, *Cheeks v. Fidelity and Deposit Company of Maryland and Platte River Ins. Co., as sureties for Meracord LLC*, No. 4:13-cv-01854-DMR (N.D. Cal. Filed April 23, 2013), which is currently stayed.

On June 15, 2015, the Meracord Class brought an action against the Sureties, alleging generally that the Sureties were liable to the Meracord Class for the full amount of the Bonds, and for additional sums under statutory and common law bad faith. *Rajagopalan, et al., on behalf of the Class Certified in Rajagopalan, et al. v. Meracord LLC, v. Fidelity and Deposit Company of Maryland and Platte River Insurance Company, as Sureties for Meracord LLC*, No. 2:15-cv-00957-BHS (W.D. Wash.) ("*Surety I*").

On March 25, 2016, the Plaintiffs in *Surety I* voluntarily dismissed their complaint. On February 24, 2016, certain Settlement Class Representatives filed the above-captioned action against the Sureties, alleging generally that the Sureties were liable to a putative class substantially identical to the Meracord Class for the full amount of the Bonds, and for additional statutory and common law bad faith. *Rajagopalan, et al. v. Fidelity and Deposit Company of Maryland and Platte River Insurance Companies, as Sureties for Meracord LLC*, No. 3:16-cv-05147-BHS (W.D. Wash.) ("*Surety II*").

On July 18, 2016, Class Representatives of the Meracord Class brought an action against F&D, alleging generally that F&D is liable to Meracord for statutory and common law bad faith—damages for which are payable to the Meracord Class as the legal owner of Meracord's claims against F&D. *Rajagopalan, et al. v. Fidelity and Deposit Co. of Maryland*, No. 3:16-cv-05739-BHS (W.D. Wash., Removed August 31, 2016) ("*Surety III*").



1

**C.    Settlement Negotiations**

2           Settlement discussions with both Sureties were first held in October 2013, in conjunction

3   with mediation scheduled in the *Meracord Action*. At the time, both Sureties were represented by

4   the same counsel. The mediation did not result in a settlement.

5           In June 2015, Platte River retained separate counsel, and beginning in August 2015, Class

6   Counsel and Platte River engaged in extensive, arm's-length negotiations involving in-person,

7   telephonic, and electronic discussions, before agreeing to the terms of the Settlement. Fidelity

8   was not a party to those negotiations. As a result of those negotiations, a settlement was reached

9   between Platte River and Settlement Class Representatives for the Platte River States. Dkt. 15-1.

10  That agreement was preliminarily approved by the Court on May 3, 2016, Dkt. 17, and after

11  notice to the class and a final fairness hearing, the Court finally approved the Platte River

12  settlement on August 30, 2016, Dkt. 41.

13          On August 31, 2016, F&D filed a motion to dismiss the *Surety III* action. *Surety*

14  *III* Dkt. 8, on which the Court requested additional briefing regarding the possible certification of

15  an issue of state law to the Washington Supreme Court, *Surety III* Dkt. 21 (Jan. 17, 2017). On

16  January 12, 2017, Plaintiffs filed a motion for partial summary judgment on certain F&D Bond

17  claims. After agreeing to a settlement meeting, the Parties stipulated to a stay of both motions.

18          On January 18, 2017, counsel for the Parties conducted an in-person settlement meeting

19  in Seattle, at which they came to a tentative settlement agreement after over a half day of

20  negotiations. Loeser Decl. ¶ 2. After further negotiations via email and phone, the Parties

21  reached the essential terms of the agreement in early March 2017, and the final Settlement

22  Agreement was signed by the Parties on April 20, 2017. *Id*. & Ex. A.

23                              **III.   THE TERMS OF THE SETTLEMENT**

24  **A.    The Settlement Fund**

25          The Agreement provides that F&D will pay $9,875,000 to create the Settlement Fund,

26  which will be apportioned among the Bond States, for which the Settlement establishes State

27

28

MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT - 5
Case No. 3:16-cv-05147-BHS

Settlement Funds, as listed in Appendix A to the Settlement Agreement.[4] The total amount of the

Settlement Fund is made in exchange for a complete release of all claims against F&D.[5] The

total Settlement Fund is an "all in" number which includes, without limitation, all monetary

benefits to the Settlement Class, participation awards for Settlement Class Representatives,

attorneys' fees, and all administration costs and expenses, notice costs and expenses, and

settlement costs and expenses.

**B.     The Proposed Class**

The Agreement defines the Settlement Class as follows:

> all persons who had an account at Meracord from which Meracord
> deducted any fees related to debt settlement services (including
> mortgage assistance relief services) and who, while residing in a
> Settlement State, made payments to such account within the State
> Settlement Period[6] of their state of residence.

Excluded from the Class are the Released Parties, Platte River, and Meracord, as well as their

officers and directors, members of their immediate families and their legal representatives, heirs,

successors, or assigns, and any entity in which any Released Parties, Platte River, or Meracord

has or had a controlling interest.

## IV.   ARGUMENT

**A.     The Court's Role in Approving a Class Action Settlement**

Federal Rule of Civil Procedure 23(e) requires judicial approval of any compromise or

settlement of class action claims. Approval of a settlement is a multi-step process, beginning

with preliminary approval, which then allows notice to be given to the class and objections to be

---

[4] The apportionment of State Settlement Funds is based on allocating 85-100% of the Bond Amount to each F&D State, and then distributing the remaining amount among all Bond States according to their *pro rata* share of class members as identified in the Meracord Database. Boyd Decl. ¶ 6. The only exception is Washington, which is an F&D State but, because of the broad language of the Bond, it will be distributed nationwide among all Bond States. *Id*.

[5] In certain limited circumstances identified in the Settlement Agreement—principally the objection by State Licensing Agencies—F&D has the ability to remove particular Bonds (or all Bonds) from the Settlement, in which case the Settlement Fund would be reduced accordingly. *See* Settlement Agreement ¶¶ 38-39.

[6] The Settlement Periods are those listed in Appendix A to the Settlement Agreement.

MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT - 6
Case No. 3:16-cv-05147-BHS



filed, after which there is a motion for final approval and a fairness hearing.[7] Preliminary approval is thus not a dispositive assessment of the fairness of the proposed settlement, but rather determines whether it falls within the "range of possible approval."[8] Preliminary approval establishes an "initial presumption" of fairness,[9] such that notice may be given to the class and the class may have a "full and fair opportunity to consider the proposed [settlement] and develop a response."[10]

Courts have consistently noted that the standard for preliminary approval is *less rigorous* than the standard for final approval. At the preliminary approval stage, Courts employ a "threshold of plausibility" standard intended to identify conspicuous defects.[11] Unless the Court's initial examination "disclose[s] grounds to doubt its fairness or other obvious deficiencies," the Court should order that notice of a formal fairness hearing be given to settlement class members under Rule 23(e).[12]

Preliminary approval of a settlement and notice to the proposed class is appropriate if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls with the range of possible approval.[13] The "initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge."[14]

---

[7] *See* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.632, 320-21 (2004) ("MANUAL"). All internal citations and quotations omitted and all emphasis added, unless otherwise indicated.

[8] *Id.*; *see also Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 301-302 (E.D. Cal. 2011).

[9] *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

[10] *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983).

[11] *See, e.g., Kakani v. Oracle Corp.*, 2007 U.S. Dist. LEXIS 47515, at *16 (N.D. Cal. June 19, 2007); *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 337-38 (N.D. Ohio 2001).

[12] *See* MANUAL, § 21.633 at 321-22.

[13] *See Zepeda v. Paypal, Inc.*, 2015 U.S. Dist. LEXIS 150577, at *14 (N.D. Cal. Nov. 5, 2015); *Fraley v. Facebook, Inc.*, 2012 U.S. Dist. LEXIS 116526, at *4 n.1 (N.D. Cal. Aug. 17, 2012) (same); *Tableware*, 484 F. Supp. 2d at 1079 (same).

[14] *Officers for Justice v. Civil Serv. Comm'n* ("*OFJ*"), 688 F.2d 615, 625 (9th Cir. 1982).



1

### 1.      The Settlement is the result of arm's-length negotiations.

This Settlement arises out of extended, informed, arm's-length negotiations between counsel for the Settling Parties. The Settling Parties reached agreement after several years of litigation (including the underlying litigation against Meracord), discovery and investigation, and multiple discussions between counsel concerning the detailed terms of the Settlement, including the Settlement Amount. In addition, the Settling Parties previously took part in the multi-party mediation conducted by experienced mediator James A. Smith in October 2013.[15] More recently, the Settling Parties participated in an in-person settlement negotiation in January 2017, in addition to substantial subsequent discussions via phone and email prior to reaching the current Settlement. The Settlement is the end result of all of these non-collusive negotiations between sophisticated sets of counsel.

In addition, the Settlement itself, taken as a whole, bears no signs of collusion or conflict. In its opinion in *In re Bluetooth*, the Ninth Circuit admonished that courts must, at the final approval stage, ensure that the settlement, taken as a whole, is free of collusion or any indication that the pursuit of the interests of the class counsel or the named plaintiffs "infected" the negotiations.[16] The Ninth Circuit has pointed to three factors as troubling signs of a potential disregard for the class's interests during the course of negotiation:

> 1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;
>
> 2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries "the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class;" and
>
> 3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.[17]

Here, none of those signs are present. The proposed settlement is a common fund, all-in settlement with no possibility of reversion. The funds will be used to cover costs and fees, and to

---

[15] *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011) (finding the presence of a neutral mediator "a factor weighing in favor of a finding of non-collusiveness").

[16] *Id*. at 946-48.

[17] *Id*. at 947.

HB  HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

compensate the Settlement Class based on a *pro rata* formula. There is no "clear sailing" provision, no payment of fees separate and apart from the Settlement Fund, and no "kicker" provision like the one in *In re Bluetooth* which would allow funds not awarded to revert to Platte River. The proposed class notices inform Settlement Class Members that Class Counsel will make a request for attorneys' fees up to 30 percent of the settlement fund.[18] In short, this Settlement is entitled to a presumption of fairness.

### 2. The Settlement has no obvious deficiencies when considered in relation to the Plaintiffs' case, and the monetary recovery is a highly favorable result.

The proposed settlement easily clears the hurdles for preliminary approval. This Court is aware of the risk faced by Settlement Class Members of no recovery, especially considering that Meracord is no longer in business and has no remaining assets—including insurance policies—with which to compensate Settlement Class Members. The Surety Bonds represent the last remaining avenue of recovery for Settlement Class Members, who have been waiting for years with very little hope of any compensation. The Agreement provides for the payment of nearly 90% of the F&D's maximum likely exposure on its Bonds.[19] The face value of the Bonds represents the maximum amount recoverable under the Bond claims, even had the Settlement Class Representatives gone to trial and prevailed on those claims.[20] In light of the risks, expenses and delays to the Settlement Class of continuing litigation, the payment of nearly 90% of F&D's maximum exposure on the Bonds represents a very favorable outcome for the Settlement Class, and compares favorably to settlements finally approved in other class cases.[21]

---

[18] *See* Settlement Agreement and Exhibit F thereto (Long-Form Notice).

[19] F&D has provided Class Counsel with evidence that Bonds in two states—Georgia and Indiana—were canceled prior to becoming effective. In addition, in two states—Kentucky and Wyoming—the amount of fees paid by Settlement Class Members to Meracord and its co-conspirators was far less than the face value of F&D's Bonds (approximately $135,000 in fees in Kentucky, compared with a $500,000 bond; and approximately $33,000 in fees in Wyoming, compared with a $400,000 bond). With those reductions, F&D's maximum likely exposure on its Bonds was $11,037,556. The Settlement Fund of $9,875,000 thus represents 89.5% of F&D's maximum exposure on the Bonds. Boyd Decl. ¶ 7.

[20] As noted above, for Kentucky and Wyoming, F&D's maximum exposure was likely limited to class member fees paid, rather than the face value of the Bonds.

[21] *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (one-sixth of potential recovery was fair and adequate); *Villegas v. J.P. Morgan Chase & Co.*, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (15% of potential recovery approved); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2007) (6-9% of potential recovery was fair and adequate).

MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT - 9
Case No. 3:16-cv-05147-BHS

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1    Class Counsel having extensively litigated this case and the related cases against both the

2   Sureties and Meracord for over five-and-a-half years, Settlement Class Representatives entered

3   into this Agreement with a thorough understanding of the strengths and weaknesses of their case.

4   The parties to the litigation have conducted extensive discovery and analysis of the resulting

5   information—including, most notably, extensive analysis of Meracord's customer database (the

6   "Meracord Database") by an expert retained by Class Counsel, as well as analysis of specific

7   statutory and bond language for surety bonds issued in forty-five different states. Weighing the

8   developed stage of litigation against the risk that Settlement Class Members face in this

9   litigation, there are no obvious deficiencies regarding the Settlement.

