1

THE HONORABLE BENJAMIN H. SETTLE

2

3

4

5

6

7
UNITED STATES DISTRICT COURT, WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8

9  AMRISH RAJAGOPALAN, MARIE
   JOHNSON-PEREDO, ROBERT HEWSON,
10 DONTE CHEEKS, DEBORAH HORTON,
   RICHARD PIERCE, ERMA SUE CLYATT,
11 ROBERT JOYCE, AMY JOYCE, ARTHUR
   FULLER, DAWN MEADE, WAHAB
12 EKUNSUMI, KAREN HEA, ALEX
   CASIANO, DECEMBER GUZZO, BEN
13 PARKER, CHERYL ANDERSON, CARMEN
   ALFONSO, BETH JUNGEN, TANYA
14 GWATHNEY, KEVIN DELOACH, SCOTT
   SNOEK, KELLY ENDERS, THOMAS
15 LUDWICK, DONALD BOGAN, BILL
   KRUSE, JOYCE DRUMMOND, TAMARA
16 COOPER, DEBRA MILLER, GEORGE
   LAWRENCE, CYNTHIA OXENDINE,
17 MARTIN ANDERSON, ANGELA ROSS,
   ANDREA TOPPS, DEBRA FINAZZO,
18 SHARRON BLACK, SYLVIA HADCOCK,
   AUDRIE LAWRENCE (POOLE), ADAM
19 WARD, ISHULA MCCONNELL, ERICA
   CHASE, STEPHEN YOUNKINS, DAN
20 WEDDLE, STILLMAN PARKER, TINA
   ROBERTS-ASHBY, BRANDON ASHBY,
21 VALERIE NEWSOME, and RUSSEL
   TANNER, *on behalf of themselves and others*
22 *similarly situated*,

No. 3:16-cv-05147-BHS

**PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES, EXPENSES,
AND INCENTIVE AWARDS**

NOTED ON MOTION CALENDAR:
October 10, 2017, 1:30 p.m.

23                                    Plaintiffs

24        v.

25 FIDELITY AND DEPOSIT COMPANY OF
   MARYLAND, as Surety for Meracord LLC,

26
                                    Defendant.
27

28

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

# TABLE OF CONTENTS

**Page**

I.   BACKGROUND ...........................................................................................................1

II.  THE WORK UNDERTAKEN BY CLASS COUNSEL ..........................................3

    A.  Litigation Against Meracord ..........................................................................3

    B.  Commencement of Litigation Against Sureties ..............................................5

    C.  Database Procurement and Analysis................................................................6

    D.  Certification of the Meracord Class and Judgment Against Meracord.........7

    E.  Litigation Against the Sureties and Settlement with Platte River..................8

    F.  Additional Litigation and Settlement with F&D .............................................8

III. ARGUMENT ............................................................................................................11

    A.  Plaintiffs Have Requested a Reasonable Amount of Attorneys' Fees.........11

        1.   Plaintiffs' Fee Request Is Reasonable Under a "Common Fund"
            Percentage-of-Recovery Analysis...................................................13

        2.   Plaintiffs' Fee Request Is Reasonable Under A Lodestar Cross-Check ............17

            a.   The Number of Hours that Class Counsel Devoted to this
                Litigation Is Reasonable .....................................................17

            b.   Class Counsel's Hourly Rates Are Reasonable ..........................20

            c.   Plaintiffs' Fee Request Is Reasonable Considering the Results
                Obtained, Time and Labor Required, Complexity of the
                Litigation, the Risks Involved, and Counsel's Skill and
                  Experience...........................................................................21

    B.  Plaintiffs' Expenses Are Reasonable and Were Necessarily Incurred .......25

    C.  Plaintiffs Request Incentive Awards............................................................25

IV.  CONCLUSION .........................................................................................................27

MOTION FOR ATTORNEYS' FEES,
EXPENSES, AND INCENTIVE AWARDS - i
Case No. 3:16-cv-05147-BHS



1918 Eighth Avenue, Suite 3300 • Seattle, WA  98101
(206) 623-7292 • FAX (206) 623-0594

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*In re Apollo Grp. Inc. Secs. Litig.*,
    2012 U.S. Dist. LEXIS 55622 (D. Ariz. Apr. 20, 2012)....................................................11

*Aronson v. Dog Eat Dog Films, Inc.*,
    2010 WL 4723723 (W.D. Wash. Nov. 16, 2010) ......................................................21

*U.S. ex rel. Aurora Painting, Inc. v. Fireman's Fund Ins. Co.*,
    832 F.2d 1150 (9th Cir. 1987) ..........................................................................7

*Barovic v. Ballmer*,
    2016 WL 199674 (W.D. Wash. Jan. 13, 2016)..............................................22, 26

*Bendixen v. Sprint Commc'ns Co. L.P.*,
    2013 WL 2949569 (W.D. Wash. June 14, 2013)........................................13

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ......................................................................21, 22

*Camacho v. Bridgeport Fin., Inc.*,
    523 F.3d 973 (9th Cir. 2008) ......................................................................20

*Chaudhry v. City of Los Angeles*,
    751 F.3d 1096 (9th Cir. 2014), *cert. denied sub nom., City of Los Angeles,*
    *Cal. v. Chaudhry*, 135 S. Ct. 295 (2014) ..................................................20

*City of Roseville Emps. Ret. Sys. v. Orloff Family Tr. UAD 12/31/01*,
    2012 U.S. App. LEXIS 11512 (9th Cir. June 7, 2012)..................................12, 13

*Destefano v. Zynga, Inc.*,
    2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ..............................................14

*Di Giacomo v. Plains All Am. Pipeline*,
    2001 WL 34633373 (S.D. Tex. Dec. 19, 2001)........................................22

*Grays Harbor Adventist Christian Sch. v. Carrier Corp.*,
    2008 WL 1901988 (W.D. Wash. Apr. 24, 2008)......................................26

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994) ......................................................................25

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983).........................................................................11, 12, 17

MOTION FOR ATTORNEYS' FEES,
EXPENSES, AND INCENTIVE AWARDS - ii
Case No. 3:16-cv-05147-BHS



1918 Eighth Avenue, Suite 3300 • Seattle, WA  98101
(206) 623-7292 • FAX (206) 623-0594

*Hopkins v. Stryker Sales Corp.*,
 2013 WL 496358 (N.D. Cal. Feb. 6, 2013) ...............................................22

*Ikuseghan v. Multicare Health Sys.*,
 2016 WL 4363198 (W.D. Wash. Aug. 16, 2016) .......................................13

*Jackson v. Wells Fargo Bank, N.A.*,
 136 F. Supp. 3d 687, 706 (W.D. Pa. 2015)................................................14

*Kentucky Ins. Guar. Ass'n v. Dooley Constr. Co.*,
 732 S.W.2d 887 (Ky. Ct. App. 1987) ..........................................................7

*Kerr v. Screen Extras Guild, Inc.*,
 526 F.2d 67 (9th Cir. 1975) .......................................................................21

*Maley v. Del Global Techs. Corp.*,
 186 F. Supp. 2d 358 (S.D.N.Y. 2002) .......................................................22

*Milliron v. T-Mobile USA, Inc.*,
 423 F. App'x 131 (3d Cir. 2011) ...............................................................22

*Morris v. Lifescan, Inc.*,
 54 Fed. App'x 663 (9th Cir. 2003) .............................................................13

*In re Online DVD-Rental Antitrust Litig.*,
 779 F.3d 934 (9th Cir. 2015) .....................................................................26

*U.S. ex rel. Peake Constr., L.L.C. v. Crown Roofing Servs., Inc.*,
 2010 WL 1416673 (E.D. La. Mar. 31, 2010) ...............................................7

*Pelletz v. Weyerhaeuser Co.*,
 592 F. Supp. 2d 1322 (W.D. Wash. 2009)..........................................22, 26

*Pokorny v. Quixtar, Inc.*,
 2013 WL 3790896 (N.D. Cal. July 18, 2013).............................................22

*Rinky Dink, Inc. v. World Bus. Lenders, LLC*,
 2016 WL 3087073 (W.D. Wash. May 31, 2016)........................................13

*Rodriguez v. West Publ'g Corp.*,
 563 F.3d 948 (9th Cir. 2009) .....................................................................26

*Rubio-Delgado v. Aerotek, Inc.*,
 2015 WL 3623627 (N.D. Cal. June 10, 2015) ...........................................14

*Staton v. Boeing Co.*,
 327 F.3d 938 (9th Cir. 2003) .....................................................................25

MOTION FOR ATTORNEYS' FEES,
EXPENSES, AND INCENTIVE AWARDS - iii
Case No. 3:16-cv-05147-BHS



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Steiner v. Am. Broad. Co.*,
  248 Fed. App'x 780 (9th Cir. 2007) .......................................................... 13

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  2013 WL 1365900 (N.D. Cal. Apr. 3, 2013) ............................................. 22

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
  896 F.2d 403 (9th Cir. 1990) .................................................................... 20

*Van Vraken v. Atl. Richfield Co.*,
  901 F. Supp. 294 (N.D. Cal. 1995) ........................................................... 26

*Vizcaino v. Microsoft Corp.*,
  142 F. Supp. 2d 1299 (W.D. Wash. 2001), *aff'd*,
  290 F.3d 1043 (9th Cir. 2002) .................................................................. 12

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ...................................................... 12, 13, 22

*Von Eng'g Co. v. R.W. Roberts Constr. Co.*,
  457 So. 2d 1080 (Fla. Dist. Ct. App. 1984) ................................................ 7

**Other Authorities**

Fed. R. Civ. P. 23(h) ........................................................................................ 11



1918 Eighth Avenue, Suite 3300 • Seattle, WA  98101
(206) 623-7292 • FAX (206) 623-0594

## I.   BACKGROUND

For nearly six years, Plaintiffs have litigated to address the unlawful conduct of Meracord LLC (formerly NoteWorld LLC), a licensed money transmitter that, assisted by a network of conspiring debt settlement companies, charged illegal fees in connection with fraudulent debt relief programs.[1] In this and related actions, Plaintiffs alleged that Fidelity and Deposit Company of Maryland ("F&D"), along with Platte River Insurance Company ("Platte River") (together, "the Sureties"), issued surety bonds backing Meracord's activities as a money transmitter ("the Bonds"), and that as a result, the Sureties were liable as a sureties for Meracord's actions.

