HONORABLE BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT,
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

AMRISH RAJAGOPALAN, MARIE
JOHNSON-PEREDO, ROBERT HEWSON,
DONTE CHEEKS, DEBORAH HORTON,
RICHARD PIERCE, ERMA SUE CLYATT,
ROBERT JOYCE, AMY JOYCE, ARTHUR
FULLER, DAWN MEADE, WAHAB
EKUNSUMI, KAREN HEA, ALEX
CASIANO, DECEMBER GUZZO, BEN
PARKER, CHERYL ANDERSON, CARMEN
ALFONSO, BETH JUNGEN, TANYA
GWATHNEY, KEVIN DELOACH, SCOTT
SNOEK, KELLY ENDERS, THOMAS
LUDWICK, DONALD BOGAN, BILL
KRUSE, JOYCE DRUMMOND, TAMARA
COOPER, DEBRA MILLER, GEORGE
LAWRENCE, CYNTHIA OXENDINE,
MARTIN ANDERSON, ANGELA ROSS,
ANDREA TOPPS, DEBRA FINAZZO,
SHARRON BLACK, SYLVIA HADCOCK,
AUDRIE LAWRENCE (POOLE), ADAM
WARD, ISHULA MCCONNELL, ERICA
CHASE, STEPHEN YOUNKINS, DAN
WEDDLE, STILLMAN PARKER, TINA
ROBERTS-ASHBY, BRANDON ASHBY,
VALERIE NEWSOME, AND RUSSEL
TANNER, on behalf of themselves and others
similarly situated.

                Plaintiffs,

    v.

FIDELITY AND DEPOSIT COMPANY OF
MARYLAND, as Surety for Meracord LLC,

                Defendant.

No.  3:16-cv-05147-BHS

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

NOTED ON MOTION CALENDAR:
October 10, 2017, 1:30 p.m.



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................................. 2

      A.    The Meracord Actions ............................................................................ 2

      B.    The Remsberg Agreement ...................................................................... 2

      C.    The Sureties Actions .............................................................................. 3

      D.    Settlement Negotiations ......................................................................... 4

III.  THE TERMS OF THE SETTLEMENT ........................................................... 5

      A.    The Settlement Fund .............................................................................. 5

      B.    The Proposed Class ................................................................................ 6

      C.    The Proposed Release ............................................................................ 7

      D.    Preliminary Approval of the Settlement ............................................... 8

      E.    The Notice Campaign ............................................................................ 8

IV.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ......... 11

      A.    Standard of Review.............................................................................. 11

      B.    The Settlement Is Fair, Reasonable, and Adequate ............................ 12

            1.    The Strength of Plaintiffs' Case and the Risk of Continued
                  Litigation Supports Final Approval. ........................................ 13

            2.    There Is Potential Risk in Maintaining Class Action Status
                  Through Trial. .......................................................................... 14

            3.    The Relief Provided to the Class in the Settlement Is
                  Substantial, Especially in Light of the Limited Nature of
                  the Bond Funds. ....................................................................... 14

            4.    The Extent of Discovery and the Stage of the Proceedings.... 15

            5.    The Recommendations of Experienced Counsel Favor
                  Approval of the Settlement. ..................................................... 15

            6.    The Reaction of the Class to the Proposed Settlement. .......... 16

V.    THE SETTLEMENT IS THE NON-COLLUSIVE PRODUCT OF
      EXTENSIVE ARM'S LENGTH NEGOTIATIONS ...................................... 16



VI.   FOR PURPOSES OF SETTLEMENT ONLY, THE SETTLEMENT
      CLASS MEETS THE REQUIREMENTS OF RULE 23.................................. 18

      A.    The Settlement Class Satisfies Rule 23(a). ............................... 18

            1.    The Settlement Class Is So Numerous that Joinder Is
                  Impracticable........................................................................... 19

            2.    Numerous Common Issues of Law and Fact Exist. ................. 19

            3.    The Plaintiffs' Claims Are Typical of Those of Other
                  Settlement Class Members. ..................................................... 20

            4.    The Plaintiffs and Their Counsel Adequately Represent the
                  Interests of the Settlement Class. ........................................... 21

      B.    The Settlement Class Satisfies the Requirements of Rule 23(b)(3)..................... 21

            1.    Common Questions of Law and Fact Predominate over
                  Individual Questions. .............................................................. 22

            2.    A Class Action Is Superior to Other Available Methods......................... 23

      C.    Notice to the Settlement Class Was Adequate and Satisfied Due
            Process. ............................................................................................ 24

VII.  THE TWO OBJECTIONS TO THE SETTLEMENT MISUNDERSTOOD
      THE NATURE OF THE SETTLEMENT. .................................................. 25

VIII. CONCLUSION................................................................................................. 26



# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abdullah v. U.S. Sec. Assocs., Inc.*,
731 F.3d 952 (9th Cir. 2013) ...........................................................................20, 22

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997)...........................................................................................18, 23

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
133 S. Ct. 1184 (2013).............................................................................................22

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) .............................................................................16, 17

*Boyd v. Bechtel Corp.*,
485 F. Supp. 610 (N.D. Cal. 1979) .........................................................................12

*Brown v. Consumer Law Assocs., LLC*,
283 F.R.D. 602 (E.D. Wash. 2012).....................................................................19, 20

*Churchill Vill. v. GE*,
361 F.3d 566 (9th Cir. 2004) ...................................................................................12

*In re Citric Acid Antitrust Litig.*,
1996 WL 655791 (N.D. Cal. Oct. 2, 1996)..............................................................22

*Costelo v. Chertoff*,
258 F.R.D. 600 (C.D. Cal. 2009) .............................................................................20

*Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)................................................................................12, 16

*Dryer v. Nat'l Football League*,
2013 WL 1408351 (D. Minn. Apr. 8, 2013) ............................................................13

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) ..............................................................................20, 21

*Ellis v. Naval Air Rework Facility*,
87 F.R.D. 15 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) .................12, 16

*In re First Am. Corp. ERISA Litig.*,
258 F.R.D. 610 (C.D. Cal. 2009) .............................................................................18



*Galvan. Inc. v. KDI Distrib.*,
   2011 U.S. Dist. LEXIS 127602 (C.D. Cal. Oct. 25, 2011) ...................................18, 19, 20, 21

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ...............................................................................12, 19, 22

*Hartless v. Clorox Co.*,
   273 F.R.D. 630 (S.D. Cal. 2011), *aff'd in part*, 473 F. App'x 716 (9th Cir.
   2012) ...........................................................................................................................16

*Hartman v. United Bank Card Inc.*,
   2012 WL 4758052 (W.D. Wash. Oct. 4, 2012) ..........................................................19

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
   2014 WL 6473044 (S.D. Cal. Nov. 18, 2014 .............................................................25

*Z.D. ex rel. J.D. v. Grp. Health Co-op.*,
   2012 WL 1977962 (W.D. Wash. June 1, 2012).........................................................19

*Keegan v. Am. Honda Motor Co.*,
   284 F.R.D. 504 (C.D. Cal. 2012) ...............................................................................23

*Kirkorian v. Borelli*,
   695 F. Supp. 446 (N.D. Cal. 1988) .............................................................................16

*Kirkpatrick v. Ironwood Commc'ns, Inc.*,
   2006 U.S. Dist. LEXIS 57713 (W.D. Wash. Aug. 16, 2006) ....................................19

*Lerwill v. Inflight Motion Pictures, Inc.*,
   582 F.2d 507 (9th Cir. 1978) ......................................................................................23

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
   244 F.3d 1152 (9th Cir. 2001) ....................................................................................22

*Mba v. World Airways, Inc.*,
   369 F. App'x 194 (2d Cir. 2010) ................................................................................12

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ......................................................................................14

*In re Mfrs. Life Ins. Co. Premium Litig.*,
   1998 U.S. Dist. LEXIS 23217 (S.D. Cal. Dec. 18, 1998).........................................16

*Milstein v. Huck*,
   600 F. Supp. 254 (E.D.N.Y 1984) ..............................................................................16

*Nat'l Rural Telecomms. Coop. v. DIRECT TV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ..........................................................................15, 16



*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) .......................................................................11, 12

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2007) ...............................................................14

*Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris, Inc.*,
  188 F.R.D. 365 (D. Or. 1998) ..............................................................................22

*Rinky Dink, Inc. v. World Bus. Lenders, LLC*,
  2016 WL 3087073 (W.D. Wash. May 31, 2016) ...................................................25

*Rivera v. Bio Engineered Supplements & Nutrition, Inc.*,
  2008 U.S. Dist. LEXIS 95083 (C.D. Cal. Nov. 13, 2008) ....................................19

*Rodriguez v. Carlson*,
  166 F.R.D. 465 (E.D. Wash. 1996) ......................................................................19

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ...............................................................................24

*Roshandel v. Chertoff*,
  554 F. Supp. 2d 1194 (W.D. Wash. 2008), *amended in part*, 2008 WL
  2275558 (W.D. Wash. June 3, 2008) ....................................................................20