### 3.    The settlement does not provide preferential treatment for segments of the Settlement Class or the Settlement Class Representatives.

The third factor to be considered by this Court in determining whether a settlement should be preliminarily approved is whether the settlement grants preferential treatment to class representatives or segments of the class.[22] This Settlement does not do either. It provides Settlement Class Members with a *pro rata* recovery according to the fees they paid to Meracord and its complicit debt settlement companies, and does not provide outsized incentive awards for Settlement Class Representatives.

### a.    All Settlement Class Members will be entitled to their *pro rata* share of their State Settlement Funds.

A plan of distribution of class settlement funds is subject to the "fair, reasonable and adequate" standard that applies to approval of class settlements.[23] A plan of distribution that compensates class members based on the type and extent of their injuries (including on a *pro rata* basis) is generally considered reasonable.[24]

---

[22] *Zepeda*, 2015 U.S. Dist. LEXIS 150577, at *14.

[23] *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001).

[24] *Gaudin v. Saxon Mortg. Servs., Inc.*, 2015 U.S. Dist. LEXIS 159020, at *23 (N.D. Cal. Nov. 23, 2015) ("Such a plan fairly treats class members by awarding a pro rata share to the class members based on the extent of their injuries."); *Noll v. eBay, Inc.*, 2015 U.S. Dist. LEXIS 123147, at *10, *50 (N.D. Cal. Sept. 15, 2015) (approving *pro-rata* distribution as fair and reasonable); *In re High-Tech Emp. Antitrust Litig.*, 2015 U.S. Dist. LEXIS 118051, at *29-30 (N.D. Cal. Sept. 2, 2015) (approving *pro-rata* distribution of fractional share based upon class member's total base salary as fair and reasonable).

MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT - 10
Case No. 3:16-cv-05147-BHS

Settlement Class Representatives propose to compensate Settlement Class Members from each of the Settlement States according to a distribution plan that provides for a *pro rata* share of the Settlement Fund. Specifically, distributions from the Settlement State (the "Net State Settlement Funds") will be made to residents of that state on a *pro rata* basis in proportion to the Total Unreturned Fees[25] paid by each Settlement Class Member from his or her Meracord account. Thus, each Settlement Class Member will get a share of the applicable Net State Settlement Fund for their state proportional to the Settlement Class Member's share of the Total Unreturned Fees paid by all Settlement Class Members in that state ("Distribution Amount"). An example of this calculation is contained in Appendix D to the Agreement. There will be no reversion of funds to F&D.

The Net State Settlement Funds will be distributed only to Settlement Class Members who were residents of the relevant state when they made payments to Meracord, as determined by the addresses found in Meracord's customer database or other reliable sources.

### b.   The incentive awards for Settlement Class Representatives reflect the work they have undertaken on behalf of Settlement Class.

This Agreement contemplates a $500 award to each Settlement Class Representative, with an additional $500 award to those Settlement Class Representatives who represented the original Meracord Class certified by the Court—some of whom have represented the class through over five and a half years of litigation. As the Ninth Circuit has recognized, "incentive awards that are intended to compensate class representatives for work undertaken on behalf of a class are fairly typical in class action cases."[26] Here, the Settlement Class Representatives have been actively involved in the litigation of these cases, providing information and/or documents in support of the litigation, reviewing and approving pleadings and other filings, and actively requesting updates on the status of the case as litigation of the underlying disputes wore on from year to year. Loeser Decl. ¶ 3. In light of their service and perseverance, Class Counsel will

---

[25] "Total Unreturned Fees" means, for each Settlement Class Member, the total amount of fees withdrawn from the Settlement Class Member's Meracord account and paid to Meracord, plus the total amount of fees withdrawn from the Settlement Class Member's Meracord account and paid to any debt-relief service provider.

[26] *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015).

MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT - 11
Case No. 3:16-cv-05147-BHS

HB  HAGENS BERMAN

1918 Eighth Avenue, Suite 3300 • Seattle, WA  98101
(206) 623-7292 • FAX (206) 623-0594

1  request an award of $500–$1,000 for each Settlement Class Representative, depending on the
2  length of time they have been involved in the litigation.[27]

3  **4.  The settlement falls within the range of possible approval.**

4  To grant preliminary approval, this Court must decide that the Settlement falls within the
5  range of possible approval.[28] The amount of the recovery for Settlement Class—nearly 90% of
6  F&D's maximum exposure on the Bonds—certainly falls within a reasonable range given that
7  the Settlement Class faced a very substantial possibility of no recovery.

8  **5.  The proposed settlement is fair, reasonable, adequate, and in the best
     interests of the Settlement Class.**

9
10 Counsel's judgment that the Settlement is fair and reasonable is entitled to great weight.[29]
11 "[A]bsent fraud, collusion, or the like, [the Court] should be hesitant to substitute its own
12 judgment for that of counsel."[30] The parties actively litigated this case and the cases that underlie
13 it for years, including a trip up to the Ninth Circuit Court of Appeals and back, and conducted
14 extensive discovery while simultaneously fighting heated battles. Both sides have demonstrated a
15 willingness and ability to litigate this case to judgment.

16 Counsel for the parties believe that this Settlement is in the best interest of their
17 respective clients. The Settlement compensation affords Settlement Class Members nearly all of
18 what they would be entitled to if they prevailed on their Bond claims. The challenge and expense
19 of this litigation—particularly in light of the fact that the company whose actions triggered the
20 Bond claims is no longer in business, and the complexity of litigating derivative liability claims
21 based on many different state statutory schemes—would prevent most, if not all, Settlement
22 Class Members from pursuing individual claims. A compromise that delivers such substantial

23
24 [27] *See* Settlement Agreement ¶ 12. This specific request will be made in a future filing along with Class
     Counsel's request for an award of attorneys' fees and expenses, assuming this Court grants preliminary approval to
     the Settlement.

25 [28] *See Zepeda*, 2015 U.S. Dist. LEXIS 150577, at *14; *Fraley*, 2012 U.S. Dist. LEXIS 116526, at *4 n.1;
     *Tableware*, 484 F. Supp. 2d at 1079.

26 [29] *See Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 576-77 (9th Cir. 2004); *OFJ*, 688 F.2d at 625 (same); *Ellis v.
     Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) ("the fact that
27 experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to
     considerable weight").