The Meracord-related litigation strategy involved two tracks: litigation directly against Meracord and litigation against the Sureties. Plaintiffs' action against Meracord began with the filing of a class action complaint on July 26, 2011.[2] Plaintiffs' first action against the Sureties was filed on April 23, 2013.[3] On May 14, 2015, this Court issued a Final Judgment against Meracord, certifying a class of consumers ("the Meracord Class") and awarding that Class $1.45 billion in damages.[4] Specifically, this Court certified the following Class:

> All persons in a Surety State who established an account with
> Meracord LLC (formerly NoteWorld) or any subsidiary thereof
> from which Meracord processed any payments related to debt
> settlement, including MARS, within the Bond Period of their state
> of residence.[5]

On June 15, 2015, the Meracord Class brought another action against the Sureties, alleging generally that the Sureties were liable to the Meracord Class for the full amount of the

---

[1] For simplicity, this motion refers to "Plaintiffs" even when describing events that took place before all the Plaintiffs named in this Complaint had joined the lawsuit. To the extent relevant, the term should be understood to mean whatever Plaintiffs were named at the time and/or in the particular action or actions being discussed.

[2] *Rajagopalan v. NoteWorld, LLC*, Case No. 3:11-cv-05574, Dkt. 1 ("*Rajagopalan Action*"). That case was subsequently consolidated with another action, No. 12-cv-05657, and the consolidated action will be referred to as the "*Meracord Action*").

[3] *Cheeks, et. al. v. Fidelity and Deposit Co. of Maryland, et. al.*, No. 4:13-cv-01854 (N.D. Cal. filed April 23, 2013), Dkt. 1.

[4] *Meracord Action* Dkt. 287.

[5] "Surety State" and "Bond Period" were both defined in reference to a table contained in an appendix to the Final Judgment.

MOTION FOR ATTORNEYS' FEES,
EXPENSES, AND INCENTIVE AWARDS - 1
Case No. 3:16-cv-05147-BHS



Bonds, and for additional sums under statutory and common law bad faith ("*Surety I*").[6]

On September 29, 2015, Platte River and Plaintiffs from states where Platte River had issued Bonds ("Platte River Representatives") notified the Court that they had agreed in principle to a settlement.[7] Following additional negotiations, on April 7, 2016, Platte River Representatives and Platte River filed a joint motion for preliminary approval of their settlement, stating that they had agreed on a total settlement of $5,293,454 on behalf of Meracord customers residing in states for which Platte River issued Bonds ("Platte River Settlement").[8] The Platte River Settlement amount represented approximately 85% of the face value of Platte River's Bonds. The Platte River Settlement was preliminarily approved by the Court on May 3, 2016, Dkt. 17, and after notice to the class and a final fairness hearing, the Court finally approved the Platte River settlement on August 30, 2016, Dkt. 41.

On January 18, 2017, counsel for Plaintiffs and F&D reached a tentative settlement of all claims against F&D, and a final Settlement Agreement was signed by the Parties on April 20, 2017 ("Settlement"). Dkt. 68-1.[9]

The Settlement likely represents the last recovery that Meracord customers will receive as compensation for Meracord's wrongful actions.

Plaintiffs respectfully move the Court to approve: (1) an award of $2,917,899.41 in attorney's fees, representing 29.5% of the settlement fund; (2) reimbursement of $150,000 in expenses; and (3) incentive awards of between $500–$1,000 for each of the 49 Class Representatives ($18,000 total). This request is reasonable given Class Counsel's long-lasting

---

[6] *Rajagopalan, et al., on behalf of the Class Certified in Rajagopalan, et al. v. Meracord LLC, v. Fidelity and Deposit Company of Maryland and Platte River Insurance Company, as Sureties for Meracord LLC*, No. 2:15-cv-00957-BHS (W.D. Wash.) ("*Surety I*").

[7] *Surety I*, Dkt. 41.

[8] *Rajagopalan, et al., on behalf of the Class Certified in Rajagopalan, et al. v. Meracord LLC, v. Fidelity and Deposit Company of Maryland and Platte River Insurance Company, as Sureties for Meracord LLC*, 3:16-cv-05147-BHS ("*Surety II*"), Dkt. 14. The twenty-eight Platte River Representatives are listed in the Settlement Agreement. *Surety II*, Dkt. 15-1 ("Settlement Agreement").

[9] Unless otherwise noted, all defined terms in this Motion have the same meaning as in that Settlement Agreement.

MOTION FOR ATTORNEYS' FEES,
EXPENSES, AND INCENTIVE AWARDS - 2
Case No. 3:16-cv-05147-BHS



dedication to this case, their zealous advocacy on behalf of the Settlement Class, the risks of bringing and proceeding with the action, and the vigorous opposition posed by F&D and other defendants, represented by well-funded defense counsel with substantial experience litigating the merits and related issues in this case. Indeed, the factors and findings that support Plaintiffs' request are nearly identical to those that supported the Court's prior award of fees and expenses for the settlement with Platte River.[10]

## II.    THE WORK UNDERTAKEN BY CLASS COUNSEL

### A.    Litigation Against Meracord

The original complaint in the *Meracord Action* ("*Rajagopalan* Complaint") was filed on July 26, 2011.[11] The complaint asserted complex claims under the federal Racketeering Influenced Corrupt Organizations Act ("RICO"), the Washington Debt Adjusting Act ("DAA"), the Washington Consumer Protection Act ("CPA"), and common law.[12] These claims required extensive legal and factual research.[13] In response to the complaint, Meracord filed a motion to compel arbitration.[14] After this Court denied Meracord's motion, Meracord appealed the Court's decision to the Ninth Circuit Court of Appeals.[15] Class Counsel dedicated substantial time to responding to Meracord's motion and appeal, and Class Counsel obtained a complete victory in the appeal.[16] On July 24, 2012, Plaintiffs filed a second complaint against Meracord ("*Canada* complaint"), substantially expanding the claims from the original complaint. The *Canada* complaint also added three new named plaintiffs, and new allegations regarding the relationships between Meracord and the debt settlement industry, as well as the tactics used by the Meracord Enterprise to recruit customers.[17] In support of the *Canada* complaint, in addition to conducting

---

[10] *Surety II*, Dkt. 41 ("Platte River Final Approval Order").

[11] *Rajagopalan Action,* Dkt. 1.

[12] *Id.*

[13] August 7, 2017 Declaration of Stuart M. Paynter ("Paynter Decl.") ¶ 3.

[14] *Rajagopalan Action*, Dkt. 14.

[15] *Rajagopalan Action*, Dkt. 34.

[16] Paynter Decl. ¶ 4; August 7, 2017 Declaration of Thomas E. Loeser ("Loeser Decl.") ¶ 3.

[17] Paynter Decl. ¶ 5.

MOTION FOR ATTORNEYS' FEES,
EXPENSES, AND INCENTIVE AWARDS - 3
Case No. 3:16-cv-05147-BHS



further research of Meracord and its debt settlement business, Class Counsel responded to contacts from dozens of class members regarding their experiences with Meracord and various Front DRCs.[18] Class Counsel spoke with and exchanged emails with these class members, learned their stories, and compiled and reviewed hundreds of pages of documents gathered from them in order to learn more about the Meracord Enterprise and the interactions between and among Meracord and the Front DRCs.[19]

Class Counsel also once again spent substantial time opposing motions to dismiss and motions to compel arbitration filed by Meracord in response to the *Canada* complaint.[20] Class Counsel also amended the *Canada* complaint to add additional defendants and claims, as well as allegations regarding the arbitration clauses contained in Plaintiffs' Front DRC contracts, and Meracord's waiver of any right to invoke those clauses.[21] Meracord vigorously defended the *Canada* and *Rajagopalan* actions—which were subsequently consolidated into the *Meracord Action*. Meracord stonewalled Class Counsel's discovery requests, requiring Class Counsel to file several discovery motions. And Meracord attempted, unsuccessfully, to block third-party discovery.[22]

In the course of litigating the *Meracord Action*, Class Counsel also prepared and served numerous public records requests in order to gather information about Meracord's money transmitter licenses and the Bonds backing those licenses.[23] These efforts have required complex negotiation and coordination with numerous state regulatory bodies, as well as legal research in support of that coordination. In the case of the California Department of Financial Institutions,

---

[18] *Id.* ¶ 6.