*Siber v. Mabon*,
  18 F.3d 1449 (9th Cir. 1994) ...............................................................................24

*Smith v. Univ. of Wash. Law Sch.*,
  2 F. Supp. 2d 1324 (W.D. Wash. 1998) ..........................................................19, 20

*In re Sugar Indus. Antitrust Litig.*,
  1976 WL 1374 (N.D. Cal. May 21, 1976) ............................................................22

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) .................................................................................12

*Tyson Foods, Inc. v. Bouaphakeo*,
  136 S. Ct. 1036 (2016) .........................................................................................22

*United States v. McInnes*,
  556 F.2d 436 (9th Cir. 1977) ...............................................................................13

*Util. Reform Project v. Bonneville Power Admin.*,
  869 F.2d 437 (9th Cir. 1989) ...............................................................................11

*Van Bronkhorst v. Safeco Corp.*,
  529 F.2d 943 (9th Cir. 1976) ..........................................................................11, 13



*Villegas v. J.P. Morgan Chase & Co.*,
   2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ........................................................14

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ...........................................................................................22

*In re Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985)...........................................................................16

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
   1988 WL 158947 (W.D. Wash. July 28, 1988) .................................................12, 15

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1983).......................................................................................12

*Yokoyama v. Midland Nat'l Life Ins. Co.*,
   594 F.3d 1087 (9th Cir. 2010) .................................................................................22

*Zinser v. Accufix Research Inst., Inc.*,
   253 F.3d 1180 (9th Cir.), *amended*, 273 F.3d 1266 (9th Cir. 2001).........................18

## Other Authorities

Fed. R. Civ. P. 23....................................................................................21, 23, 24

Herbert Newberg & Alba Conte, *Newberg on Class Actions*, § 11.41 (4th ed.
   2002) .......................................................................................................................17



# I.     INTRODUCTION

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Class Counsel[1] submit this motion on behalf of Plaintiffs,[2] seeking final approval of the $9.875 million settlement between Plaintiffs and Defendant Fidelity and Deposit Company of Maryland ("F&D"). The terms of the Settlement are set forth in the Settlement Agreement, filed with the Court on April 21, 2017 ("Settlement Agreement" or "Settlement").[3]

After a successful nationwide notice campaign, only 14 Settlement Class members requested exclusion from the Settlement, and only two objections were filed to the Settlement. As explained below, the two objectors lack standing to object to the settlement, as they are not Settlement Class Members; in addition, their objections are based on a misunderstanding of the Settlement and provide no basis for its rejection.[4]

This Settlement readily satisfies the standard for final approval. Its terms are fair, reasonable, and in the best interests of the Settlement Class. The Settlement was the result of extended, informed, arm's-length negotiations between counsel for the Settling Parties and comes after over six years of litigation on behalf of victims of Meracord and its "front debt relief companies" ("Front DRCs"). It represents nearly all of what Settlement Class Members would be entitled to if they had prevailed on their Bond claims against Meracord's surety, F&D. The

---

[1] Unless otherwise distinguished, "Class Counsel" and "Counsel" refer to counsel for the Plaintiffs, namely Hagens Berman Sobol Shapiro LLP and The Paynter Law Firm PLLC.

[2] Adam Ward, Alex Casiano, Amrish Rajagopalan, Amy Joyce, Andrea Topps, Angela Ross, Arthur Fuller, Audrie Lawrence (Poole), Ben Parker, Beth Jungen, Bill Kruse, Brandon Ashby, Carmen Alfonso, Cheryl Anderson, Cynthia Oxendine, Dan Weddle, Dawn Meade, Deborah Horton, Debra Finazzo, Debra Miller, December Guzzo, Donald Bogan, Donte Cheeks, Erica Chase, Erma Sue Clyatt, George Lawrence, Ishula McConnell, Joyce Drummond, Karen Hea, Kelly Enders, Kevin Deloach, Marie Johnson-Peredo, Martin Anderson, Richard Pierce, Robert Hewson, Robert Joyce, Russel Tanner, Scott Snoek, Sharron Black, Stephen Younkins, Stillman Parker, Sylvia Hadcock, Tamara Cooper, Tanya Gwathney, Thomas Ludwick, Tina Roberts-Ashby, Valerie Newsome, and Wahab Ekunsumi, are collectively referred to as "Plaintiffs." However, for simplicity, this motion refers to "Plaintiffs" even when describing events that took place before all the Plaintiffs named in the current complaint had joined the lawsuit. To the extent relevant, the term should be understood to mean whatever Plaintiffs were named at the time and/or in the particular action or actions being discussed.

[3] Dkt. 68-1 (Settlement Agreement).

[4] There were no objections to Plaintiffs motion for attorneys' fees, expenses and service awards, and no response to Plaintiffs motion seeking fees, expenses and service awards. As a result, Plaintiffs will not submit a reply memorandum in support of the request for fees, expenses and service awards, and hereby submit such motion as unopposed. With respect to that Motion, however, Plaintiffs make the following point of clarification: while the Motion asked that the Court approve incentive awards "for the forty-nine Plaintiffs," not all forty-nine named Plaintiffs will receive incentive awards from this Settlement. Those who received an incentive award from the Platte River Settlement will not receive additional incentive awards from this Settlement, unless they were also "original" representatives of the class certified by the Court in the *Meracord Action* (defined as "Meracord Class Representatives" under the Settlement Agreement).

PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT - 1
Case No. 3:16-cv-05147-BHS
010262-16  985522 V1

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA  98101
(206) 623-7292 • FAX (206) 623-0594

1  Settlement Class has waited a very long time for compensation for Meracord's wrongdoing, and

2  the Settlement is a victory for that Class, especially considering the challenges of litigation when

3  Meracord—whose actions triggered the Bond claims—is no longer in business. For these

4  reasons, it is respectfully submitted that the Settlement satisfies the Rule 23 requirements, that it

5  is fair, reasonable, and adequate, and the Settlement should be approved by the Court.

6  ## II.     FACTUAL BACKGROUND

7  **A.     The Meracord Actions**

8  On July 26, 2011, Amrish Rajagopalan filed a class action lawsuit in the Western District

9  of Washington against NoteWorld, LLC, *Rajagopalan v. NoteWorld*, No. 3:11-cv-05574 (W.D.

10  Wash.), alleging that NoteWorld—which later changed its name to Meracord LLC

11  ("Meracord")—was a payment processor working with a network of "front-end" debt relief

12  companies ("Front DRCs") to defraud customers and charge hundreds of millions of dollars in

13  illegal fees.

14  The *Rajagopalan v. NoteWorld* action was subsequently consolidated with another

15  similar class action, *Canada v. Meracord*, No. 3:12-cv-05657 (W.D. Wash., Filed July 24, 2012),

16  and the consolidated action captioned *Rajagopalan, et al. v. Meracord LLC*, No. 3:12-cv-05657-

17  BHS ("*Meracord Action*").

18  On March 2, 2015, the Court issued a Final Judgment in the *Meracord Action*, certifying

19  a class of consumers ("the Meracord Class") and awarding that class $1.45 billion in damages.[5]

20  Specifically, this Court certified a class consisting of

21        all persons in a Surety State who established an account with
22        Meracord LLC (formerly NoteWorld) or any subsidiary thereof
from which Meracord processed any payments related to debt
23        settlement, including MARS, within the Bond Period of their state
of residence.

24  **B.     The Remsberg Agreement**

25  When it became clear that Meracord was insolvent and unable to continue its defense of

26  the litigation, a settlement agreement was entered into on February 13, 2015, between certain

27  

28      [5] *Meracord Action* Dkt. 287 (Final Judgment).



1   Plaintiffs in the Meracord Actions[6] and Meracord's owner, Linda Remsberg, and her husband

2   Charles Remsberg ("Remsberg Agreement"). Pursuant to that agreement, the Remsbergs

3   assigned to Plaintiffs and any future class a promissory note from a company called Evergreen

4   (which Evergreen subsequently paid off in a lump sum of $415,000), in exchange for Plaintiffs'

5   agreement to release the Remsbergs as individuals from the *Meracord Action* and any related

6   claims.

7       The funds from the Evergreen note are currently in an escrow account created by the

8   Remsberg Agreement ("Remsberg Escrow"), but pursuant to the Remsberg Agreement, those

9   funds are unavailable for distribution to the Class until February 2021, unless the Sureties agree

10  unconditionally to release the Remsbergs from liability related to the Bonds. As explained in

11  more detail below in Section III.A, the Settlement provides for the release of those funds as an

12  offset to F&D's payment obligation under the Settlement.