28 [30] *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004).

MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT - 12
Case No. 3:16-cv-05147-BHS

1  relief is a victory for the Settlement Class, and simultaneously allows the Settling Parties to

2  avoid the expense of additional discovery and the uncertainty and expense of trial.

3        **V.   THE SETTLEMENT MEETS THE CRITERIA NECESSARY FOR THIS COURT TO CERTIFY THE CLASS FOR SETTLEMENT PURPOSES AND GRANT PRELIMINARY APPROVAL.**

4

5        The Settlement Class must meet all requirements of Fed. R. Civ. P. 23(a), and satisfy one

6  of the elements of Rule 23(b). As discussed below, the Settlement Class meets all of the

7  requirements of Rule 23(a) and 23(b)(3) necessary for the Court to provisionally certify the

8  Settlement Class.

9  **A.   The Proposed Settlement Class Is Ascertainable**

10        Although not specified in Rule 23, courts imply a prerequisite that the proposed class be

11  ascertainable.[31] "A class definition should be precise, objective, and presently ascertainable."[32]

12  Ascertainability is satisfied when it is "administratively feasible for the court to determine

13  whether a particular individual is a member."[33]

14        The Settlement Class definition here utilizes objective criteria that make class

15  membership objectively verifiable. The identity of Settlement Class Members is easily

16  ascertainable through reference to "objective criteria"[34] because the Meracord Database

17  identifies by name each Class member who established an account with Meracord and had

18  payments processed through that account. Boyd Decl. ¶ 2.[35]

19

20

21

22  [31] *Galvan v. KDI Distrib.*, 2011 U.S. Dist. LEXIS 127602, at *8 (C.D. Cal. Oct. 25, 2011); *In re Northrop Grumman Corp. ERISA Litig.*, 2011 U.S. Dist. LEXIS 94451, at *26 n.61 (C.D. Cal. Mar. 29, 2011).

23  [32] *Evans v. IAC/Interactive Corp.*, 244 F.R.D. 568, 574 (C.D. Cal. 2007).

   [33] *In re Northrop Grumman*, 2011 U.S. Dist. LEXIS 94451, at *26 n.61.

24  [34] *See Agne v. Papa John's Int'l.*, 286 F.R.D. 559, 566 (W.D. Wash. 2012).

25  [35] Indeed, for purposes of notice to the Meracord Class, Meracord also provided a spreadsheet containing the names and email addresses associated with its customer accounts, and reported that of the 246,272 accounts, it had 186,741 email addresses, (*i.e.*, over 75% of the accounts have an associated email address). In addition, Class

26  Counsel maintains an additional database of customers who have contacted them about the Meracord litigation, which currently contains over 800 names and email addresses. Boyd Decl. ¶ 5. In the Platte River Settlement, the

27  Administrator was able to successfully send mailed notice to the addresses on file for 86% of the Settlement Class Members, and email notice to 92.8% of Meracord customers in the Database. *See* Motion for Final Approval of Platte River Settlement, Dkt. 33, at 7.

28

MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT - 13
Case No. 3:16-cv-05147-BHS

**B.    The Settlement Class Satisfies Rule 23(a)**

Plaintiffs seeking class certification bear the burden of demonstrating that each element of Rule 23 is satisfied.[36] "While the Court's analysis must be rigorous, Rule 23 confers to the district court broad discretion to determine whether a class should be certified, and to revisit that certification throughout the legal proceedings before the court."[37] Although plaintiffs must offer facts sufficient to satisfy the Rule 23 requirements,[38] the Court "need only form a 'reasonable judgment' on each certification requirement," taking the complaint's allegations as true and declining to make merits determinations.[39] Trial manageability, however, is not a factor to consider when deciding whether to certify a settlement class because there will not be a trial.[40]

**1.    The Settlement Class is so numerous that joinder is impracticable.**

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is "impracticable."[41] Numerosity "depends on the facts and circumstances of each case and does not, as a matter of law, require any specific minimum number of class members."[42] Courts generally find numerosity when a class includes at least 40 members.[43] Class size does not have to be "exactly determined" at the certification stage; "a class action may proceed upon estimates as to the size of the proposed class."[44]

Here, the numerosity requirement is easily met because Meracord's customer database evidences that over 140,000 accounts were established for Settlement Class Members. Boyd Decl. ¶ 3. Even taking into account the possibility that a Settlement Class Member might have

---

[36] *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir.), *amended*, 273 F.3d 1266 (9th Cir. 2001).

[37] *Galvan. Inc.*, 2011 U.S. Dist. LEXIS 127602, at *7.

[38] *In re First Am. Corp. ERISA Litig.*, 258 F.R.D. 610, 616 (C.D. Cal. 2009).

[39] *Galvan*, 2011 U.S. Dist. LEXIS 127602, at *7 (quoting *Gable v. Land Rover N. Am., Inc.*, 2011 U.S. Dist. LEXIS 90774, at *9 (C.D. Cal. July 25, 2011)).

[40] *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997).

[41] *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

[42] *Smith v. Univ. of Wash. Law Sch.*, 2 F. Supp. 2d 1324, 1340 (W.D. Wash. 1998).

[43] *See Z.D. ex rel. J.D. v. Grp. Health Co-op.*, 2012 WL 1977962, at *3 (W.D. Wash. June 1, 2012).

[44] *Hartman v. United Bank Card Inc.*, 2012 WL 4758052, at *10 (W.D. Wash. Oct. 4, 2012).

MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT - 14
Case No. 3:16-cv-05147-BHS



1918 Eighth Avenue, Suite 3300 • Seattle, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1    possessed more than one account, the number of class members clearly makes joinder

2    impracticable.[45]

3            **2.    Numerous common issues of law and fact exist.**

4            Settlement Class Representatives must demonstrate that there are questions of fact and

5    law that are common to the Settlement Class in order to satisfy Rule 23(a)(2). "[A] common

6    question 'must be of such a nature that it is capable of classwide resolution—which means that

7    the determination of its truth or falsity will resolve an issue that is central to the validity of each

8    of the claims in one stroke.'"[46] The "existence of shared legal issues with divergent factual

9    predicates is sufficient, as is a common core of salient facts coupled with disparate legal

10   remedies within the class."[47]

11           Commonality is liberally and permissively construed.[48]  It requires only "a single

12   *significant* question of law or fact."[49] A defendant's actions need not affect each Class member

13   in the same manner and individual differences in damages will not defeat class treatment.[50]

14           The litigation against F&D centers around one single and common core question:

15   whether Meracord's actions were sufficient to trigger F&D's liability under each Bond, and thus

16   whether the Bond Amounts listed in Appendix A to the Settlement Agreement are due and owing

17   to the Settlement Class. The relatively low commonality hurdle is satisfied here. The claims of

18   all prospective Settlement Class Members involve this same overriding question—a question

19   central to the case against F&D and sufficient to establish commonality.