[19] *Id.* ¶ 7.

[20] *Meracord Action*, Dkt. 34; Paynter Decl. ¶ 8; Loeser Decl. ¶ 4.

[21] *Meracord Action*, Dkt. 41.

[22] Paynter Decl. ¶ 9; *see, e.g.*, *Rajagopalan Action*, Dkt. 41 (NoteWorld Mot. to Quash and for Protective Order); *Meracord Action*, Dkt. 69 (Pls.' Mot. for Limited Discovery), Dkt. 69 (Meracord Mot. to Stay Discovery and Compel Arbitration), Dkt. 71 (Meracord Obj. to Stipulated Protective Order with Cal. Dept. of Financial Institutions, Dkt.152 (Pls' Mot. to Compel Discovery), and Dkt. 196 (Meracord Mot. for Protective Order).

[23] Paynter Decl. ¶ 10.

MOTION FOR ATTORNEYS' FEES,
EXPENSES, AND INCENTIVE AWARDS - 4
Case No. 3:16-cv-05147-BHS



accessing the requested documents necessitated the negotiation of a confidentiality agreement.[24]
Class Counsel also received and reviewed materials from third-party sources, much of which
involved the interactions and relationships between Meracord and its Front DRCs.[25] Class
Counsel also received and reviewed hundreds of pages of statements and financial records from
Meracord's numerous bank accounts in order to make some sense of the plethora of financial
transactions between and among defendants and other Front DRCs.[26]

**B.      Commencement of Litigation Against Sureties**

During the course of litigating the *Meracord Action*, Class Counsel discovered that
Meracord's licensure as a money transmitter often required Meracord to file surety bonds with
state regulators in order to insure against Meracord's bad acts in the conduct of its money
transmission business.[27] As part of a concerted effort to recover the maximum amount possible
for the victims of the Meracord Enterprises, Plaintiffs filed the *Cheeks Action*, a class action
complaint in the Northern District of California naming Meracord's Sureties as defendants.[28] The
*Cheeks* complaint required complex multijurisdictional research on the intersection of the
common law of suretyship; state surety bond requirements, including those of Washington State
and California; and the federal RICO act.[29] Class Counsel subsequently sought disclosures from
the Sureties, including copies of all Bonds issued to Meracord.[30]

In the late summer / early fall of 2013, Class Counsel spent substantial time preparing for
and engaging in a mediation with Meracord and the Sureties, along with Meracord's liability
insurers, that was ultimately unsuccessful.[31]

---

[24] *Id.* ¶ 11.

[25] *Id.* ¶ 12.

[26] *Id.* ¶ 13.

[27] *Id.* ¶ 14.

[28] *Cheeks Action*, Dkt. 1.

[29] Paynter Decl. ¶ 15.

[30] *Id.* ¶ 16.

[31] *Id.* ¶ 17; Loeser Decl. ¶ 5.

MOTION FOR ATTORNEYS' FEES,
EXPENSES, AND INCENTIVE AWARDS - 5
Case No. 3:16-cv-05147-BHS



**C.    Database Procurement and Analysis**

During the protracted litigation against Meracord, Plaintiffs filed a motion to compel the production of Meracord's customer database.[32] Then, after Meracord represented that it was on the brink of insolvency and possibly incapable of fulfilling discovery requests, Plaintiffs moved for the appointment of a receiver to manage Meracord's production of documents.[33] The Court ordered the parties to meet and confer,[34] and Meracord eventually produced its customer database ("Database"),[35] at which time Class Counsel retained an expert in database analysis to access the Database and compile specific information regarding the customer transactions underlying Meracord's liability.[36]

The database was provided in a backup file of a proprietary database format, which required the database expert to restore the file into a usable format.[37] In addition, the nature of the inquiries required the database expert to reorganize the database by creating a variety of new tables.[38] To ensure the integrity and accuracy of the data contained in the database, the expert also cross-checked the information contained in the database with individual transaction histories and information obtained directly from Plaintiffs and other Class members.[39] In addition to spending thousands of dollars on this initial setup process, Class Counsel devoted substantial time conferring with their database expert about the specific requirements of each query, as well as reviewing and analyzing the results of dozens of queries.[40] The information Class Counsel obtained from the Database was critical to the litigation against the Sureties and to achieving the present Settlement, since it offered the ability to analyze damages on a state-by-state basis.[41]

---

[32] *Meracord Action,* Dkt. 152.

[33] *Meracord Action,* Dkt. 176.

[34] *Meracord Action,* Dkt. 183.

[35] Paynter Decl. ¶ 18.

[36] *Id.* ¶ 19.

[37] *Id.* ¶ 20; *see also Meracord Action*, Dkt. 281 (Decl. of L. Tafoya) ("Tafoya Decl."), ¶¶ 6-12.

[38] Paynter Decl. ¶ 20.

[39] *Id.*

[40] *Id.*

1  Class Counsel used Meracord's data, including addresses of class members, transaction dates,

2  and unreturned fees, to determine F&D's potential liability under the Bonds.[42]

3  **D.   Certification of the Meracord Class and Judgment Against Meracord**

4          In March 2015, Class Counsel spent substantial time researching and preparing three

5  dispositive motions against Meracord on behalf of Plaintiffs: (1) a motion for partial summary

6  judgment against Meracord; (2) a motion for class certification; and (3) a motion for entry of

7  default judgment against Meracord for its failure to respond to Plaintiffs' Second Amended

8  Complaint.[43] As a result of Class Counsel's efforts, on May 14, 2015, the Court issued the Final

9  Judgment against Meracord, certifying the Meracord Class and awarding the Class $1.45 billion

10  in damages.[44] At the time of the Judgment, Meracord had been out of business for over a year,

11  and had no meaningful assets (including insurance) that could be used to satisfy the Judgment;

12  therefore, the Bonds—which totaled approximately $18 million—were the only realistic source

13  of recovery for damages owed to the Class.[45]

14          Obtaining the Final Judgment against Meracord was critical to the litigation strategy

15  aimed at recovering the Bonds on behalf of the Class. Most importantly, in some F&D states, a

16  default judgment would arguably preclude F&D from re-litigating Meracord's underlying

17  liability—as opposed to Bond coverage—or at the very least serve as evidence of that liability.[46]

18  ───────────────

19          [41] *Id.* ¶ 21.

19          [42] *Id.* ¶ 22.

20          [43] *Id.* ¶ 23; Loeser Decl. ¶ 6; *Meracord Action*, Dkts. 253, 266, 257.

21          [44] *Meracord Action*, Dkts. 285-287.

22          [45] *Meracord Action*, Dkt. 179; Paynter Decl. ¶ 24.

23          [46] *See, e.g.*, *U.S. ex rel. Aurora Painting, Inc. v. Fireman's Fund Ins. Co.*, 832 F.2d 1150, 1153 (9th Cir. 1987) (judgment preclusive as to principals liability where surety had knowledge of prior proceeding and ability to defend); *U.S. ex rel. Peake Constr., L.L.C. v. Crown Roofing Servs., Inc.*, 2010 WL 1416673, at *3 (E.D. La. Mar. 31, 2010) (same); *Kentucky Ins. Guar. Ass'n v. Dooley Constr. Co.*, 732 S.W.2d 887, 888 (Ky. Ct. App. 1987) (same); *Von Eng'g Co. v. R.W. Roberts Constr. Co.*, 457 So. 2d 1080, 1082 (Fla. Dist. Ct. App. 1984) (judgment is "conclusive" where surety had knowledge and opportunity to defend and otherwise "judgment is prima facie evidence that the surety is liable"). Even if the Final Judgment was found to be conclusive as to Meracord's underlying liability, Plaintiffs would still have to establish liability on the Bonds, but the Final Judgment still had strategic utility as evidence of Meracord's underlying conduct.

MOTION FOR ATTORNEYS' FEES,
EXPENSES, AND INCENTIVE AWARDS - 7
Case No. 3:16-cv-05147-BHS

Furthermore, obtaining a final judgment was a necessary part of Class Counsel's strategy to execute on the judgment in order to obtain (1) Meracord's bad-faith claims against the Sureties,[47] and (2) all of Meracord's business books and records, including access to all of the company's email records, many of which Meracord had previously fought against producing in discovery.[48]

## E. Litigation Against the Sureties and Settlement with Platte River

On June 15, 2015, the Meracord Class brought the *Surety I* action, alleging generally that the Sureties were liable to the Meracord Class for the full amount of the Bonds, and for additional sums under statutory and common law bad faith.[49] Class Counsel spent significant time preparing the *Surety I* complaint, in addition to defending against motions to dismiss by both F&D and Platte River.[50] On September 11, 2015, Class Counsel met in person with Platte River's new counsel to discuss settlement,[51] and on September 29, 2015, the Platte River Representatives and Platte River notified the Court that they had agreed to a settlement in principle.[52] The Court granted preliminary approval of the Platte River Settlement on May 3, 2016,[53] and after notice to the Class, the Court gave its final approval to the Platte River Settlement on August 30, 2016.[54]

## F. Additional Litigation and Settlement with F&D

After the Platte River Settlement was reached, Class Counsel continued actively litigating against F&D. Class Counsel responded to F&D's Motion to Dismiss the *Surety I* case,[55] and after the Court's dismissal of that case on jurisdictional grounds,[56] Class Counsel filed a new

---

[47] *See* Section II.F, below.