13  **C.    The Sureties Actions**

14      F&D issued surety bonds for Meracord pursuant to money transmitter or escrow statutes

15  of the following states: Arizona, California, Colorado, Connecticut, Georgia, Indiana, Kentucky,

16  Maryland, Michigan, Missouri, New Hampshire, New Jersey, New York, Ohio, Pennsylvania,

17  Tennessee, Texas, Washington, and Wyoming (collectively, "the F&D States"). Platte River

18  issued surety bonds for Meracord pursuant to statutes in the following states: Alabama, Alaska,

19  Arkansas, Delaware, Florida, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maine,

20  Minnesota, Mississippi, Nebraska, Nevada, North Carolina, North Dakota, Oklahoma, Rhode

21  Island, South Dakota, Vermont, Virginia, Washington D.C., West Virginia, Wisconsin, and

22  Wyoming. Collectively, the states where F&D and/or Platte River issued surety bonds are

23  referred to as "Bond States."

24      On April 23, 2013, Donte Cheeks brought an action in the Northern District of California,

25  *Cheeks v. Fidelity and Deposit Company of Maryland and Platte River Ins. Co., as sureties for*

26  *Meracord LLC*, No. 4:13-cv-01854-DMR (N.D. Cal., Filed April 23, 2013), which is currently

27  stayed.

28      [6] Those plaintiffs were Amrish Rajagopalan, Robert Hewson, Marie Johnson-Peredo, and Karen Hea.



On June 15, 2015, the Meracord Class brought an action against the Sureties, alleging generally that the Sureties were liable to the Meracord Class for the full amount of the Bonds, and for additional sums under statutory and common law bad faith. *Rajagopalan, et al., on behalf of the Class Certified in Rajagopalan, et al. v. Meracord LLC, v. Fidelity and Deposit Company of Maryland and Platte River Insurance Company, as Sureties for Meracord LLC*, No. 2:15-cv-00957-BHS (W.D. Wash.) ("*Surety I*").

On March 25, 2016, the Plaintiffs in *Surety I* voluntarily dismissed their complaint. On February 24, 2016, certain Settlement Class Representatives filed the above-captioned action against the Sureties, alleging generally that the Sureties were liable to a putative class substantially identical to the Meracord Class for the full amount of the Bonds, and for additional statutory and common law bad faith. *Rajagopalan, et al. v. Fidelity and Deposit Company of Maryland and Platte River Insurance Companies, as Sureties for Meracord LLC*, No. 3:16-cv-05147-BHS (W.D. Wash.) ("*Surety II*").

On July 18, 2016, Class Representatives of the Meracord Class brought an action against F&D, alleging generally that F&D is liable to Meracord for statutory and common law bad faith—damages for which are payable to the Meracord Class as the legal owner of Meracord's claims against F&D. *Rajagopalan, et al. v. Fidelity and Deposit Co. of Maryland*, No. 3:16-cv-05739-BHS (W.D. Wash., Removed August 31, 2016) ("*Surety III*").

**D.      Settlement Negotiations**

Settlement discussions with both Sureties were first held in October 2013, in conjunction with mediation scheduled in the *Meracord Action*. At the time, both Sureties were represented by the same counsel. The mediation did not result in a settlement.

In June 2015, Platte River retained separate counsel, and beginning in August 2015, Class Counsel and Platte River engaged in extensive, arm's-length negotiations involving in-person, telephonic, and electronic discussions, before agreeing to the terms of the Settlement. Fidelity was not a party to those negotiations. As a result of those negotiations, a settlement was reached

PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT - 4
Case No. 3:16-cv-05147-BHS
010262-16 985522 V1

HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

between Platte River and Settlement Class Representatives for the Platte River States.[7] That agreement was preliminarily approved by the Court on May 3, 2016,[8] and after notice to the class and a final fairness hearing, the Court finally approved the Platte River settlement on August 30, 2016.[9]

On August 31, 2016, F&D filed a motion to dismiss the *Surety III* action,[10] on which the Court requested additional briefing regarding the possible certification of an issue of state law to the Washington Supreme Court.[11] On January 12, 2017, Plaintiffs filed a motion for partial summary judgment on certain F&D Bond claims. After agreeing to a settlement meeting, the Parties stipulated to a stay of both motions.

On January 18, 2017, counsel for the Parties conducted an in-person settlement meeting in Seattle, at which they came to a tentative settlement agreement after over a half day of negotiations.[12] After further negotiations via email and phone, the Parties reached the essential terms of the agreement in early March 2017, and the final Settlement Agreement was signed by the Parties on April 20, 2017.[13]

The Settlement likely represents the last recovery that Meracord customers will receive as compensation for Meracord's wrongful actions.

## III.  THE TERMS OF THE SETTLEMENT

### A.  The Settlement Fund

The Agreement provides that F&D will pay the amount of the State Settlement Fund (listed in Appendix A to the Settlement Agreement) for each Settlement State.[14] The total amount of the Settlement Fund, which is $9,875,000, is made in exchange for a complete release

---

[7] Dkt. 15-1 (Platte River Settlement Agreement).

[8] Dkt. 17 (Platte River Preliminary Approval Order).

[9] Dkt. 41 (Platte River Final Approval Order).

[10] *Surety III*, Dkt. 8 (F&D Mot. to Dismiss).

[11] *Surety III*, Dkt. 21 (Jan. 17, 2017 Order Requesting Add'l Briefing).

[12] Declaration of Thomas E. Loeser (Sept. 14, 2017) ("Loeser Decl.") ¶ 2.

[13] *Id*. & Dkt. 68-1 (Settlement Agreement).

[14] Dkt. 68-1 (Settlement Agreement) ¶ 9.



of all claims against F&D.[15] The total Settlement Fund is an "all in" number which includes, without limitation, all monetary benefits to the Settlement Class, incentive awards for Plaintiffs, attorneys' fees, and all administration costs and expenses, notice costs and expenses, and settlement costs and expenses.[16]

A provision in the Agreement also allows F&D to offset its obligation to pay the Settlement Fund by the amount of any funds released to the Class from the Remsberg Escrow.[17] As of the date of this Motion, in order to take advantage of that provision, F&D has negotiated an agreement in which the Sureties will unconditionally release the Remsbergs from any liability related to the Bonds, and in exchange, upon the Effective Date of this Settlement, the funds in the Remsberg Escrow will be released to F&D.[18] Thus, F&D will pay the entire amount of the Settlement Fund, but will receive the approximately $400,000 in the Remsberg Escrow as an offset.[19]

**B.    The Proposed Class**

The Agreement defines the Settlement Class as follows:

> all persons who had an account at Meracord from which Meracord deducted any fees related to debt settlement services (including mortgage assistance relief services) and who, while residing in a Settlement State, made payments to such account within the State Settlement Period of their state of residence.[20]

Excluded from the Class are the Released Parties, F&D, and Meracord, as well as their officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which any Released Parties, F&D, or Meracord has or had a controlling interest.[21]

---

[15] *Id.*

[16] Dkt. 68-1 (Settlement Agreement) ¶ 8.

[17] Dkt. 68-1 (Settlement Agreement) ¶ 42.

[18] Declaration of Celeste H.G. Boyd (Sept. 14, 2017) ("Boyd Decl.") ¶ 8.

[19] *Id.*

[20] Dkt. 68-1 (Settlement Agreement) ¶ 1(kk).

[21] *Id.*

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1

**C.      The Proposed Release**

2      The Settlement releases F&D and its affiliates from claims on behalf of the Settlement

3  Class arising from the facts underlying the Class's litigation against Meracord. Specifically:

4              "Released Claims" means any and all rights, actions, causes of
              action, suits, debts, dues, accounts, contracts, agreements,
5              judgments, claims and demands in law or equity whatsoever that
              Settlement Class Representatives and the Settlement Class had,
6              now have, or that have accrued as of the date the Settlement
              Agreement's execution, whether asserted or not against F&D in the
7              Lawsuits (including but not limited to any rights, actions, causes of
              action, suits, debts, judgments, claims and demands arising out of
8              any F&D Bond) that arise out of or in any way relate to the
              underlying facts alleged in the Lawsuits, including but not limited
9              to any rights, actions, causes of action, suits, debts, dues, accounts,
              contracts, agreements, judgments, claims or demands in law or
10             equity for or arising out of any alleged bad faith or extra-
              contractual liability, whether statutory or at common law.[22]

11  and

12             "Released Parties" or "Releasees" means F&D and all of its
              present, former, and future officers, directors, employees, agents,
13             attorneys, insurers, insurance agents and brokers, independent
              contractors, successors, assigns, parents, subsidiaries, affiliates,
14             and/or shareholders.[23]

15       In addition, pursuant to the Remsberg Agreement, Plaintiffs request that the Court

16  approve the following release:

17             The Settlement Class releases any and all claims related to
              payment processing, debt settlement, escrow services, mortgage
18             assistance relief services, or any other form of debt relief that Class
              members may possess at present or in the future against the Linda
19             and/or Charles Remsbergs ("the Remsbergs"), whether arising
              from or related to the Remsbergs' individual capacities, as
20             members of Meracord, or as agents, officers, or directors of
              Meracord, including the Remsbergs' agents and attorneys, whether
21             such claims arise in tort, contract, or equity, or relate to or are
              based on any federal or state statute, or derivative of the rights of
22             any other persons or entity, including any and all claims asserted or
              that could be asserted in the *Meracord Action*. For clarity, nothing
23             in this provision shall be construed to release Meracord or any
              third-party company or individual, other than the Remsbergs,
24             engaged in payment processing, debt settlement, escrow services,
              mortgage assistance relief services, or any other form of debt
25             relief.