20

21           [45] *See Brown v. Consumer Law Assocs., LLC*, 283 F.R.D. 602, 612 (E.D. Wash. 2012) (class of 894 debt
     settlement customers satisfied numerosity requirement).

22           [46] *Galvan*, 2011 U.S. Dist. LEXIS 127602, at *17 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541,
23   2551 (2011)).

     [47] *Rivera v. Bio Engineered Supplements & Nutrition, Inc.*, 2008 U.S. Dist. LEXIS 95083, at *15 (C.D. Cal.
24   Nov. 13, 2008) (quoting *Hanlon*, 150 F.3d at 1019).

     [48] *Hanlon*, 150 F.3d at 1019; *see also Kirkpatrick v. Ironwood Commc'ns, Inc.*, 2006 U.S. Dist. LEXIS 57713, at
25   *11-14 (W.D. Wash. Aug. 16, 2006); *Rodriguez v. Carlson*, 166 F.R.D. 465, 472 (E.D. Wash. 1996).

26           [49] *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (emphasis in original); *accord
     Roshandel v. Chertoff*, 554 F. Supp. 2d 1194, 1203 (W.D. Wash. 2008), *amended in part*, 2008 WL 2275558 (W.D.
27   Wash. June 3, 2008).

     [50] *Smith v. Univ. of Wash. Law Sch.*, 2 F. Supp. 2d at 1342; *Brown*, 283 F.R.D. at 612 (citing *Stearns v.
28   Ticketmaster Corp.*, 655 F.3d 1013, 1026 (9th Cir. 2011)).

MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT - 15
Case No. 3:16-cv-05147-BHS

1

2

### 3. The Settlement Class Representatives' claims are typical of those of other Settlement Class Members.

3

Rule 23(a)(3) requires that the class representatives' claims are typical of the class. "The

4

test of typicality 'is whether other members have the same or similar injury, whether the action is

5

based on conduct which is not unique to the named plaintiffs, and whether other class members

6

have been injured by the same course of conduct.'"[51] "Typicality refers to the nature of the claim

7

or defense of the class representative, and not to the specific facts from which it arose or the

8

relief sought."[52] Moreover, "[u]nder the 'permissive standards' of this Rule, 'representative

9

claims are 'typical' if they are reasonably co-extensive with those of absent class members; they

10

need not be substantially identical.'"[53] The "focus should be on the defendants' conduct and

11

plaintiff's legal theory, not the injury caused to the plaintiff."[54]

12

The proposed Settlement Class Representatives' claims here arise from a common course

13

of conduct and a common legal theory, and their interests are typical of and closely aligned with

14

those of the absent Settlement Class Members. With respect to their injuries, all Settlement Class

15

Members were injured by the Meracord Enterprise's illegal activity, and this Court already found

16

that Meracord's "violations of Washington consumer protection laws are typical of class

17

members." *Meracord Action* Dkt. 285 (Order Granting Plaintiffs' Mot. for Partial Summary Jmt.,

18

Mot. to Certify Class, and Mot. for Default Jmt.). Moreover, all Settlement Class Members seek

19

to collect on the same Bonds. Since the proposed Settlement Class Representatives' claims rely

20

on facts and legal theories identical to those of the Settlement Class, the typicality requirement is

21

satisfied.

22

23

24

25

[51] *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

26

[52] *Id.*

[53] *Galvan*, 2011 U.S. Dist. LEXIS 127602, at *18 (quoting *Hanlon*, 150 F.3d at 1020).

27

[54] *Costelo v. Chertoff*, 258 F.R.D. 600, 608 (C.D. Cal. 2009) (quoting *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005)).

28

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

4.    **The Settlement Class Representatives and their counsel adequately represent the interests of the Settlement Class.**

Rule 23(a)(4) requires that the representative parties fairly and adequately protect the interests of the class. The relevant inquiries are: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"[55]

Here, the proposed Settlement Class Representatives are committed to the action and have devoted substantial time to assisting counsel with this action, providing information and/or documents in support of the litigation, reviewing and approving pleadings and other filings, and actively requesting updates on the status of the case. Loeser Decl. ¶ 3. The proposed Settlement Class Representatives have no interests that are antagonistic to other Settlement Class Members, and in fact share a strong and identical interest in collecting on the Bonds to compensate Meracord's victims. Similarly, Class Counsel are well qualified, possess no conflicts of interest, and have already proven capable of prosecuting this action vigorously on behalf of the Settlement Class. *See* Section V.D. There can be no question that they are adequate, and indeed, the Court has already found that they are in the context of certifying the Meracord Class, *see Meracord Action* Dkt. 285, as well as in approving the Platte River Settlement, Dkt. 41.

**C.    The Settlement Class Satisfies The Requirements of Rule 23(b)(3).**

For certification under Rule 23(b)(3), common questions of law or fact must predominate over questions that affect only individual members of the class, and a class action must be found to be superior to other available methods of adjudication. Fed. R. Civ. P. 23(b)(3). "Judicial economy and fairness are the focus of the predominance and superiority requirements."[56] Both elements are satisfied here.

---

[55] *Ellis*, 657 F.3d at 985 (quoting *Hanlon*, 150 F.3d at 1020); *see also Galvan*, 2011 U.S. Dist. LEXIS 127602, at *20.

[56] *Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris, Inc.*, 188 F.R.D. 365, 375 (D. Or. 1998).

MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT - 17
Case No. 3:16-cv-05147-BHS



1

## 1.        Common questions of law and fact predominate over individual questions.

The predominance inquiry is meant to "tes[t] whether proposed classes are sufficiently cohesive to warrant adjudication by representation."[57] It "does *not* require a plaintiff seeking class certification to prove that each elemen[t] of [her] claim [is] susceptible to classwide proof . . . [only] that common questions *predominate* over any questions affecting only individual [class] members."[58] Nor must a plaintiff show, at the class certification stage, that those "questions will be answered, on the merits, in favor of the class."[59]

Common issues predominate here. The salient evidence necessary to establish Settlement Class Representatives' claims is common to all members of the Settlement Class: they seek to prove that as a result of Meracord's illegal conduct, the Bond Amounts are due and owing to Settlement Class Members. Settlement Class Representatives believe that the evidentiary presentation changes little regardless of whether there are 100 Class members or 1,000,000: in either instance, Plaintiffs would present the same classwide evidence of Meracord's wrongful conduct, and the same evidence with respect to F&D's liability on the Bonds. In the words of the Ninth Circuit, these common questions—and more—"present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication."[60]

Moreover, in determining whether common questions predominate, "the focus of this court should be principally on issues of liability."[61] "The potential existence of individualized damage assessments . . . does not detract from the action's suitability for class certification,"[62] but even if it did, there is no risk of that here, since Meracord's customer database provides a robust source of classwide information from which individual damage calculations can be made with relative certainty as well as administrative ease.

---

[57] *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. at 2566 (quoting *Amchem*, 521 U.S. at 623).

[58] *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184,1196 (2013) (emphasis in original).

[59] *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d at 964.

[60] *Hanlon*, 150 F.3d at 1022; *see also Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045-46 (2016).

[61] *In re Sugar Indus. Antitrust Litig.*, 1976 WL 1374, at *22 (N.D. Cal. May 21, 1976); *In re Citric Acid Antitrust Litig.*, 1996 WL 655791, at *6 (N.D. Cal. Oct. 2, 1996). *See also Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001).

[62] *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1089 (9th Cir. 2010).

HAGENS BERMAN

1    For these reasons, common issues predominate over any relevant individual issues.

2    **2.    A class action is superior to other available methods.**

3    Certification of a case is appropriate if class treatment "is superior to other available

4    methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). It

5    sets forth factors to be considered: (1) the interest of members of the class in individually

6    controlling the prosecution of separate actions; (2) the extent and nature of any litigation

7    concerning the controversy already commenced by members of the class; and (3) the desirability

8    of concentrating the litigation of the claims in a particular forum. *Id.*[63]

9    Prosecuting this action as a class action is clearly superior to other methods of

10   adjudicating this matter. The alternative to a class action—many duplicative individual actions—

11   would be inefficient and unfair. "Numerous individual actions would be expensive and time-

12   consuming and would create the danger of conflicting decisions as to persons similarly

13   situated."[64]

14   Specifically, factors (1) and (3) weigh in favor of concentrating the claims in a single

15   forum, since the damages sustained by each individual class member are too low, compared with

16   the costs of litigation, to incentivize Settlement Class Members to litigate their claims

17   individually. This is especially true given Meracord's defunct status, the very limited amount of

18   funds available from the Bonds relative to the amount of damages suffered by each Settlement

19   Class Member, and the disparity in resources between the typical Class Member and a well-

20   funded, litigation-savvy insurance company.[65] Class Counsel have already devoted significant

21   resources to this class litigation, having litigated in this Court, the Ninth Circuit, the Central

22   District of California, and the District of Arizona. Class Counsel have managed a labor-intensive

23   discovery and document-review effort; devoted substantial expert resources to analyzing

24   Meracord's customer database; engaged in mediation and settlement discussions; and engaged in

25

26   [63] The fourth factor, trial manageability, is not relevant when deciding whether to certify a settlement class. *Amchem*, 521 U.S. at 620.

27   [64] *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).

28   [65] *See, e.g.*, *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 522 (C.D. Cal. 2012).

MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT - 19
Case No. 3:16-cv-05147-BHS

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

significant motions practice on various issues across the different cases against Meracord and the Sureties. It is folly to suggest that an individual litigant could invest similar resources in pursuing his/her case. Certification thus conserves both individual and already-strapped judicial resources.

The second factor—the extent and nature of any similar litigation—also favors class certification. Settlement Class Representatives are not aware of any other litigation in the country involving similar claims—whether individual or classwide—on Meracord's Bonds. Thus, all factors support a finding that the class action device is the most efficient and effective means of resolving this controversy.

**D.      The Court Should Appoint Plaintiffs' Counsel as Class Counsel.**

Rule 23(g)(1)(A) sets forth the factors that the Court must consider in appointing class counsel: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the Class. Fed. R. Civ. P. 23(g)(1)(A). Class Counsel has litigated this action since its inception. Both proposed firms have extensive experience in handling complex commercial litigation, including class actions. 6/24/16 Decl. of Stuart M. Paynter in Support of Plaintiffs' Motion for Attorneys' Fees, Expenses, and Incentive Awards, Dkt. 27, Ex. 1 (Firm Resume); 6/24/16 Decl. of Thomas E. Loeser in Support of Plaintiffs' Motion for Attorneys' Fees, Expenses, and Incentive Awards, Dkt. 28, Ex. C (Firm Resume). In addition, as the Court is aware, Class Counsel have already committed extensive time and resources to this litigation. *See generally* Settlement Class Representatives' Amended Motion for Attorneys' Fees, Expenses, and Incentive Awards, Dkt. 29. The work done to date supports the conclusion that they should be appointed as Class Counsel for purposes of the Settlement.[66] The firms meet the criteria of Rule 23(g)(1)(C)(i).[67] Consequently, this Court

---

[66] *See, e.g., Harrington v. City of Albuquerque*, 222 F.R.D. 505, 520 (D.N.M. 2004).

[67] *Cf. Farley v. Baird, Patrick & Co., Inc.*, 1992 WL 321632, at *5 (S.D.N.Y. Oct. 28, 1992) ("[c]lass counsel's competency is presumed absent specific proof to the contrary by defendants").

MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT - 20
Case No. 3:16-cv-05147-BHS

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

should appoint The Paynter Law Firm PLLC and Hagens Berman Sobol Shapiro LLP as Settlement Class Counsel.

## VI.   PROPOSED NOTICE PLAN

Rule 23(e)(1) states that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Reasonable notice must be provided to Class Members to allow them an opportunity to object to the proposed Settlement.[68] Rule 23(e) requires notice of a proposed settlement "in such manner as the court directs." In a settlement class maintained under Rule 23(b)(3), Class notice must meet the requirements of both the Federal Rules of Civil Procedure 23(c)(2) and 23(e).[69] Under Rule 23(c)(2), notice to the class must be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort,"[70] although actual notice is not required.[71]

The MANUAL sets forth several elements of the "proper" content of notice. If these requirements are met, a notice satisfies Fed. R. Civ. P. 23(c)(2), Fed. R. Civ. P. 23(e) and due process, and binds all members of the class. The Notice must:

(1)   Describe the essential terms of the settlement;

(2)   Disclose any special benefits or incentives to the class representatives;

(3)   Provide information regarding attorneys' fees;

(4)   Indicate the time and place of the hearing to consider approval of the settlement, and the method for objection to and/or opting out of the settlement;

(5)   Explain the procedures for allocating and distributing settlement funds; and

(6)   Prominently display the address of class counsel and the procedure for making inquiries.[72]

---

[68] *See Durrett v. Housing Auth. of Providence*, 896 F.2d 600, 604 (1st Cir. 1990).