[48] Paynter Decl. ¶¶ 25-26. *See, e.g.*, *Meracord Action*, Dkt. 196 (Meracord Mot. for Protective Order re: Internal Email Communications).

[49] *Surety I*, Dkt. 1.

[50] Paynter Decl. ¶ 27; *see Surety I*, Dkts. 27 & 31.

[51] Paynter Decl. ¶ 28.

[52] *Surety I*, Dkt. 41.

[53] *Surety II*, Dkts. 14, 17.

[54] *Surety II*, Dkt. 41.

[55] *Surety I*, Dkt. 44.

[56] *Surety I*, Dkt. 53.

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

complaint containing essentially the same allegations, but with the inclusion of specific allegations relating to class certification (the "*Surety II*" action).[57]

After filing the new complaint, Class Counsel engaged in extensive discovery. Class Counsel took the depositions of three key F&D employees, served and reviewed responses to interrogatories, served requests for production, and reviewed hundreds of pages of documents from F&D's claim files. In addition, Class Counsel received and reviewed thousands of pages of documents from multiple other sources. One of those sources was Meracord itself, which by that point had been defunct for multiple years. After executing on the Final Judgment on behalf of the Class,[58] Class Counsel took possession of the entirety of Meracord's remaining books and records, which consisted of approximately 66 banker boxes of documents, as well as all Meracord's business servers, containing dozens of terabytes of data.[59] Class Counsel arranged for transportation of the documents and servers from a storage unit in eastern Washington, retained multiple forensic experts to review the information contained in the servers, and conducted extensive review of the both the physical and digital documents obtained.[60] In addition, Class Counsel engaged in substantial third-party discovery, issuing subpoenas to state regulators in each of the states in which F&D issued surety bonds on Meracord's behalf, and negotiating with those regulators regarding issues of scope, confidentiality, and timing of document production.[61]

In addition to continuing to litigate the *Surety II* case, Class Counsel embarked on second major litigation strategy designed to maximize recovery for the class: bringing Meracord's claims of bad faith against Fidelity.[62] This strategy involved the Meracord Class executing on the Final Judgment in order to achieve the transfer to the Class, through a sheriff's sale, of all

---

[57] *Surety II*, Dkt. 1.

[58] *See* discussion below.

[59] Paynter Decl. ¶ 29.

[60] *Id.* ¶ 30.

[61] *Id.* ¶ 31.

[62] *Id.* ¶ 32.

MOTION FOR ATTORNEYS' FEES,
EXPENSES, AND INCENTIVE AWARDS - 9
Case No. 3:16-cv-05147-BHS

Meracord's choses in action, including their claims against the sureties.[63] Class Counsel retained, at their own expense the prominent Seattle firm Riddell Williams, to assist in the execution process and effectuate the transfer.[64] That effort was successful, and the Class took ownership of Meracord's claims, books, and records on April 13, 2016.[65] Class Counsel filed a new complaint against F&D in Washington Superior Court on July 18, 2016, alleging that F&D had breached its duty of good faith as Meracord's surety by failing to adequately investigate and failing to settle the Class's claims against Meracord ("*Surety III*").[66] After the *Surety III* case was removed to this Court, F&D filed a motion to dismiss.[67] After that motion was fully briefed, the Court indicated its inclination to certify a number of issues raised in the briefing to the Washington Supreme Court, and requested additional briefing regarding certification.[68]

Meanwhile, Plaintiffs also filed a motion for partial summary judgment in the *Surety II* action, seeking to definitively establish F&D's liability on six of its 19 surety bonds which contained language indicating they were judgment bonds that should have been paid immediately upon F&D's knowledge of the Final Judgment against Meracord.[69] Before the deadline for F&D's response to that motion (and before the additional briefing in *Surety III* was filed), Plaintiffs and F&D reached a settlement.

On January 18, 2017, Class Counsel met with counsel for F&D at an in-person settlement meeting in Seattle, at which they came to a tentative settlement agreement following intensive negotiations.[70] Class Counsel continued discussions with F&D via phone and email, reached the essential terms of the agreement in early March 2017, and signed the final Settlement Agreement

---

[63] *Id.*

[64] *Id.*

[65] Paynter Decl., Ex. D (Bill of Sale).

[66] *Rajagopalan, et al. v. Fidelity and Deposit Co. of Maryland, et. al.,* No. 16-2-09499-1 (Pierce Cty. Super. Ct., Filed July 18, 2016), *removed,* No. 3:16-cv-05739-BHS (W.D. Wash., Filed August 31, 2016).

[67] *Surety III,* Dkt. 8.

[68] *Surety III,* Dkt. 21.

[69] *Surety II,* Dkt. 55.

[70] Loeser Decl. ¶ 7.

on April 20, 2017.[71] Class Counsel filed Plaintiffs' Motion for Preliminary approval on April 21, 2017,[72] and the Court preliminarily approved the Settlement on May 30, 2017.[73]

Following preliminary approval, Class Counsel has been actively involved in the administration of the Settlement.[74] Class Counsel has worked closely with the chosen administrator to develop and implement a notice plan, and has reviewed regular status updates from the administrator about inquiries and disputes from actual and potential Settlement Class Members. Class Counsel has also responded directly to dozens of inquiries from actual and potential Class members, and has provided regular updates regarding the Settlement to Plaintiffs and other Meracord victims.[75]

## III.  ARGUMENT

### A.    Plaintiffs Have Requested a Reasonable Amount of Attorneys' Fees

Rule 23 of the Federal Rules of Civil Procedure provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."[76] "[A]wards of attorneys' fees serve the dual purpose of encouraging persons to seek redress for damages caused to an entire class of persons and discouraging future misconduct."[77] The U.S. Supreme Court has opined that consensual resolution of attorneys' fees, as was achieved here, is the ideal.[78] In "common fund" cases, such as this, the district court has the discretion to award attorneys' fees as either a percentage of the

---

[71] *Id.* & Ex. A.

[72] *Surety II*, Dkt. 67.

[73] *Surety II*, Dkt. 70.

[74] Paynter Decl. ¶ 33.

[75] *Id.* Since long before this Settlement, Class Counsel has regularly updated Plaintiffs and class members regarding the status of the litigation and responded to numerous questions and inquiries regarding both the status of the litigation and also individual class members' Meracord account information. *Id.*

[76] Fed. R. Civ. P. 23(h).

[77] *In re Apollo Grp. Inc. Secs. Litig.*, 2012 U.S. Dist. LEXIS 55622, at *19 (D. Ariz. Apr. 20, 2012).

[78] *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants settle the amount of a fee.").



1  common fund, or by using the lodestar method.[79] The district court's decision in awarding

2  attorneys' fees and expenses to the plaintiffs is reviewed for abuse of discretion.[80]

3      In the Ninth Circuit, the "benchmark" award in common fund cases is 25% of the

4  recovery obtained, with 20-30% being "the usual range."[81] The Court may also use the lodestar

5  method to determine reasonable attorneys' fees, multiplying the number of hours reasonably

6  expended by a reasonable hourly rate.[82] In common fund cases, the percentage-of-fund method is

7  preferred and is the norm, while the lodestar method may also be used as a cross-check of the

8  percentage-of-fund method.[83]

9      Here, Class Counsel seek $2,917,899.41 in attorneys' fees, representing 29.5% percent of

10  the $9,875,000 Settlement Fund.[84] This fee falls within the usual range in the Ninth Circuit of

11  20–30% for awards in common fund cases. F&D does not to oppose this request,[85] and the

12  reasonableness of this fee request is confirmed through the lodestar cross-check. Accordingly,

13  under either the percentage-of-fund or lodestar approach, Plaintiffs' requested fee award is

14  reasonable.

---

[79] *Id.* at 457; *Vizcaino v. Microsoft Corp.*, 142 F. Supp. 2d 1299, 1301 (W.D. Wash. 2001), *aff'd*, 290 F.3d 1043 (9th Cir. 2002).

[80] *See City of Roseville Emps. Ret. Sys. v. Orloff Family Tr. UAD 12/31/01*, 2012 U.S. App. LEXIS 11512, at *4 (9th Cir. June 7, 2012).

[81] *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (approving a fee award of 28% of the common fund).

[82] *See Hensley*, 461 U.S. at 433.

[83] *Vizcaino*, 142 F. Supp. 2d at 1305.

[84] Pursuant to conditions imposed by the Pennsylvania Department of Banking, Class Counsel limited the percentage of the Pennsylvania Settlement Fund to 25%; thus, the total amount requested is derived by multiplying all the State Settlement Funds except Pennsylvania's by 30%, and adding that to 25% of Pennsylvania's State Settlement Fund. August 7, 2017 Declaration of Celeste H.G. Boyd ("Boyd Decl.") ¶ 2 & Ex. A.

[85] Paynter Decl. ¶ 33. Settlement Agreement, Dkt. 68-1, ¶ 13.