26

27  _____

[22] Dkt. 68-1 (Settlement Agreement) ¶ 1(ee).

28     [23] *Id.* ¶ 1(ff).



**D.    Preliminary Approval of the Settlement**

On May 30, 2017, the Court granted preliminary approval of the Settlement ("Preliminary Approval Order").[24] The Court found that the Settlement was sufficiently fair, reasonable, and adequate to allow dissemination of notice of the Settlement to the Settlement Class and to hold a Fairness Hearing.[25] The Court also found, for purposes of preliminary approval and settlement only, that the settlement class met the requirements of Rule 23(b)(3).[26] The Court appointed Plaintiffs, Class Counsel, and Administrator to their respective positions.[27]

**E.    The Notice Campaign**

In its Preliminary Approval Order, the Court appointed Garden City Group ("GCG") as the Settlement Administrator. As provided in the Preliminary Approval Order and the Settlement Agreement, Class Counsel provided GCG with (1) the customer database previously produced to Class Counsel by Meracord ("Meracord Database"), which contained transaction histories from 246,272 Meracord accounts; (2) customer contact information also previously provided by Meracord, which contained email addresses and/or mailing addresses for 215,718 unique Meracord customers; and (3) a list of approximately 800 email addresses for Meracord customers who had previously contacted Class Counsel about the Meracord litigation.[28] All this Meracord Customer information together is referred to as the "Class List."[29] The Class List contained information for 136,234 Meracord Customers in Settlement States ("Settlement Class Members"), and 104,475 Meracord Customers in Non-Settlement States ("Non-Settlement Customers").[30]

The Notice campaign for this Settlement was substantially identical to the notice campaign conducted for the Platte River Settlement.[31] Pursuant to the Preliminary Approval

---

[24] Dkt. 70 (Preliminary Approval Order).

[25] *Id.* at 1.

[26] *Id.* ¶ 6.

[27] *Id.* ¶¶ 7-9.

[28] *See* Boyd Decl. at ¶ 2; Declaration of Robert C. Jindra Regarding Settlement Administration, filed herewith ("GCG Decl.") at ¶ 5.

[29] GCG Decl. ¶ 4.

[30] *Id.*

[31] *Id.* ¶ 6.

**HAGENS BERMAN**

1918 Eighth Avenue, Suite 3300 • Seattle, WA 98101
(206) 623-7292 • FAX (206) 623-0594

Order, on June 29, 2017, GCG sent direct notice via email ("Email Notice") to the 173,479 Meracord customers for whom valid email addresses were provided—regardless of state of residency.[32] Of the emails sent, 100,689 emails were transmitted to Settlement Class Members, and 72,790 emails were transmitted to Non-F&D Customers.[33] A total of 48,318 Email Notices were returned to GCG as undeliverable; 26,544 of those undeliverable emails were sent to Settlement Class Members.[34]

GCG also sent direct notice via postcard ("Postcard Notice") to 143,906 Settlement Class Members on June 29, 2017.[35] Prior to mailing the Postcard Notice, GCG ran all addresses through the National Change of Address ("NCOA") database maintained by the U.S. Postal Service.[36] Where a potential Settlement Class Member had recently filed a U.S. Postal Service change of address request, the address listed in the NCOA database was used in connection with the Postcard Notice mailing.[37] A total of 9,959 records in the Class List were updated with a new address from the NCOA database.[38] A total of 17,314 Postcard Notices were returned to GCG as undeliverable without forwarding address information.[39] In total, approximately 88% of Postcard Notices sent to Settlement Class Members were not returned to GCG.[40]

---

[32] GCG Decl. ¶ 6 & Ex. A (Email Notice). Email Notice was sent to all Meracord customers—rather than only to Settlement Class Members—out of an abundance of caution. The Meracord Database contained only static customer address information, rather than a complete address history. Thus, it was possible for a customer to be misclassified as a non-Settlement Class Member based on the Database's "current" address, even if they had resided in a Settlement State during the relevant Bond Period (and thus fell into the Settlement Class definition). For that reason, customers classified as Non-Settlement Customers were sent Email Notice and given an opportunity to contest their exclusion from the Settlement Class. Boyd Decl. ¶ 3; *see also* GCG Decl. ¶ 7.

[33] GCG Decl. ¶ 7.

[34] *Id.*

[35] *Id.* ¶ 8 & Ex. B (Postcard Notice).

[36] The NCOA database is an official United States Postal Service technology product, which makes change of address information available to mailers to help reduce undeliverable mail pieces before mail enters the mail stream. This product is an effective tool to update address changes when a person has completed a change of address form with the Post Office. The U.S. Postal Service maintains address information on the database for 48 months. GCG Decl. ¶ 8, n.2.

[37] GCG Decl. ¶ 8.

[38] *Id.*

[39] *Id.* ¶ 9.

[40] *Id.*



In total, approximately 132,562 Settlement Class Members were sent *either* Email or Postcard notice that was successfully delivered (*i.e.*, not returned to GCG as undeliverable)—representing 97% of the Settlement Class.[41]

In addition to direct notice, GCG designed and made public an informational website, www.MeracordSuretySettlement.com, to provide information about the Settlement.[42] The website included an overview of the case, important dates and deadlines, answers to frequently asked questions, and contact information for Class Counsel and GCG.[43] The full Long Form Notice was available on the website, as well as the Class Action Complaint and Jury Demand, the Settlement Agreement, Preliminary Approval Order, and the Plaintiffs' Motion for Attorneys' Fees, Expenses, and Incentive Awards.[44] As of September 13, 2017, the website has received 41,988 visits from 29,384 unique visitors.[45] GCG has and will continue to maintain and update the Settlement Website throughout the administration of the Settlement.[46]

The Settlement Website also provided potential Settlement Class Members with access to the fee information from their Meracord accounts—on which Settlement Class Members' distribution amounts will be based, pursuant to Paragraph 21 of the Agreement.[47] This information was accessible via a login page using verification information provided on the E-Mail and Postcard Notices. Potential Settlement Class Members were able to dispute their fee information or Class Member status by providing documentation to GCG by August 28, 2017.[48] As of the August 28, 2017 deadline, GCG received and responded to 551 timely disputes submitted by potential Settlement Class Members.[49] GCG provided a summary report of all

---

[41] GCG Decl. ¶ 10.

[42] GCG Decl. ¶ 11.

[43] *Id.*

[44] *Id.* & Ex. C (Long-Form Notice).

[45] *Id.* ¶ 10.

[46] *Id.*

[47] GCG Decl. ¶ 12.

[48] *Id.*

[49] *Id.*

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

disputes received to Class Counsel on a weekly basis, and updated fee or status information for those individuals who provided sufficient documentation.[50]

GCG also established a dedicated Toll-Free Number that provides potential Settlement Class Members with direct access to information regarding the lawsuit and Settlement.[51] An Interactive Voice Response ("IVR") system provides callers with basic information on the case and the option to request a copy of the full Long-Form Notice.[52] As of September 13, 2017, GCG had received 7,793 calls; GCG will continue to maintain and update the IVR throughout the administration of the Settlement.[53]

GCG also established a settlement dedicated email inbox for potential Settlement Class Members to send inquiry emails regarding the Settlement.[54] As of September 13, 2017, GCG has received and responded to 1,025 emails from potential Settlement Class Members.[55]

The exclusion and objection deadline having passed, only 12 Settlement Class Members filed timely requests for exclusion, and only two objections were received to the Settlement.[56] The objections were filed directly with the Court, and Plaintiffs' response to those objections is below.

## IV.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A.    Standard of Review

It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution."[57] "[T]here is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits."[58]

---

[50] GCG Decl. ¶ 12.

[51] *Id.* ¶ 13.

[52] *Id.*

[53] *Id.*

[54] *Id.* ¶ 14.

[55] *Id.*

[56] GCG Decl. ¶¶ 15-16. and Exs. D (Exclusion List) & E (Objections of Helen Donovan and Audrey Garduno); *see also* Dkts. 77 & 78.

[57] *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). All internal citations and quotations omitted, unless otherwise indicated.

[58] *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989).