[69] *See Carlough v. Amchem Prods., Inc.*, 158 F.R.D. 314, 324-25 (E.D. Pa. 1993) (stating that requirements of Rule 23(c)(2) are stricter than requirements of Rule 23(e) and arguably stricter than the due process clause).

[70] *Amchem*, 521 U.S. at 617; *Reppert v. Marvin Lumber & Cedar Co.*, 359 F.3d 53, 56 (1st Cir. 2004).

[71] *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994).

[72] MANUAL, § 30.212 (3d ed. 1995); *see also, e.g., Air Lines Stewards & Stewardesses Ass'n Local 550 v. Am. Airlines, Inc.*, 455 F.2d 101, 108 (7th Cir. 1972) (notice that provided summary of proceedings to date, notified of

MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT - 21
Case No. 3:16-cv-05147-BHS

HB HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1   The proposed Long-Form Notice, attached as Exhibit F to the Agreement, is clear,

2   precise, informative, and meets the foregoing standards.[73] Further, the proposed notice program

3   outlined below provides "the best notice practicable under the circumstances, including

4   individual notice to all members who can be identified through reasonable effort."

5   Under the proposed Settlement, Class Counsel, using their database expert and working

6   with the Settlement Administrator, will attempt in good faith to identify Settlement Class

7   Members' last known mailing addresses and valid email addresses, primarily by reference to the

8   Meracord Database. Class Counsel, by and through the Settlement Administrator, will provide

9   Class Notice by (i) First-Class Mail (where available) notice substantially similar to the form

10   attached as Exhibit E to the Agreement ("Summary Notice"); (ii) email notice substantially

11   similar to the Summary Notice; and (iii) a content-neutral settlement website that will contain

12   notice substantially similar to the form attached as Exhibit F to the Agreement ("Long-Form

13   Notice"), as well as further information about the Settlement, including access to the Agreement

14   itself, as well as the pleadings ("Settlement Website").

15   During the Notice period, the Settlement Agreement also provides potential Settlement

16   Class Members with the opportunity to update information with the Administrator that might

17   affect their inclusion in the Settlement Class as well as the amount of any recovery—including

18   the state in which they made payments, and the amount of fees paid to Meracord. Settlement

19   Agreement ¶ 21.

20   Plaintiffs believe that the proposed Notice will fairly apprise Class Members of the

21   Settlement and their options, fulfilling the requirements of Fed. R. Civ. P. 23 and due process,

22

23   significance of judicial approval of settlement and informed of opportunity to object at the hearing satisfied due process).

24   [73] The Notice is also written in plain English and is easy to read and includes other information such as the case caption; a description of the Class; a description of the claims; a description of the Settlement; the names of counsel

25   for the Class; a statement of the maximum amount of attorneys' fees that may be sought by Plaintiffs' Class Counsel; the Fairness Hearing date; a description of Class Members' opportunity to appear at the hearing; a

26   statement of the procedures and deadlines for requesting exclusion and filing objections to the Settlement; and the manner in which to obtain further information. *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp.

27   450, 496 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998). *See also* MANUAL § 30.212 (Rule 23(e) notice designed to be only a summary of the litigation and settlement to apprise Class members of the right and opportunity to

28   inspect the complete settlement documents, papers and pleadings filed in the litigation).

MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT - 22
Case No. 3:16-cv-05147-BHS

and therefore should be approved by the Court. Indeed, the Notice and Notice Plan are substantially identical to those previously approved by this Court in the Platte River Settlement. *See* Preliminary Approval Order for Platte River Settlement, Dkt. 17 at ¶ 10-13.

## VII.  PROPOSED PLAN OF ALLOCATION

A plan of allocation of class settlement funds is subject to the "fair, reasonable and adequate" standard that applies to approval of class settlements.[74] The Parties propose that payments under this Settlement shall be calculated in accordance with the following Plan of Allocation:

19.  The State Settlement Amount for each Settlement State will be distributed only to Settlement Class Members who were residents of that state when they made payments to Meracord, as determined by the addresses found in Meracord's customer database or other reliable source, in Class Counsel's discretion.

20.  ***Distribution Amount***. Distributions from each Net State Settlement Fund will be made to residents of that state on a *pro rata* basis in proportion to the Total Unreturned Fees paid by each Settlement Class Member from his or her Meracord account. Thus, each Settlement Class Member will get a share of the applicable Net State Settlement Fund for their state proportional to the Settlement Class Member's share of the Total Unreturned Fees paid by all Settlement Class Members in that state (**"Distribution Amount"**). An example of this calculation is contained in Appendix D to this Agreement. No Distributions under this Paragraph shall be made prior to the Effective Date.

21.  ***Opportunity to Update Meracord Account Information***. The Long-Form Notice and Settlement Website shall inform potential Settlement Class Members that (i) their membership in the Settlement Class, (ii) the amount of their Total Unreturned Fees, and (iii) the mailing address to which any Distribution Check will be sent (**"Meracord Account Information"**) will be based on the Meracord Database. Class Counsel, through the Settlement Administrator, shall provide potential Settlement Class Members with the opportunity to view their Meracord Account Information, and to request an update and/or correction to that information within sixty (60) days of the Mailed Notice Date. The Settlement Administrator shall update/correct an individual's Meracord Account Information if, in Class Counsel's sole discretion, there is sufficient evidence to support such a change.

22.  ***Distribution Checks.*** Within forty-five (45) days of (but not prior to) the Effective Date, the Settlement Administrator shall use reasonable efforts to deliver by First-Class Mail to each Settlement Class Member's current address, as determined by Class Counsel . . . ,

---

[74] *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d at 1154.



a letter describing generally the process of calculating Distribution Amounts, and enclosing a check with payment equal to each Settlement Class Member's distribution as calculated in Paragraph 20 (**"Distribution Check"**). All outstanding, un-cashed Distribution Checks will become void sixty (60) days after the date on the letter enclosing the check, and the associated funds will revert to the Net Settlement Fund.