1.     **Plaintiffs' Fee Request Is Reasonable Under a "Common Fund" Percentage-of-Recovery Analysis**

Plaintiffs and Class Counsel seek an award of attorneys' fees representing 29.5% of the Settlement Fund—a percentage routinely awarded (or exceeded) by courts in this Circuit.[86] In *Vizcaino*, the Ninth Circuit outlined a number of factors that courts may consider in setting an appropriate fee, including whether counsel achieved exceptional results, and the degree of risk assumed by counsel.[87] The Ninth Circuit has clarified that these are not the only factors that district courts may consider in awarding fees and expenses; rather, "in selecting a reasonable percentage fee award in a common fund case the district court must consider all relevant circumstances."[88] Here, notwithstanding the extraordinary complex nature of this litigation, its half-dozen separate cases, and its dozens of complex motions and Ninth Circuit appeal, Plaintiffs do not request that the Court exceed the "usual range" of awards,[89] and a fee request of 29.5% of the Settlement Fund is amply supported by the relevant circumstances of this case.

*First*, Class Counsel achieved an exceptional result on behalf of Plaintiffs and the Class. Class Counsel litigated diligently for over three and a half years against Meracord to establish its underlying liability for the wrongful conduct that formed the basis of the original complaint, and when it became clear that Meracord itself was insolvent and unable to compensate Class members for their damages, Class Counsel for a further three years doggedly pursued the most realistic remaining avenue of recovery: the Bonds. Following vigorous opposition from Mearcord's top-tier defense counsel, Plaintiffs faced continued top-tier opposition from the

---

[86] *See, e.g.*, *Morris v. Lifescan, Inc.*, 54 Fed. App'x 663, 664 (9th Cir. 2003) (fee award of 33% of settlement fund); *Ikuseghan v. Multicare Health Sys.*, 2016 WL 4363198, at *2 (W.D. Wash. Aug. 16, 2016) (30% of settlement fund); *Bendixen v. Sprint Commc'ns Co. L.P.*, 2013 WL 2949569, at *3 (W.D. Wash. June 14, 2013) (fee award of 28.4% of settlement fund); *Vizcaino*, 290 F.3d at 1050 (fee award of 28% of settlement fund); *Rinky Dink, Inc. v. World Bus. Lenders, LLC*, 2016 WL 3087073, at *4 (W.D. Wash. May 31, 2016) (fee award of 25% of settlement fund).

[87] *See Vizcaino*, 290 F.3d at 1048-50.

[88] *Steiner v. Am. Broad. Co.*, 248 Fed. App'x 780, 782 (9th Cir. 2007). In determining a reasonable award under the common fund method, courts may also consider other factors, including: plaintiffs' counsel's hourly rate, counsel's experience and skill, the complexity of the issues, and a comparison with counsel's lodestar.

[89] *City of Roseville*, 2012 U.S. App. LEXIS 11512, at *4.

MOTION FOR ATTORNEYS' FEES,
EXPENSES, AND INCENTIVE AWARDS - 13
Case No. 3:16-cv-05147-BHS



1918 Eighth Avenue, Suite 3300 • Seattle, WA  98101
(206) 623-7292 • FAX (206) 623-0594

1  Sureties, including in the form of stonewalling tactics in which the Sureties obstinately

2  maintained that no "direct claim" had been made on the Bonds—despite, *inter alia*, the filing of

3  two separate lawsuits naming the Sureties in their capacity as sureties for Meracord.[90]

4        After years of litigation, and despite the tremendous legal hurdles, the F&D Settlement

5  negotiated by Class Counsel secures nearly 90% of F&D's maximum likely exposure on its

6  Bonds,[91] and represents what is likely the last, and possibly the only, relief that many victims of

7  Meracord's actions will receive.[92] In approving the Platte River Settlement, the Court found that

8  a settlement representing 85% of Platte River's maximum exposure on the Bonds was "an

9  excellent result."[93] Here, Class Counsel's continued dogged pursuit of a remedy for the Class

10  resulted in an even better result for the Class—and indeed, will even increase the benefits of the

11  Platte River Settlement by resulting in some *additional* payments to Class members who already

12  received payments from Platte River.

13        *Second*, as the Court already acknowledged in approving the Platte River Settlement,

14  "Class Counsel bore a high degree of risk in bringing and pursuing this action, including the

15  considerable risk of non-payment.[94] This was a novel case alleging that Meracord and a network

16

---

17  [90] *See, e.g., Meracord Action*, Dkt. 264 at 2 (Sureties' Motion to Intervene).

18  [91] F&D has provided Class Counsel with evidence that Bonds in two states—Georgia and

19  Indiana—were canceled prior to becoming effective. In addition, in two states—Kentucky and Wyoming—the amount of fees paid by Settlement Class Members to Meracord and its co-conspirators was far less than the face value of F&D's Bonds (approximately $135,000 in fees in

20  Kentucky, compared with a $500,000 bond; and approximately $33,000 in fees in Wyoming, compared with a $400,000 bond). With those reductions, F&D's maximum likely exposure on its

21  Bonds was $11,037,556. The Settlement Fund of $9,875,000 thus represents 89.5% of F&D's maximum exposure on the Bonds. Boyd Decl. ¶ 3.

22  [92] *Cf., e.g., Destefano v. Zynga, Inc.,* 2016 WL 537946, at *11 (N.D. Cal. Feb. 11, 2016)

23  (noting that payout to class members of 9.5% of likely recoverable damages was reasonable); *Rubio-Delgado v. Aerotek, Inc.*, 2015 WL 3623627, at *9 (N.D. Cal. June 10, 2015) (recognizing

24  that "'there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery'") (quoting *In re*

25  *Ionosphere Clubs, Inc.*, 156 B.R. 414, 427 (S.D.N.Y. 1993)); *Jackson v. Wells Fargo Bank, N.A.*, 136 F. Supp. 3d 687, 706 (W.D. Pa. 2015), *appeal dismissed* (Nov. 25, 2015) (recovery of

26  "approximately 19.5% of the class' best possible recovery at trial based on actual damages . . . [was] well within the range of reasonableness").

27  [93] *Surety II*, Dkt. 41 ¶ 14(a).

28  [94] *Id.* at ¶ 14(c).

MOTION FOR ATTORNEYS' FEES,
EXPENSES, AND INCENTIVE AWARDS - 14
Case No. 3:16-cv-05147-BHS

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

of Front DRCs conspired to obtain illegal fees in connection with fraudulent debt relief programs. In order to recover from F&D, Class Counsel had to both litigate the underlying case against Meracord and litigate Bond coverage in all 19 states where F&D issued Bonds. Meracord vigorously defended against Plaintiffs' various complaints, including filing interlocutory appeals and resisting discovery. Likewise, F&D vigorously defended the complaints brought against it, filing motions (including two motions to dismiss) in conjunction with Platte River,[95] and then filing yet another motion to dismiss the *Surety III* action.[96]

Throughout the litigation, and especially after Meracord became effectively insolvent, Class Counsel risked receiving no fees whatsoever. Yet Class Counsel invested significant resources in the case, not just in time, but also in out-of-pocket costs, including, for example, hiring database experts to reconstruct the Meracord Database from the raw backup file provided by Meracord; hiring digital forensic experts to recover information from Meracord's business servers; and even hiring, at their own expense, additional counsel to pursue the Class's execution on the Final Judgment to obtain Meracord's claims against the Sureties.[97]

*Third*, as previously noted by the Court in its approval of the Platte River Settlement, the "complex issues involved in this case . . . were significant and required a high level of skill and high-quality work to overcome."[98] Indeed, the case presented myriad complex legal issues. To begin with, the litigation of Plaintiffs' underlying claims against Meracord involved complicated questions under RICO that required, for example, a sophisticated understanding of the real-world relationships between and among Meracord and the Front DRCs, and the interplay of those relationships with the legal requirements to establish an "enterprise" under the act. Plaintiffs were also required to defend against Meracord's motion to compel arbitration, which involved briefing to the Ninth Circuit on, *inter alia*, issues such as the ability of companies like Meracord to invoke arbitration clauses as third-party beneficiaries of the underlying contracts. Even

---

[95] *See, e.g., Cheeks Action*, Dkt. 7; *Meracord Action*, Dkt. 264

[96] *Surety III*, Dkt. 8.

[97] Paynter Decl. ¶ 34 & Ex. B; Loeser Decl. ¶¶ 8-9, Ex. B; *see also* Tafoya Decl.

[98] *Surety II*, Dkt. 41 ¶ 14(b).

MOTION FOR ATTORNEYS' FEES,
EXPENSES, AND INCENTIVE AWARDS - 15
Case No. 3:16-cv-05147-BHS

1  Plaintiffs' state statutory claims under the Washington Debt Adjusting Act involved, for

2  example, research into complex issues of statutory construction, and questions of retroactivity

3  after Meracord successfully lobbied the Washington State legislature to have itself and other

4  "third party" payment processors exempted from the DAA.

5          In addition, beyond the complexities underlying Plaintiffs' claims against Meracord, the

6  direct actions against the Sureties involved in-depth research into the common law of suretyship

7  in multiple jurisdictions, the common law and statutory bases for Plaintiffs' bad-faith claims

8  against the Sureties, as well as state-by-state analysis of the licensing statutes under which the

9  Bonds were issued, and the procedural requirements underlying those statutes (for example,

10  requirements for notice to and/or assent from the licensing agencies in various states). The latter

11  inquiry involved substantive analysis of state debt settlement regulations to examine ways in

12  which Meracord's actions violated those statutes.