The Ninth Circuit has set forth factors that may be considered in evaluating whether the proposed settlement is "fair, adequate and reasonable" under Rule 23(e): (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; and (7) the reaction of the class to the proposed settlement.[59] The importance of any one factor "will depend upon and be dictated by the nature of the claims advanced, the types of relief sought, and the unique facts and circumstances presented by each individual case."[60]

The district court exercises its "sound discretion"[61] in approving a settlement, but should give the settlement a "presumption of reasonableness" based on the recommendations of plaintiffs' counsel.[62] The Court is now asked to ascertain whether the Settlement is within a range that responsible and experienced attorneys could accept, considering all relevant risk factors of litigation.[63] This range recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.[64] It is the considered judgment of the experienced Class Counsel, after extensive hard-fought litigation and settlement negotiations, that the Settlement is an excellent result for the Settlement Class and should be approved.

## B.     The Settlement Is Fair, Reasonable, and Adequate

In approving the Platte River Settlement, the Court found that settlement to be "in all respects, fair, reasonable, and adequate, and in the best interests of, the Plaintiffs, the Settlement

---

[59] *See Churchill Vill. v. GE*, 361 F.3d 566, 575-76 (9th Cir. 2004); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

[60] *Officers for Justice*, 688 F.2d at 625.

[61] *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).

[62] *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979); *Ellis*, 87 F.R.D. at 18 ("the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight"); *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 1988 WL 158947, at *3 (W.D. Wash. July 28, 1988) (the recommendation of experienced counsel "is entitled to great weight").

[63] *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1983); *Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 (2d Cir. 1974), *abrogated on other grounds*, *Mba v. World Airways, Inc.*, 369 F. App'x 194 (2d Cir. 2010).

[64] *Id.*



Class, and each of the Settlement Class Members, and . . . consistent and in compliance with all requirements of due process and federal law."[65] The same finding is appropriate for this Settlement, which is substantially identical to—and indeed, in some respects is an improvement on—the Platte River Settlement.

In addition, the Court has already initially considered all the relevant factors (with the exception of the reaction of Class members) in deciding to grant preliminary approval of the Settlement, and found that the Settlement falls within the range of reasonableness meriting possible final approval.[66] As outlined in the Motion for Preliminary Approval,[67] each of these factors supports final approval of the Settlement here.

### 1.    The Strength of Plaintiffs' Case and the Risk of Continued Litigation Supports Final Approval.

The Settlement provides an excellent recovery for the Settlement Class while eliminating the risk, expense, delay, and uncertainty of continued litigation. This case, like every class action, involves uncertainty on the merits. The Settlement resolves that inherent uncertainty; for this reason, settlements are thus strongly favored by the courts, particularly in class actions such as this one.[68]

Plaintiffs believe their case is strong, but they recognize the risk and expense necessary to prosecute their claims through trial, and subsequent appeals—especially in light of the fact that the company whose conduct is at the heart of this litigation has not been in business for years— as well as the inherent difficulties and delays a nationwide class action may entail.[69] These factors are particularly salient here, where F&D never conceded (i) that Meracord was liable for the conduct alleged or (ii) that if Meracord were liable, the conduct was covered by the F&D Bonds.

---

[65] Dkt. 41 (Platte River Final Approval Order) ¶ 2.

[66] Dkt. 70 (Preliminary Approval Order) at 1.

[67] Dkt. 67 (Mot. for Preliminary Approval) at Section IV.

[68] *See Van Bronkhorst*, 529 F.2d at 950; *United States v. McInnes*, 556 F.2d 436, 441 (9th Cir. 1977).

[69] *See Dryer v. Nat'l Football League*, 2013 WL 1408351, at *2 (D. Minn. Apr. 8, 2013).



Plaintiffs face an additional risk in the class certification process. Absent the Settlement, F&D would be expected to challenge class certification at every stage, and those challenges could conceivably diminish or preclude class-wide recovery.

Each of these issues presented substantial risk to the Settlement Class. Given these risks, there is no doubt that continued litigation would be expensive, complex, and time consuming. This factor should weigh heavily in favor of approving the Settlement.

### 2.   There Is Potential Risk in Maintaining Class Action Status Through Trial.

There are also a number of risks regarding the maintenance of a class action in this litigation, the most important being that because of the relatively small size of Settlement Class Members' individual claims, a ruling denying certification of a litigation class would effectively foreclose recovery completely for most—if not all—Settlement Class Members. The risk faced by the Settlement Class that any recovery would need to be sought on an individualized basis further supports final approval of the Settlement.

### 3.   The Relief Provided to the Class in the Settlement Is Substantial, Especially in Light of the Limited Nature of the Bond Funds.

The Agreement provides for the payment of nearly 90% of the F&D's maximum likely exposure on its Bonds.[70] The face value of the Bonds represents the maximum amount recoverable under the Bond claims, even had the Settlement Class Representatives gone to trial and prevailed on those claims. In light of the risks, expenses and delays to the Settlement Class of continuing litigation, the payment of nearly 90% of F&D's maximum exposure on the Bonds represents a very favorable outcome for the Settlement Class, and compares favorably to settlements finally approved in other class cases.[71] Finally, the Settlement ensures that monies do

---

[70] F&D has provided Class Counsel with evidence that Bonds in two states—Georgia and Indiana—were canceled prior to becoming effective. In addition, in two states—Kentucky and Wyoming—the amount of fees paid by Settlement Class Members to Meracord and its co-conspirators was far less than the face value of F&D's Bonds (approximately $135,000 in fees in Kentucky, compared with a $500,000 bond; and approximately $33,000 in fees in Wyoming, compared with a $400,000 bond). With those reductions, F&D's maximum likely exposure on its Bonds was $11,037,556. The Settlement Fund of $9,875,000 thus represents 89.5% of F&D's maximum exposure on the Bonds. Boyd Decl. ¶ 4.

[71] *See, e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (one-sixth of potential recovery was fair and adequate); *Villegas v. J.P. Morgan Chase & Co.*, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (15% of potential recovery approved); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2007) (6-9% of potential recovery was fair and adequate).



HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1  not revert to the Defendant, providing for a *cy pres* distribution of any residual funds to the

2  National Consumers League for use in educational efforts related to the debt settlement

3  industry.[72]

4       **4.    The Extent of Discovery and the Stage of the Proceedings.**

5          The stage of the proceedings and the extent of discovery also weigh in favor of approving

6  the Settlement. The parties have actively litigated this case against the Sureties—and the cases

7  against Meracord that underlie it—for over six years, including a trip up to the Ninth Circuit

8  Court of Appeals and back, and conducted extensive discovery while simultaneously fighting

9  heated battles.[73] Plaintiffs have conducted extensive discovery and analysis of information

10 gained through discovery—including, notably, extensive analysis of the Meracord Database by

11 an expert retained by Class Counsel, the deposition of key F&D employees, review of

12 information found on Meracord's business servers and in Meracord's paper records, review of

13 information obtained via subpoena from state regulatory agencies, and analysis of specific

14 statutory and bond language for surety bonds issued in forty-five different states (including the

15 nineteen states at issue in the Settlement).[74] Weighing the developed stage of litigation against

16 the risk that Settlement Class Members face in this litigation, there are no obvious deficiencies

17 regarding the Settlement. The state of these proceedings supports approval of this Settlement,

18 given that both parties were well-educated on both the claims and defenses available in this

19 action.

20       **5.    The Recommendations of Experienced Counsel Favor Approval of the
              Settlement.**

21

22         "Great weight is accorded to the recommendation of counsel, who are most closely

23 acquainted with the facts of the underlying litigation."[75] Here, experienced and capable Class

24 Counsel, who are routinely and actively involved in complex federal civil litigation, have

---

[72] Dkt. 68-1 (Settlement Agreement) ¶ 24.

[73] Loeser Decl. ¶ 3.

[74] *Id*. ¶ 4.

[75] *Nat'l Rural Telecomms. Coop. v. DIRECT TV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004); *see also In re Washington Pub. Power Supply Sys. Sec. Litig.*,1988 WL 158947, at *3 (the recommendation of experienced counsel "is entitled to great weight").



1   weighed all of the above factors and have concluded that the Settlement is a favorable result

2   which is in the best interests of the class.[76] Where, as here, the Settlement is the product of

3   serious, informed and non-collusive negotiations, "the trial judge . . . should be hesitant to

4   substitute its own judgment for that of counsel."[77]

5           **6.      The Reaction of the Class to the Proposed Settlement.**

6           Finally, the positive reaction of the Settlement Class to the proposed Settlement further

7   weighs heavily in favor of the final approval. As demonstrated by the Administrator's sworn

8   declaration, the Settlement Class has now been provided with notice of the Settlement, and only

9   a *de minimis* number have objected or sought exclusion.[78] The positive reaction of the Settlement

10  Class is an important factor in evaluating the fairness, reasonableness and adequacy of the

11  Settlement and supports approval.[79]

12  **V.      THE SETTLEMENT IS THE NON-COLLUSIVE PRODUCT OF EXTENSIVE**
13  **ARM'S LENGTH NEGOTIATIONS**

14          Experienced counsel on both sides, each with a comprehensive understanding of the

15  strengths and weaknesses of each party's respective claims and defenses, negotiated this

16  Settlement at arm's length.[80] The Settling Parties reached agreement after over five years of

17  litigation (including the underlying litigation against Meracord), discovery and investigation, and

18  multiple discussions between counsel concerning the detailed terms of the Settlement, including

19  the Settlement Amount. In addition, the Settling Parties previously took part in a one-day multi-

20  party mediation conducted by experienced mediator James A. Smith in October 2013.[81] The

21          [76] Loeser Decl. at ¶ 5.