23. *Second Distribution Checks*. If the funds remaining in any Net State Settlement Fund seventy-five (75) days from the latest date on any letter from the Settlement Administrator accompanying a Distribution Check exceed $10,000, the Administrator will deliver by First-Class Mail a second payment equal to a *pro rata* share of the remaining Net State Settlement Fund to each Settlement Class Member whose Distribution Check was cashed (the **"Second Distribution Check"**). All outstanding, un-cashed Second Distribution Checks will become void thirty (30) days after the date on the letter enclosing the check, and the associated funds will revert to the Net Settlement Fund.

24. *Residual Funds*. If there are remaining funds in the Net Settlement Fund after all distributions described above (**"Residual Funds"**), a *cy pres* payment shall be made to the National Consumers League, a 501(c)(3) entity for use in educational efforts related to the for-profit debt relief industry, in the amount that will exhaust the Net Settlement Fund. In the event that the Court does not approve the *cy pres* payment, Residual Funds shall be paid to the United States Treasury.

A plan of allocation that compensates class members based on the type and extent of their injuries is generally considered reasonable.[75] Here the proposed distribution will be on a *pro rata* basis, with no similarly situated Settlement Class Member being favored over others. This type of distribution has frequently been determined to be fair, adequate, and reasonable.[76]

## VIII. THE COURT SHOULD SET SETTLEMENT DEADLINES AND SCHEDULE A FAIRNESS HEARING

In connection with preliminary approval of the Settlement, the Court must set a final approval hearing date, dates for mailing the Notices, and deadlines for objecting to the Settlement and filing papers in support of the Settlement. The Parties propose the following schedule, which the Parties believe will provide ample time and opportunity for Settlement Class Members to decide whether to request exclusion or object.

---

[75] *In re Vitamins Antitrust Litig.*, 2000 WL 1737867, at *6 (D.D.C. Mar. 31, 2000).

[76] *In re Lloyds' Am. Trust Fund Litig.*, 2002 WL 31663577, at *19 (S.D.N.Y. Nov. 26, 2002) ("*pro rata* allocations provided in the Stipulation are not only reasonable and rational, but appear to be the fairest method of allocating the settlement benefits").

| Event | Date |
|---|---|
| Mailed Notice Date. Summary Notice mailing complete, as well as Settlement Website containing Long-Form Notice. | 30 days after Preliminary Approval[77] |
| Class Counsel's petition for fees, expenses, & incentive awards due. | 21 days prior to Exclusion / Objection Deadline[78] |
| Exclusion / Objection Deadline. Due date for postmark or delivery of requests for exclusion. Due date for delivery and filing of objections and intents to appear at the Fairness Hearing. | 60 days after Mailed Notice Date[79] |
| Due date for Class Counsel's papers in support of final approval of the Settlement, as well as any replies in support of fee petition. | 14 days prior to Fairness Hearing[80] |
| Fairness Hearing | At least 130 days after Preliminary Approval[81] |

## IX.   CONCLUSION

For all the above-stated reasons, Plaintiffs respectfully request that the Motion be granted and the Court enter an order: (i) granting Preliminary Approval of the Settlement; (ii) scheduling a Fairness Hearing and establishing all related deadlines; (iii) directing that Notice be provided to the Settlement Class in accordance with the Notice Plan; and (iv) ordering a stay of all proceedings against F&D in this action until the Court renders a final decision regarding the approval of this Settlement.

DATED this 21st day of April, 2017          **HAGENS BERMAN SOBOL SHAPIRO LLP**

---

[77] Settlement Agreement ¶ 1(s).

[78] Settlement Agreement ¶ 2.

[79] *Id.*

[80] *Id.*

[81] The Agreement provides that the Fairness Hearing should not be set for no earlier than 36 days after the Exclusion/Objection Deadline (or 127 days after the Preliminary Approval Order). Plaintiffs request that the Court set the hearing for 130 days after the Preliminary Approval Order in order to ensure sufficient time for notice to the Settlement Class.

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

/s/ Steve W. Berman
Steve W. Berman, WSBA# 12536
/s/ Thomas E. Loeser
Thomas E. Loeser, WSBA# 38701
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101
steve@hbsslaw.com
TomL@hbsslaw.com

**THE PAYNTER LAW FIRM PLLC**
STUART M. PAYNTER
Stuart M. Paynter (*pro hac vice*)
1200 G Street N.W., Suite 800
Washington, DC  20005
Telephone: (202) 626-4486
Facsimile: (866) 734-0622
stuart@paynterlawfirm.com

Celeste H.G. Boyd (*pro hac vice*)
106 Churton St., Suite 200
Hillsborough, NC 27278
Telephone: (919) 307-9991
Facsimile: (866) 734-0622
cboyd@paynterlawfirm.com

*Attorneys for Plaintiffs*



1

**CERTIFICATE OF SERVICE**

2        On April 21, 2017, I caused to be electronically filed the foregoing with the Clerk of the

3   Court using the CM/ECF system, which will send notification of such filing to the following

4   attorneys of record:

5   - **Steve W. Berman**
      steve@hbsslaw.com, robert@hbsslaw.com, heatherw@hbsslaw.com
6   - **Celeste H.G. Boyd**
      cboyd@paynterlawfirm.com
7   - **Thomas E. Loeser**
      TomL@hbsslaw.com, dawn@hbsslaw.com
8   - **Stuart M. Paynter**
      stuart@paynterlawfirm.com
9   - **Jennifer Campbell**
      jcampbell@schwabe.com
10  - **Jonathan A. Constine**
      Jonathan.Constine@troutmansanders.com
11  - **Bert W. Markovich**
      bmarkovich@schwabe.com
12  - **Claire L. Rootjes**
      crootjes@schwabe.com
13  - **Scott M. Stickney**
      stickney@wscd.com
14  - **John D. Wilson, Jr.**
      wilson@wscd.com
15  - **Robert Jesse Berens**
      rberens@l-llp.com
16  - **Christopher Alan LaVo**
      cal@tblaw.com
17  - **Adam D. Melton**
      amelton@l-llp.com
18  - **David C. Veis**
      dveis@robinskaplan.com

19

20

21

22                                          /s/ Steve W. Berman
                                            _____
23                                          Steve W. Berman (WSBA #12536)

24

25

26

27

28

MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT - 27
Case No. 3:16-cv-05147-BHS



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594