13          To determine damages in each Surety state, all this legal research then had to be

14  combined with the Bond terms and translated into specific, state-by-state queries that Plaintiffs'

15  database expert could run on Meracord's Database. Finally, the strategy underlying the *Surety III*

16  action required not only the retainer of counsel to pursue execution on the Final Judgment, but

17  also additional substantial in-depth research into the law of bad faith as applied to the principal–

18  surety relationship. The complexity and novelty of those questions was evidenced by this Court's

19  indication that at least four questions of Washington State law might need to be certified to the

20  Washington Supreme Court.[99] Indeed, the complexity of those questions also prompted Class

21  Counsel to seek out the additional services of expert counsel on issues of bad faith under

22  Washington law.

23          In light of the extraordinary complexities of this case, the extraordinary risk of non-

24  payment assumed by Class Counsel, and the extraordinary result ultimately obtained for the

25  Class as a direct result of Class Counsel's innovative and intensive efforts, Plaintiffs' fee request

26  of 29.5% is reasonable under the percentage-of-fund method. The Court previously approved a

27

28
          [99] *Surety III*, Dkt. 21.

MOTION FOR ATTORNEYS' FEES,
EXPENSES, AND INCENTIVE AWARDS - 16
Case No. 3:16-cv-05147-BHS



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

25% award in the Platte River Settlement.[100] Here, the requested 29.5% is still within the "usual range" for awards in the Ninth Circuit, and the increase is easily justified given the substantial additional work performed by Class Counsel in the time between the two settlements—including the issuing of subpoenas to nineteen different state agencies, executing on the Final Judgment to procure Meracord's books and records, and filing a new complaint under an entirely new and complex legal theory.

### 2. Plaintiffs' Fee Request Is Reasonable Under A Lodestar Cross-Check

Plaintiffs' fee request of $2,917,899.41 is also reasonable when cross-checked using the lodestar method. Under the lodestar method, a presumptively reasonable fee award can be determined by multiplying the number of hours reasonably expended by plaintiffs' counsel by their reasonable hourly rate.[101]

### a. The Number of Hours that Class Counsel Devoted to this Litigation Is Reasonable

Under the lodestar method, courts first look at the number of hours spent by counsel on the case.[102] Here, in support of the lodestar determination, Plaintiffs submit the declarations of Class Counsel attesting to their total hours, hourly rates, experience, and efforts to prosecute this action.

As set forth in the supporting declarations, Class Counsel have collectively spent more than 5,560.76 hours of attorney and litigation support time attributable to this Settlement, representing a lodestar of 2,872,238.81.[103] Specifically, for purposes of a lodestar cross-check, Class Counsel have included: (1) all time spent on litigation after September 29, 2015 (when Platte River and the Plaintiffs notified the Court of the Platte River Settlement), excluding time specifically related to the Platte River Settlement; (2) two-thirds of the time spent on litigation of the Surety-related actions up to September 29, 2015; and (3) two-thirds of the time spent

---

[100] *Surety II*, Dkt. 41 ¶ 14.

[101] *See Hensley*, 461 U.S. at 433.

[102] *Id.*

[103] Paynter Decl. ¶¶ 35-36, Ex. A; Loeser Decl. ¶¶ 9-10, Ex. B.

MOTION FOR ATTORNEYS' FEES,
EXPENSES, AND INCENTIVE AWARDS - 17
Case No. 3:16-cv-05147-BHS

litigating the underlying case against Meracord. No time that was used as the basis for the fee request in the Platte River Settlement has been included in the computation for this fee request— that is, there has been no double-counting. For the time spent litigating against Meracord and against both Sureties, Class Counsel's allocation of two-thirds to the lodestar here is appropriate because (i) the face value of F&D bonds was approximately two-thirds of the total face value of all the bonds (64.5%), and (ii) the members of the F&D Settlement Class represent approximately two-thirds (65.1%) of the total number of consumers who resided in Surety States and who made payments during the relevant Bond period.[104] Fees were awarded in connection with the Platte River Settlement using the converse of this formula,[105] meaning that the lodestar calculations for the two settlements are mutually exclusive and there has been no double-counting or double-allocation of time across the two settlements.

Class Counsel's time and expenses, allocated using the method described above, are shown in the table below:

| | Total Hours | Hours Allocated to Settlement | Total Lodestar | Lodestar Allocated to Settlement | Expenses[106] |
|---|---|---|---|---|---|
| **HAGENS BERMAN** | | | | | |
| After Platte River Settlement | 196.20 | 196.20 | $92,136.00 | $92,136.00 | $4,580.93 |
| Surety Matters Prior to Platte River Settlement | 60.15 | 40.10 | $22,406.50 | $14,937.67 | $1,751.46 |
| Underlying Meracord Litigation | 1330.90 | 887.31 | $538,982.25 | $359,339.47 | $11,525.14 |
| TOTALS | 1587.25 | 1123.61 | $653,524.75 | $466,413.14 | $17,857.53 |

---

[104] Boyd Decl. ¶ 4.

[105] *Surety II*, Dkt. 41 at ¶ 15 n.3.

[106] These amounts represent two-thirds of the amount of expenses incurred on the underlying Meracord litigation and the surety matters prior to the Platte River Settlement, and 100% of the expenses incurred after the Platte River Settlement. They do not include any expenses specifically related to the Platte River Settlement, nor any of the common time that was allocated to the Platte River Settlement for purposes of the fee request made in connection with that settlement.

MOTION FOR ATTORNEYS' FEES,
EXPENSES, AND INCENTIVE AWARDS - 18
Case No. 3:16-cv-05147-BHS



| PAYNTER LAW FIRM | | | | | |
|---|---|---|---|---|---|
| After Platte River Settlement | 1,472.25 | 1,472.25 | $726,764.00 | $726,764.00 | $135,038.49 |
| Surety Matters Prior to Platte River Settlement | 603.45 | 402.30 | $325,089.25 | $216,726.17 | $378.28 |
| Underlying Meracord Litigation | 3,843.90 | 2,562.60 | $2,193,503.25 | $1,462,335.50 | $15,163.67 |
| TOTALS | 5,919.60 | 4,437.15 | $3,245,356.50 | $2,405,825.67 | $150,202.16 |
| | | | | | |
| Grand Totals | 7,506.85 | 5,560.76 | 3,898,881.25 | 2,872,238.81 | $168,437.97 |

The number of hours that Class Counsel have devoted to pursuing this litigation is appropriate and reasonable, given: (1) the extensive pre-filing investigation and legal research required to file numerous complaints described in Section II; (2) the extensive motion and appellate practice required; (3) the informal and formal discovery efforts with Meracord, the Sureties, and third parties; (4) the review of hundreds of pages of documents received from Meracord customers; (5) the review of hundreds of pages of statements and financial records from Meracord's numerous bank accounts; (6) the review of each of the Bonds issued to Meracord; (7) the analysis of Meracord's Database; (8) the efforts to certify the Meracord Class and obtain judgment against Meracord; (9) the efforts to execute on the Final Judgment and bring Meracord's bad faith claims against F&D on behalf of the Class; (10) the review of thousands of pages of documents obtained from F&D, state regulatory agencies, and the entirety of Meracord's physical books and records; (11) the extraction, review, and analysis of information contained on Meracord's business servers; (12) the extensive settlement negotiations with Meracord and the Sureties; (13) the regular contact and communication with Plaintiffs and Class members; and (14) the time spent notifying Class members and assisting in the administration the Settlement.

Moreover, Class Counsel's responsibilities will not end with final approval. Class Counsel will continue to assist Settlement Class Members with inquiries and work with the Settlement Administrator. Class Counsel may also have to expend further time and effort to

HAGENS BERMAN

1918 Eighth Avenue, Suite 3300 • Seattle, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1    resolve any objections that are lodged and litigate any appeals that result therefrom.[107] Past

2    experience shows that this ongoing work will add significant time to the work already

3    undertaken. In addition to the hours already billed, counsel anticipates incurring additional hours

4    and expenses finalizing materials for the final fairness hearing, appearing at the final fairness

5    hearing, continuing outreach to Settlement Class Members, distributing funds to Settlement

6    Class Members, and resolving any objections and/or appeals.

7          In sum, the hours that Class Counsel devoted to this action were extensive, but reasonable

8    and necessary, particularly given the complexity of the issues and parties involved in this case,

9    and the necessity of obtaining and analyzing the extensive information regarding Meracord's

10   customers and business practices that allowed Plaintiffs to effectively negotiate with F&D

11   regarding its potential liability on the Bonds. Class Counsel's relentless pursuit of relief for the

12   Class resulted in this Settlement, which will provide nearly all the amount conceivably

13   recoverable from F&D for the many Meracord victims.