22          [77] *Nat'l Rural*, 221 F.R.D. at 528; *see also Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988) ("The
    recommendation of experienced counsel carries significant weight in the court's determination of the reasonableness
23  of the settlement."); *Ellis*, 87 F.R.D. at 18 ("the fact that experienced counsel involved in the case approved the
    settlement after hard-fought negotiations is entitled to considerable weight").

24          [78] GCG Decl. ¶¶ 14-15.

            [79] *Detroit*, 495 F.2d at 463 (small number of objectors favors approval of settlement); *Hartless v. Clorox Co.*,
25  273 F.R.D. 630, 641 (S.D. Cal. 2011), *aff'd in part*, 473 F. App'x 716 (9th Cir. 2012) (reaction of class weighs in
    favor of approval where "[o]f the potentially thousands of individuals that received the class notice, only three
26  objected"); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 746 (S.D.N.Y. 1985) (same); *Milstein v. Huck*,
    600 F. Supp. 254, 267 (E.D.N.Y 1984) (same); *In re Mfrs. Life Ins. Co. Premium Litig.*, 1998 U.S. Dist. LEXIS
    23217, at *24 (S.D. Cal. Dec. 18, 1998) (same).

27          [80] Loeser Decl. ¶ 6; Boyd Decl. ¶ 5.

28          [81] *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011) (finding the presence of a
    neutral mediator "a factor weighing in favor of a finding of non-collusiveness").



1    Settlement is the end result of all of these non-collusive negotiations between sophisticated sets

2    of counsel. This prolonged process reflected the vigor with which both sides represented their

3    interests, including those of the Settlement Class as whole, and supports approval.[82]

4            In addition, the Settlement itself, taken as a whole, bears no signs of collusion or conflict.

5    In its opinion in *In re Bluetooth*, the Ninth Circuit admonished that courts must, at the final

6    approval stage, ensure that the settlement, taken as a whole, is free of collusion or any indication

7    that the pursuit of the interests of the class counsel or the named plaintiffs "infected" the

8    negotiations.[83] The Ninth Circuit has pointed to three factors as troubling signs of a potential

9    disregard for the class's interests during the course of negotiation:

10           1) when counsel receive a disproportionate distribution of the
     settlement, or when the class receives no monetary distribution but
11   class counsel are amply rewarded;

12           2) when the parties negotiate a "clear sailing" arrangement
     providing for the payment of attorneys' fees separate and apart
13   from class funds, which carries "the potential of enabling a
     defendant to pay class counsel excessive fees and costs in
14   exchange for counsel accepting an unfair settlement on behalf of
     the class;" and

15           3) when the parties arrange for fees not awarded to revert to
16   defendants rather than be added to the class fund.[84]

17           Here, none of those signs are present. The proposed settlement is a common fund, all-in

18   settlement with no possibility of reversion. The funds will be used to cover costs and fees, and to

19   compensate the Settlement Class based on a *pro rata* formula. There is no "clear sailing"

20   provision, no payment of fees separate and apart from the Settlement Fund, and no "kicker"

21   provision, like the one in *In re Bluetooth,* which would allow funds not awarded to revert to

22   F&D. The class notice informed Settlement Class Members that Class Counsel would make a

23   request for attorneys' fees up to 30 percent of the settlement fund.[85]

24

25       [82] Herbert Newberg & Alba Conte, *Newberg on Class Actions*, § 11.41 (4th ed. 2002) (recognizing that
26   settlement is entitled an initial presumption of fairness because it was the result of arm's length negotiations among
     experienced counsel).

27   [83] *Bluetooth*, 654 F.3d at 946-48.

     [84] *Id*. at 947.

28   [85] *See* GCG Decl, Ex. C (Long-Form Notice).

HAGENS BERMAN

In short, the Settlement was negotiated at arm's length, and the terms so reflect. None of the hallmarks of collusion warned of by the Ninth Circuit in *Bluetooth* are present, and the Settlement is entitled to a presumption of fairness.

## VI.    FOR PURPOSES OF SETTLEMENT ONLY, THE SETTLEMENT CLASS MEETS THE REQUIREMENTS OF RULE 23

The Court has already conditionally certified the Settlement Class and appointed Plaintiffs and Class Counsel to represent that Class.[86] As originally set forth in the Motion for Preliminary Approval,[87] the Class satisfies the requirements for class certification set forth in Rule 23(a) and Rule 23(b)(3). In addition, the Class definition in this Settlement is substantially identical to the Class defined in the Platte River Settlement, which the Court previous found to satisfy Rule 23's requirements.[88]

### A.    The Settlement Class Satisfies Rule 23(a).

Plaintiffs seeking class certification bear the burden of demonstrating that each element of Rule 23 is satisfied.[89] "While the Court's analysis must be rigorous, Rule 23 confers to the district court broad discretion to determine whether a class should be certified, and to revisit that certification throughout the legal proceedings before the court."[90] Although plaintiffs must offer facts sufficient to satisfy the Rule 23 requirements,[91] the Court "need only form a 'reasonable judgment' on each certification requirement," taking the complaint's allegations as true and declining to make merits determinations.[92] Trial manageability, however, is not a factor to consider when deciding whether to certify a settlement class because there will not be a trial.[93]

---

[86] Dkt. 70 (Preliminary Approval Order) at 2-3.

[87] Dkt. 67 (Mot. for Preliminary Approval) at Section V.

[88] Dkt. 41 (Platte River Final Approval Order) ¶ 5.

[89] *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir.), *amended*, 273 F.3d 1266 (9th Cir. 2001).

[90] *Galvan. Inc. v. KDI Distrib.*, 2011 U.S. Dist. LEXIS 127602, at *7 (C.D. Cal. Oct. 25, 2011).

[91] *In re First Am. Corp. ERISA Litig.*, 258 F.R.D. 610, 616 (C.D. Cal. 2009).

[92] *Galvan*, 2011 U.S. Dist. LEXIS 127602, at *7 (quoting *Gable v. Land Rover N. Am., Inc.*, 2011 U.S. Dist. LEXIS 90774, at *9 (C.D. Cal. July 25, 2011)).

[93] *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997).



1

### 1.    The Settlement Class Is So Numerous that Joinder Is Impracticable.

2      Rule 23(a)(1) requires that the class be so numerous that joinder of all members is

3  "impracticable."[94] Numerosity "depends on the facts and circumstances of each case and does

4  not, as a matter of law, require any specific minimum number of class members."[95] Courts

5  generally find numerosity when a class includes at least 40 members.[96] Class size does not have

6  to be "exactly determined" at the certification stage; "a class action may proceed upon estimates

7  as to the size of the proposed class."[97]

8      Here, the numerosity requirement is easily met because Meracord's customer database

9  evidences that over 144,000 accounts were established for Settlement Class Members.[98] Even

10  taking into account the possibility that a Settlement Class Member might have possessed more

11  than one account, the number of class members clearly makes joinder impracticable.[99]

12

### 2.    Numerous Common Issues of Law and Fact Exist.

13      To satisfy Rule 23(a)(2), "a common question 'must be of such a nature that it is capable

14  of classwide resolution—which means that the determination of its truth or falsity will resolve an

15  issue that is central to the validity of each of the claims in one stroke.'"[100] The "existence of

16  shared legal issues with divergent factual predicates is sufficient, as is a common core of salient

17  facts coupled with disparate legal remedies within the class."[101]

18      Commonality is liberally and permissively construed.[102] It requires only "a single

19  *significant* question of law or fact."[103] A defendant's actions need not affect each Class member

20  in the same manner and individual differences in damages will not defeat class treatment.[104]

21

22  [94] *Hanlon*, 150 F.3d at 1019.

22  [95] *Smith v. Univ. of Wash. Law Sch.*, 2 F. Supp. 2d 1324, 1340 (W.D. Wash. 1998).

23  [96] *See Z.D. ex rel. J.D. v. Grp. Health Co-op.*, 2012 WL 1977962, at *3 (W.D. Wash. June 1, 2012).

23  [97] *Hartman v. United Bank Card Inc.*, 2012 WL 4758052, at *10 (W.D. Wash. Oct. 4, 2012).

24  [98] Boyd Decl. ¶ 6.

25  [99] *See Brown v. Consumer Law Assocs., LLC*, 283 F.R.D. 602, 612 (E.D. Wash. 2012) (class of 894 debt settlement customers satisfied numerosity requirement).

26  [100] *Galvan*, 2011 U.S. Dist. LEXIS 127602, at *17 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)).