### b.  Class Counsel's Hourly Rates Are Reasonable

15         As detailed in the declarations of Stuart M. Paynter and Thomas E. Loeser, Class

16   Counsel's rates are also fair and reasonable. Under the lodestar method, counsel's reasonable

17   hourly rates are determined by the prevailing market rates that a lawyer of comparable skill,

18   experience, and reputation could command in the relevant community.[108] "Affidavits of the

19   plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate

20   determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are

21   satisfactory evidence of the prevailing market rate."[109]

22         Counsel's hourly rates in this action range from $345 to $800. Hourly rates for paralegals

23   are $200 or lower.[110] Class Counsel are well-respected members of the bar with extensive

---

[107] To date, no objections to this settlement have been filed. Boyd Decl. ¶ 5.

[108] *See, e.g., Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).

[109] *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990); *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1110 (9th Cir. 2014), *cert. denied sub nom., City of Los Angeles, Cal. v. Chaudhry*, 135 S. Ct. 295 (2014).

[110] Paynter Decl. ¶ 37 & Ex. A; Loeser Decl. ¶ 9 & Ex. A.

**H B  HAGENS BERMAN**

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

experience in prosecuting complex litigation, including consumer class actions.[111] Class Counsel's hourly rates are appropriate for litigation of this complexity and are comparable to those approved in courts in this district and the Ninth Circuit generally.[112] Indeed, the Northern District of California specifically approved Class Counsel's rates in complex class action litigation involving the use of NCAA student-athletes likenesses in videogames.[113]

  **c. Plaintiffs' Fee Request Is Reasonable Considering the Results Obtained, Time and Labor Required, Complexity of the Litigation, the Risks Involved, and Counsel's Skill and Experience**

  Multiplying the hours spent by Class Counsel on the litigation by their respective hourly rates, and allocating as discussed *supra* Section III.A.2.a, yields a lodestar calculation of 2,872,238.81. "Though the lodestar figure is presumptively reasonable, the court may adjust it upward or downward by an appropriate positive or negative multiplier reflecting a host of reasonableness factors, including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment."[114] The fee award of $2,917,899.41 requested here represents a multiplier of 1.02. It is essentially no multiplier at all (the multiplier in the Platte River Settlement was 1.01, which the Court found "negligible"[115]), thus falling well below the range of multipliers accepted by courts in this district

---

[111] Paynter Decl. ¶¶ 39-40; 46-54 & Ex. C; Loeser Decl. ¶ 11, Ex. C.

[112] *See, e.g., Aronson v. Dog Eat Dog Films, Inc.*, 2010 WL 4723723, at *3 (W.D. Wash. Nov. 16, 2010) (approving hourly rates of $505, $265, and $175).

[113] *In re NCAA Student-Athlete Name & Likeness Licensing Litigation*, No. 4:09-cv-01967 (N.D. Cal., Filed May 9, 2009), Dkt. 1244, ¶ 11 (Final Approval Order, August 18, 2015). In the Platte River Final Approval Order, the Court found Class Counsel's hours to be reasonable, but found it unnecessary to make a specific finding as to the reasonableness of Class Counsel's hourly rates, because "this case could likely have justified a multiplier of 1.5 or more of the lodestar amount that, even with somewhat lower hourly rates, would have resulted in an amount exceeding the requested fee." *Surety I*, Dkt. 41 at ¶ 15. The same reasoning applies here, where requested fee represents a multiplier of only 1.02.

[114] *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941-42 (9th Cir. 2011) (citations omitted); *see also Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

[115] *Surety II*, Dkt. 41 ¶ 15.



1  and across the country.[116] As discussed below, reasonableness factors weigh heavily in favor of

2  granting the total requested fee award.

3    *First*, Class Counsel obtained a significant benefit for class members. "Foremost among

4  these considerations . . . is the benefit obtained for the class."[117] Here, Class Counsel maintained

5  this litigation for years, despite the risks, and even after Meracord was effectively insolvent, to

6  obtain relief for the Class. The Bonds were the last remaining avenue of recovery for victims of

7  Meracord's actions. Building on the groundwork laid in the initial actions against Meracord,

8  Class Counsel began discussing settlement with the Sureties in 2013, and ultimately negotiated a

9  Settlement Fund representing nearly 90% of F&D's maximum likely exposure on its bonds.

10    *Second*, Class Counsel have expended a significant amount of time and resources on the

11  litigation. To date, counsel have expended more than 7,506.85 hours, for a total lodestar of

12  3,898,881.25 (with 2,872,238.81 of that allocated to the litigation against F&D), and have

13  incurred $168,437.97 in expenses allocable to the litigation against F&D for the benefit of the

14  class.[118] Class Counsel vigorously litigated this action and were challenged every step of the way

15  by Meracord and the Sureties. To effectively prosecute this very large and complex class action

16  involving multiple defendants, Class Counsel had to commit a significant amount of time,

17  personnel, and expenses on a contingency basis with absolutely no guarantee of being

18  compensated in the end. *See* Section III.A.2.a, *supra*.

19

20    [116] *See, e.g., Vizcaino*, 290 F.3d at 1051 n.6 (surveying class actions settlements nationwide, and noting 54 percent of lodestar multipliers fell within the 1.5 to 3.0 range, and that 83 percent

21  of multipliers fell within the 1.0 to 4.0 range); *Pelletz v. Weyerhaeuser Co.*, 592 F. Supp. 2d 1322, 1328 (W.D. Wash. 2009) (approving "modest 1.82 multiplier"); *Barovic v. Ballmer*, 2016

22  WL 199674, at *4 (W.D. Wash. Jan. 13, 2016), *appeal dismissed* (May 6, 2016) (multiplier of 2.5); *Hopkins v. Stryker Sales Corp.*, 2013 WL 496358, at *5 (N.D. Cal. Feb. 6, 2013) (multiplier

23  of 2.86); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2013 WL 1365900, at *8 (N.D. Cal. Apr. 3, 2013) (multipliers ranging on average between 2.4-2.6); *Pokorny v. Quixtar, Inc.*, 2013 WL

24  3790896, at *2 (N.D. Cal. July 18, 2013) (multiplier of 2.2); *see also Milliron v. T-Mobile USA, Inc.*, 423 F. App'x 131, 135 (3d Cir. 2011) (approving district court's use of 2.2 multiplier); *Di*

25  *Giacomo v. Plains All Am. Pipeline*, 2001 WL 34633373, at *10-11 (S.D. Tex. Dec. 19, 2001) (5.3 multiplier); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002)

26  (4.65 multiplier).

27    [117] *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d at 942.

  [118] Paynter Decl. ¶ 36, Exs. A & B; Loeser Decl. ¶ 9, Exs. A & B.

28

H B  HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

*Third*, Plaintiffs faced a number of novel and complex legal and factual issues in this litigation, as described *supra*, Section III.A.1.

*Fourth*, given that Class Counsel undertook this case on a contingency basis, they faced a considerable risk of non-payment, in particular because during the litigation, Meracord went out of business and became effectively insolvent.

*Fifth*, Class Counsel Hagens Berman is one of the most well-respected class action litigation firms in the country and has litigated some of the largest class actions in history,[119] including the tobacco litigation,[120] *In re Visa MasterCard Litigation*,[121] the *Toyota Motor Corporation Unintended Acceleration Litigation*,[122] and the *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*.[123] Hagens Berman has over 65 lawyers in offices across the country.[124] Since its founding in 1993, the firm has been recognized in courts throughout the United States for its ability and experience in handling major class litigation efficiently and obtaining outstanding results for its clients.[125] Courts in Washington have repeatedly appointed Hagens Berman as lead or co-lead counsel in class litigation proceedings, including recently before this Court in *Slack, et al. v. Swift Transportation Co. of Arizona, LLC*, No. 3:11-cv-05843-BHS (W.D. Wash).[126]

---

[119] Loeser Decl. ¶ 11, Ex. C (Firm Resume).

[120] In the historic litigation against Big Tobacco, Hagens Berman represented 13 states and advanced groundbreaking legal claims to secure a global settlement worth $260 billion, the largest recovery in history. Only two firms went to trial, and Hagens Berman served as co-lead trial counsel.

[121] *In re Visa-MasterCard Litigation,* CV-96-5238 (E.D.N.Y.). Hagens Berman was co-lead counsel in a case alleging antitrust violations by Visa and MasterCard. The case settled for $3 billion in cash and changes in practices valued at $20 billion.

[122] *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prods. Liab. Litig.*, 8:10ML2151 JVS (C.D. Cal.). Hagens Berman recovered $1.6 billion for the class.

[123] *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, 3:15-md-02672-CRB (N.D. Cal). Hagens Berman was a member of the Plaintiffs' Steering Committee, which obtained a nearly $10 billion settlement for consumers, and was lead counsel in the Franchise Dealer litigation, which obtained a $1.3 billion settlement for Volkswagen's franchise dealerships.

[124] Loeser Decl. ¶ 11.