27  [101] *Rivera v. Bio Engineered Supplements & Nutrition, Inc.*, 2008 U.S. Dist. LEXIS 95083, at *15 (C.D. Cal. Nov. 13, 2008) (quoting *Hanlon*, 150 F.3d at 1019).

28  [102] *Hanlon*, 150 F.3d at 1019; *see also Kirkpatrick v. Ironwood Commc'ns, Inc.*, 2006 U.S. Dist. LEXIS 57713, at *11-14 (W.D. Wash. Aug. 16, 2006); *Rodriguez v. Carlson*, 166 F.R.D. 465, 472 (E.D. Wash. 1996).

**HAGENS BERMAN**

1918 Eighth Avenue, Suite 3300 • Seattle, WA 98101
(206) 623-7292 • FAX (206) 623-0594

The litigation against F&D centers around one single and common core question: whether Meracord's actions were sufficient to trigger F&D's liability under each Bond, and thus whether the Bond Amounts listed in Appendix A to the Settlement Agreement are due and owing to the Settlement Class. The relatively low commonality hurdle is satisfied here. The claims of all prospective Settlement Class Members involve this same overriding question—a question central to the case against F&D and sufficient to establish commonality.

### 3. The Plaintiffs' Claims Are Typical of Those of Other Settlement Class Members.

Rule 23(a)(3) requires that the class representatives' claims are typical of the class. "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'"[105] "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought."[106] Moreover, "[u]nder the 'permissive standards' of this Rule, 'representative claims are "typical" if they are reasonably co-extensive with those of absent class members; they need not be substantially identical.'"[107] The "focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff."[108]

Plaintiffs' claims here arise from a common course of conduct and a common legal theory, and their interests are typical of and closely aligned with those of the absent Settlement Class Members. With respect to their injuries, all Settlement Class Members were injured by the Meracord Enterprise's illegal activity, and this Court already found that Meracord's "violations of Washington consumer protection laws are typical of class members." *Meracord Action* Dkt.

---

[103] *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (emphasis in original); *accord Roshandel v. Chertoff*, 554 F. Supp. 2d 1194, 1203 (W.D. Wash. 2008), *amended in part*, 2008 WL 2275558 (W.D. Wash. June 3, 2008).

[104] *Smith v. Univ. of Wash. Law Sch.*, 2 F. Supp. 2d at 1342; *Brown*, 283 F.R.D. at 612 (citing *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1026 (9th Cir. 2011)).

[105] *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

[106] *Id.*

[107] *Galvan*, 2011 U.S. Dist. LEXIS 127602, at *18 (quoting *Hanlon*, 150 F.3d at 1020).

[108] *Costelo v. Chertoff*, 258 F.R.D. 600, 608 (C.D. Cal. 2009) (quoting *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005)).

PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT - 20
Case No. 3:16-cv-05147-BHS
010216-16 985522 V1

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1    285 (Order Granting Plaintiffs' Mot. for Partial Summary Jmt., Mot. to Certify Class, and Mot.

2    for Default Jmt.). Moreover, all Settlement Class Members seek to collect on the same Bonds.

3    Since Plaintiffs' claims rely on facts and legal theories identical to those of the Settlement Class,

4    the typicality requirement is satisfied.

### 4.    The Plaintiffs and Their Counsel Adequately Represent the Interests of the Settlement Class.

7    Rule 23(a)(4) requires that the representative parties fairly and adequately protect the

8    interests of the class. The relevant inquiries are: "(1) do the named plaintiffs and their counsel

9    have any conflicts of interest with other class members and (2) will the named plaintiffs and their

10   counsel prosecute the action vigorously on behalf of the class?"[109]

11   Here, the Court already found in preliminarily approving the Settlement and appointing

12   Plaintiffs that they would adequately represent the interests of the Settlement Class, and nothing

13   in the interim has changed the facts. Plaintiffs are committed to the action and have devoted

14   substantial time to assisting counsel with this action, providing information and/or documents in

15   support of the litigation, reviewing and approving pleadings and other filings, and actively

16   requesting updates on the status of the case.[110] Similarly, Class Counsel are well qualified,

17   possess no conflicts of interest, and have already proven capable of prosecuting this action

18   vigorously on behalf of the Settlement Class.[111] There can be no question that they are adequate,

19   and indeed, the Court has already found that they are, both in this action, and in the context of

20   certifying the Meracord Class.[112]

### B.    The Settlement Class Satisfies the Requirements of Rule 23(b)(3)

22   For certification under Rule 23(b)(3), common questions of law or fact must predominate

23   over questions that affect only individual members of the class, and a class action must be found

24   to be superior to other available methods of adjudication. Fed. R. Civ. P. 23(b)(3). "Judicial

---

[109] *Ellis*, 657 F.3d at 985 (quoting *Hanlon*, 150 F.3d at 1020); *see also Galvan*, 2011 U.S. Dist. LEXIS 127602, at *20.

[110] Loeser Decl. ¶ 7; Boyd Decl. ¶ 7.

[111] *See* Dkt. 67 (Mot. for Preliminary Approval) at Section V(D), and Dkt. 73 (Mot. for Attorneys' Fees).

[112] Dkt. 70 (Preliminary Approval Order) at 3; *Meracord Action* Dkt. 285 (Order Granting Partial Summary Judgment, Certifying Class, & Granting Mot. for Default Judgment).



economy and fairness are the focus of the predominance and superiority requirements."[113] Both elements are satisfied here.

### 1.   Common Questions of Law and Fact Predominate over Individual Questions.

The predominance inquiry is meant to "tes[t] whether proposed classes are sufficiently cohesive to warrant adjudication by representation."[114] It "does *not* require a plaintiff seeking class certification to prove that each elemen[t] of [her] claim [is] susceptible to classwide proof . . . [only] that common questions *predominate* over any questions affecting only individual [class] members."[115] Nor must a plaintiff show, at the class certification stage, that those "questions will be answered, on the merits, in favor of the class."[116]

Common issues predominate here. The salient evidence necessary to establish Plaintiffs' claims is common to all members of the Settlement Class: they seek to prove that as a result of Meracord's illegal conduct, the Bond Amounts are due and owing to Settlement Class Members. Plaintiffs' evidentiary presentation would change little regardless of whether there were 100 Class members or 1,000,000: in either instance, Plaintiffs would present the same class-wide evidence of Meracord's wrongful conduct, and the same evidence with respect to F&D's liability on the Bonds. In the words of the Ninth Circuit, these common questions—and more—"present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication."[117]

Moreover, in determining whether common questions predominate, "the focus of this court should be principally on issues of liability."[118] "The potential existence of individualized damage assessments . . . does not detract from the action's suitability for class certification,"[119] but even if it did, there is no risk of that here, since Meracord's customer database provides a

---

[113] *Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris, Inc.*, 188 F.R.D. 365, 375 (D. Or. 1998).

[114] *Wal-Mart Stores, Inc.*, 131 S. Ct. at 2566 (quoting *Amchem*, 521 U.S. at 623).

[115] *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1196 (2013) (emphasis in original).

[116] *Abdullah*, 731 F.3d at 964.

[117] *Hanlon*, 150 F.3d at 1022; *see also Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045-46 (2016).

[118] *In re Sugar Indus. Antitrust Litig.*, 1976 WL 1374, at *22 (N.D. Cal. May 21, 1976); *In re Citric Acid Antitrust Litig.*, 1996 WL 655791, at *6 (N.D. Cal. Oct. 2, 1996). *See also Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001).

[119] *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1089 (9th Cir. 2010).



1   robust source of classwide information from which individual damage calculations can be made

2   with relative certainty as well as administrative ease.

3        For these reasons, common issues predominate over any relevant individual issues.

4        **2.      A Class Action Is Superior to Other Available Methods.**

5        Certification of a case is appropriate if class treatment "is superior to other available

6   methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

7   Factors to be considered are: (1) the interest of members of the class in individually controlling

8   the prosecution of separate actions; (2) the extent and nature of any litigation concerning the

9   controversy already commenced by members of the class; and (3) the desirability of

10  concentrating the litigation of the claims in a particular forum.[120] *Id.*

11       Prosecuting this action as a class action is clearly superior to the alternative—many

12  duplicative individual actions—which would be inefficient and unfair. "Numerous individual

13  actions would be expensive and time-consuming and would create the danger of conflicting

14  decisions as to persons similarly situated."[121]

15       Specifically, factors (1) and (3) weigh in favor of concentrating the claims in a single

16  forum, since the damages sustained by each individual class member are too low, compared with

17  the costs of litigation, to incentivize Settlement Class Members to litigate their claims

18  individually. This is especially true given Meracord's defunct status; the very limited amount of

19  funds available from the Bonds relative to the amount of damages suffered by each Settlement

20  Class Member; and the disparity in resources between the typical Class Member and a well-

21  funded, litigation-savvy insurance company.[122] Class Counsel have already devoted significant

22  resources to litigating this and related actions, in this Court, the Ninth Circuit, the Northern

23  District of California, and the District of Arizona. Class Counsel have managed a labor-intensive

24  discovery and document-review effort; devoted substantial expert resources to analyzing the

25  Meracord Database and Meracord's server data; engaged in mediation and settlement

26  _____

27  [120] The fourth factor, trial manageability, is not relevant when deciding whether to certify a settlement class. *Amchem*, 521 U.S. at 620.