[125] *Id.*

[126] *Id.*

HB HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

The Paynter Law Firm is a boutique litigation firm with a practice devoted exclusively to plaintiff-side contingency litigation, including complex class action lawsuits.[127] Despite its small size, The Paynter Law Firm has already recovered over $100 million for consumers. Most recently, the firm served as Class Counsel in the *In re NCAA Student-Athlete Name & Likeness Licensing Litigation*, No. 4:09-cv-01967 (N.D. Cal., Filed May 9, 2009)—litigation involving unprecedented national classwide claims on behalf of NCAA student-athletes whose likenesses were used without permission in popular videogames made by Electronic Arts. That action resulted in a total settlement fund of $60 million, with many players receiving thousands of dollars in compensation for the use of their likenesses.[128] The Paynter Law Firm is currently counsel in a number of complex cases, including *White v. DaVita Healthcare Partners, Inc*., 15-cv-2106 (D. Colo., filed March 6, 2013); *Nemet v. Volkswagen Group of America et al*., No. 3:17-cv-04372 (N.D. Cal.); *Scranton v. E*Trade Securities, LLC*, No. 1-13-cv-245579 (Sup. Ct. of Cal., filed April 30, 2013), currently on appeal, No. H042291 (Cal. Ct. App., 6th Dist.); *Bubble Pony, Inc. v. Facepunch Studios Ltd.*, No. 15-cv-00601 (D. Minn.); and *Tru-Form Optics, Inc. v. Valeant Pharmaceuticals International, Inc.*, No. 3:15-cv-08824 (D.N.J., filed Dec. 22, 2015).[129]

The reputation, experience, and skill of Class Counsel were essential to the achievement of a successful settlement with F&D. From the outset, Class Counsel used their expertise and skill to obtain an extraordinary recovery for the Class, given the particular factual and legal complexities of this litigation. At no time has F&D (or any other Defendant) ever conceded liability, the appropriateness of certification other than for settlement purposes, or the existence of damages. Given the significant risks and uncertainty associated with this complex class action, it is a testament to Class Counsel's skill, creativity, and determination that they were able to negotiate this Settlement providing nearly the maximum possible economic relief from F&D for Settlement Class Members.

---

[127] Paynter Decl. ¶ 40, Ex. C (Firm Resume).

[128] *Id.* ¶ 41.

[129] *Id.* ¶ 42.

HB HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1    *Sixth*, the fee request is reasonable in light of the future work and expenses that will be

2    incurred by Class Counsel under the Settlement, beyond the current lodestar. *See supra*, p. 19.

3    **B.    Plaintiffs' Expenses Are Reasonable and Were Necessarily Incurred**

4          In addition to attorneys' fees, Plaintiffs seek an award of $150,000 for expenses

5    necessarily incurred in connection with the prosecution of this action.[130] The Ninth Circuit

6    allows recovery of pre-settlement litigation costs in the context of class action settlements.[131] All

7    expenses that are typically billed by attorneys to paying clients in the marketplace are

8    compensable.[132] With this Motion, Class Counsel provide an accounting of the $168,437.97 in

9    expenses incurred by Class Counsel.[133] Expenses include expert assistance accessing and

10   analyzing the data in Meracord's customer database; the significant costs associated with

11   obtaining and analyzing the entirety of Meracord's business servers, as well as their paper books

12   and records; the hiring of an expert on the debt settlement industry; and travel expenses related to

13   settlement negotiations.[134] All of these costs were necessarily and reasonably incurred to bring

14   this case to a successful conclusion, and they reflect market rates for the various categories of

15   expenses incurred.[135]

16   **C.    Plaintiffs Request Incentive Awards**

17         Plaintiffs also request that the Court approve incentive awards of between $500–$1,000

18   each[136] for the forty-nine Plaintiffs, or $18,000 total, to be deducted from the Settlement Fund.

---

20   [130] Pursuant to conditions imposed by the Pennsylvania Department of Banking, Class Counsel limited the share of expenses paid from the Pennsylvania State Settlement Fund to $2,393.75 (Pennsylvania's proportionate share of $26,500). Boyd Decl. ¶ 6 & Ex. A.

21   [131] *See Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003).

22   [132] *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).

23   [133] Paynter Decl. ¶¶ 35-36, Ex. B (Expense Report); Loeser Decl. ¶ 9, Ex. B (Expense Report).  Although Class Counsel's expenses totaled $168,437.97, the Settlement Agreement contained a $150,000 limitation on the expenses to be requested by Class Counsel. Settlement Agreement, Dkt. 68-1 ¶ 13.

25   [134] *Id.*

26   [135] Paynter Decl. ¶ 43; Loeser Decl. ¶ 12.

27   [136] Plaintiffs request $1,000 incentive awards to those Plaintiffs who represented the original certified Meracord Class, but who did not already receive incentive awards from the Platte River Settlement, and $500 incentive awards for all remaining Plaintiffs. Paynter Decl. ¶ 44.



Incentive awards for class representatives are routinely provided to encourage individuals to undertake the responsibilities of representing the class and recognize the time and effort spent in the case.[137] Incentive awards "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."[138] Courts have discretion to approve incentive awards based on, *inter alia,* the risk (financial or otherwise) of commencing suit, the notoriety and personal difficulties encountered, the amount of time and effort spent, and the duration of the litigation.[139]

The Plaintiffs have been actively involved in the litigation, some for years, assisting Class Counsel in all phases of the case, including gathering evidence to file pleadings, providing Class Counsel with details of their experiences with Meracord, reviewing and approving pleadings, and in the case of original Plaintiff, Amrish Rajagopalan, providing responses to discovery.[140] The time and effort expended by these Plaintiffs assisted in the recovery of nearly 90% of the face value of the F&D bonds for the Settlement Class. The incentive awards of $500–$1,000 are reasonable and modest compared to incentive awards in other cases,[141] and are identical to those approved by the Court in the Platte River Final Approval Order, with the exception of an additional $500 award to each of the Plaintiffs who represented the original certified Class in the *Meracord Action*.[142]

---

[137] *See Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 958 (9th Cir. 2009) ("Incentive awards are fairly typical in class action cases.").

[138] *Id.* at 958-59.

[139] *See Van Vraken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

[140] Paynter Decl. ¶ 45.

[141] *See, e.g.,* In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 942 (9th Cir. 2015) (incentive awards of $5,000 for nine plaintiffs); *Pelletz v. Weyerhaeuser Co.*, 592 F. Supp. 2d at 1329-30 (incentive awards of $7500 for four plaintiffs); *Barovic v. Ballmer*, 2016 WL 199674, at *5, *appeal dismissed* (May 6, 2016) (incentive awards of $5000); *Grays Harbor Adventist Christian Sch. v. Carrier Corp.*, 2008 WL 1901988, at *6-7 (W.D. Wash. Apr. 24, 2008) (incentive awards of $3500 for eleven plaintiffs).

[142] *Surety I*, Dkt. 41 ¶ 11.



1

## IV.   CONCLUSION

2
        For the foregoing reasons, Plaintiffs request an award of $2,917,899.41 in attorney's fees,

3
$150,000 in expenses,[143] and incentive awards totaling $18,000. Plaintiffs request that the

4
incentive awards be made in the amount of $1,000 to those Plaintiffs who represented class

5
members in the original certified Meracord Class, but who did not receive incentive awards from

6
the Platte River Settlement, and $500 incentive awards for all remaining Plaintiffs.

7

8
DATED this 7th day of August, 2017              **HAGENS BERMAN SOBOL SHAPIRO LLP**

9
                                                By: /s/ Steve W. Berman
                                                By: /s/ Thomas E. Loeser

10
                                                     Steve W. Berman, WSBA# 12536
                                                     Thomas E. Loeser, WSBA# 38701

11
                                                1918 Eighth Avenue, Suite 3300
                                                Seattle, WA  98101

12
                                                Telephone: (206) 623-7292
                                                Facsimile: (206) 623-0594

13
                                                steve@hbsslaw.com
                                                toml@hbsslaw.com

14

15
                                                **THE PAYNTER LAW FIRM PLLC**
                                                Stuart M. Paynter (*pro hac vice*)

16
                                                1200 G Street N.W., Suite 800
                                                Washington, DC  20005

17
                                                Telephone: (202) 626-4486
                                                Facsimile: (866) 734-0622

18
                                                stuart@paynterlawfirm.com

19
                                                Celeste H.G. Boyd (*pro hac vice*)

20
                                                106 Churton St., Suite 200
                                                Hillsborough, NC 27278

21
                                                Telephone: (919) 307-9991
                                                Facsimile: (866) 734-0622

22
                                                cboyd@paynterlawfirm.com

23
                                                *Attorneys for Fidelity Representatives*

24

25

26

27
        [143] Although Class Counsel's expenses totaled $168,437.97, the Settlement Agreement
contained a $150,000 limitation on the expenses to be requested by Class Counsel. Settlement

28
Agreement, Dkt. 68-1 ¶ 13.

MOTION FOR ATTORNEYS' FEES,
EXPENSES, AND INCENTIVE AWARDS - 27
Case No. 3:16-cv-05147-BHS



1

## CERTIFICATE OF SERVICE

2

On August 7, 2017, I caused to be electronically filed the foregoing with the Clerk of the

3

Court using the CM/ECF system, which will send notification of such filing to the following

4

attorneys of record:

5

6

- **Bert W. Markovich**
  bmarkovich@schwabe.com

7

8

- **David C. Veis**
  DVeis@RobinsKaplan.com

9

10

- **Jennifer Campbell**
  jcampbell@schwabe.com

11

12

- **Steve W. Berman**
  steve@hbsslaw.com

13

14

- **Thomas E Loeser**
  TomL@hbsslaw.com

15

16

/s/ Steve W. Berman
Steve W. Berman, WSBA # 12536

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR ATTORNEYS' FEES,
EXPENSES, AND INCENTIVE AWARDS - 28
Case No. 3:16-cv-05147-BHS