     [121] *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).

28   [122] *See, e.g.*, *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 522 (C.D. Cal. 2012).



1    discussions; and engaged in significant motions practice on various issues across the different

2    cases against Meracord and the Sureties. An individual litigant could not invest similar resources

3    in pursuing his/her case. Certification thus conserves both individual and already-strapped

4    judicial resources.

5          The second factor—the extent and nature of any similar litigation—also favors class

6    certification. Plaintiffs are not aware of any other litigation in the country involving similar

7    claims—whether individual or classwide—on Meracord's Bonds. Thus, all factors support a

8    finding that the class action device is the most efficient and effective means of resolving this

9    controversy.

10   **C.     Notice to the Settlement Class Was Adequate and Satisfied Due Process.**

11         Notice to the Class was adequate and satisfied both Rule 23 and due process. Under Rule

12   23(e)(1), the Court must direct notice in a reasonable manner to all class members who would be

13   bound by the proposal.[123] Rule 23 requires that the best notice practicable, rather than actual

14   notice, be provided.[124] "Notice is satisfactory if it generally describes the terms of the settlement

15   in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and

16   be heard."[125] Rule 23 requires that class notice "must clearly and concisely state in plain, easily

17   understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the

18   class claims, issues, or defenses; (iv) that a class member may enter an appearance through an

19   attorney if the member so desires; (v) that the court will exclude from the class any member who

20   requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect

21   of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B).

22         As described above, the Notice campaign conducted by the Settlement Administrator for

23   this Settlement was substantially identical to that campaign conducted in the Platte River

24   Settlement,[126] which the Court found to be in compliance with Rule 23's notice requirements.[127]

---

[123] *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009); Fed. R. Civ. P. 23(e)(1).

[124] *Siber v. Mabon*, 18 F.3d 1449, 1453 (9th Cir. 1994) (holding that the best notice practicable, rather than actual notice, is the proper standard for providing notice of a proposed settlement to absent class members).

[125] *Rodriguez*, 563 F.3d at 962.

[126] GCG Decl. ¶ 6.

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

In addition, in granting preliminary approval, this Court previously approved the Class Notice, which was effectuated by the Administrator as ordered by the Court. As described in more detail above in Section III.E, the Administrator successfully delivered direct notice to 97% of the Settlement Class[128]—an even higher percentage to the 92.8% that the Court found "well within the range of a reasonable 'reach rate'" in the Platte River Settlement.[129] In addition, the Long-Form Notice, available to Settlement Class Members via the Settlement Website or mail by request, was previously approved by the Court, and contained detailed information regarding the Settlement meeting the requirements of Fed. R. Civ. P. 23(c)(2)(B).[130] The Notice plan, approved by this Court, clearly satisfies Rule 23(e)(1) and due process.

## VII.   THE TWO OBJECTIONS TO THE SETTLEMENT MISUNDERSTOOD THE NATURE OF THE SETTLEMENT

From the approximately 132,562 Meracord customers who received notice of the Settlement, GCG received only two objections, in the form of letters from Helen Donovan of Palmer, Puerto Rico and Audrey Garduno of Chimayo, New Mexico.[131]

Both objections are meritless, primarily because both objectors lack standing to object to the Settlement: they are not Settlement Class Members and will not be bound by the Settlement. Ms. Donovan resided in Massachusetts during the time she made payments into her Meracord account, and Ms. Garduno apparently resided in New Mexico, but neither of Meracord's Sureties issued Bonds covering residents of Massachusetts or New Mexico; thus those individuals were

---

[127] Dkt. 41 (Platte River Final Approval Order) ¶¶ 6-7.

[128] GCG Decl. ¶ 10.

[129] Dkt. 41 (Platte River Final Approval Order) ¶ 6; *see also, e.g.*, Federal Judiciary Committee, "Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide" (2010), available at http://www.fjc.gov/public/pdf.nsf/lookup/NotCheck.pdf/$file/NotCheck.pdf (describing reach rate of "between 70-95%" as a "high percentage"); *Rinky Dink, Inc. v. World Bus. Lenders, LLC*, 2016 WL 3087073, at *1 (W.D. Wash. May 31, 2016) (approving settlement where direct notice provided to 86 % of the class); *In re Hydroxycut Mktg. & Sales Practices Litig.*, 2014 WL 6473044, at *2 (S.D. Cal. Nov. 18, 2014), *appeal dismissed* (Apr. 30, 2015) (same, with estimated 81% reach rate).

[130] GCG Decl., Ex. C (Long-Form Notice).

[131] GCG Decl. ¶ 15, Ex. E; *see also* Dkts. 77 & 78.



1   not included as Settlement Class Members in either this Settlement or the previous Platte River

2   Settlement.[132]

3          Both objections are additionally meritless because they are entirely based on the

4   objectors' exclusion from the Settlement as "non-bond state" residents. Ms. Donovan contends

5   that "[r]egardless of a bond state or non-bond state, I am a previous customer of Meracord,

6   LLC," and says, "I find it highly unfair and I should be paid just like any of the other

7   customers/clients from other states."[133] Ms. Garduno states that she objects to "leaving out other

8   states that were part of these fraudulent acts."[134] These objections misunderstand the nature of

9   the litigation and the Settlement. Because Meracord was insolvent as of late 2013, the Bonds

10  represented the only realistic source of funds to compensate Meracord's customers for the

11  actions of Meracord and the Front DSCs. But the Bonds were limited both geographically (to

12  customers residing in particular states) and by time period (to customers who were Meracord

13  customers after the effective date of each relevant Bond). Both of those limitations thus

14  necessarily applied to the litigation against Meracord's Sureties, and thus to the current

15  Settlement. Absent a settlement, individual class members would be left to recover from the

16  Bonds, and F&D would strongly contest that any recovery is available under the terms of the

17  Bonds—especially to residents of states where no Bonds were issued. Ms. Donovan's and Ms.

18  Garduno's objections, which they lack standing to make, and which are based solely on the

19  geographic limitations inherent in the Bonds, should therefore be overruled.

20                          **VIII.   CONCLUSION**

21         The Settlement represents a fair and reasonable resolution of Settlement Class Members'

22  claims after five years of litigation, and is supported by Plaintiffs and experienced Class Counsel,

23  who respectfully request that this Court approve the Settlement.

24

25

26  ─────────────────
    [132] *See* Dkt. 68-1 (Settlement Agreement), Appendix A; Dkt. 15-1 (Platte River Settlement Agreement),
27  Appendix A.
       [133] Dkt. 77.
28     [134] Dkt. 78.

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1    Dated this 14th day of September, 2017.

2                                    **HAGENS BERMAN SOBOL SHAPIRO LLP**

3
                                     By: */s/ Steve W. Berman*
4                                        */s/ Thomas E. Loeser*
                                     Steve W. Berman, WSBA #12536
5                                    Thomas E. Loeser, WSBA # 38701
                                     1918 Eighth Avenue, Suite 3300
6                                    Seattle, WA 98101
                                     steve@hbsslaw.com
7                                    toml@hbsslaw.com

8                                    **THE PAYNTER LAW FIRM PLLC**
                                     Stuart M. Paynter
9                                    1200 G Street N.W., Suite800
                                     Washington, DC 20005
10                                   Tel.: (202) 626-4486
                                     Fax: (866) 734-0622
11                                   stuart@paynterlawfirm.com

12
                                     Celeste H.G. Boyd
13                                   106 S. Churton St., Ste. 200
                                     Hillsborough NC 27278
14                                   Tel.: (919) 307-9991
                                     Fax: (866) 734-0622
15                                   cboyd@paynterlawfirm.com

16
                                     *Class Counsel*
17

18

19

20

21

22

23

24

25

26

27

28



1

## CERTIFICATE OF SERVICE

2          On September 14, 2017, I caused to be electronically filed the foregoing with the Clerk of

3   the Court using the CM/ECF system, which will send notification of such filing to the following

4   attorneys of record:

5

6      • **Bert W. Markovich**
7        bmarkovich@schwabe.com

8      • **David C. Veis**
         DVeis@RobinsKaplan.com
9

10     • **Jennifer Campbell**
         jcampbell@schwabe.com
11

12     • **Steve W. Berman**
         steve@hbsslaw.com
13

14     • **Thomas E Loeser**
         TomL@hbsslaw.com
15

16                                    */s/ Steve W. Berman*
                                      Steve W. Berman, WSBA # 12536
17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT - 28
Case No. 3:16-cv-05147-BHS
010262-16 985522 V1

HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594